# EXHIBIT L

I

118TH CONGRESS
1ST SESSION

# H. R. 4766

To provide for the regulation of payment stablecoins, and for other purposes.

————————————

## IN THE HOUSE OF REPRESENTATIVES

JULY 20, 2023

Mr. MCHENRY introduced the following bill; which was referred to the Committee on Financial Services

————————————

# A BILL

To provide for the regulation of payment stablecoins, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*
2    *tives of the United States of America in Congress assembled,*

3    **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the ''Clarity for Payment
5    Stablecoins Act of 2023''.

6    **SEC. 2. DEFINITIONS.**

7    In this Act:

8        (1) BANK SECRECY ACT.—The term ''Bank Se-
9        crecy Act'' means—

10           (A) section 21 of the Federal Deposit In-
11           surance Act (12 U.S.C. 1829b);

2

1          (B) chapter 2 of title I of Public Law 91–

2      508 (12 U.S.C. 1951 et seq.); and

3          (C) subchapter II of chapter 53 of title 31,

4      United States Code.

5      (2) BOARD.—The term ''Board'' means the

6  Board of Governors of the Federal Reserve System.

7      (3) COMPTROLLER.—The term ''Comptroller''

8  means the Comptroller of the Currency.

9      (4) CORPORATION.—The term ''Corporation''

10  means the Federal Deposit Insurance Corporation.

11      (5) DIGITAL ASSET.—The term ''digital asset''

12  means any digital representation of value which is

13  recorded on a cryptographically-secured distributed

14  ledger.

15      (6) DISTRIBUTED LEDGER.—The term ''distrib-

16  uted ledger'' means technology where data is shared

17  across a network that creates a public digital ledger

18  of verified transactions or information among net-

19  work participants and the data is linked using cryp-

20  tography to maintain the integrity of the public ledg-

21  er and execute other functions.

22      (7) FEDERAL QUALIFIED NONBANK

23  STABLECOIN ISSUER.—The term ''Federal qualified

24  nonbank stablecoin issuer'' means a nonbank entity

25  approved by the primary Federal payment stablecoin

3

1  regulator, pursuant to section 5, to issue payment
2  stablecoins.

3      (8) INSTITUTION-AFFILIATED PARTY.—With re-
4  spect to a permitted payment stablecoin issuer, the
5  term "institution-affiliated party" means any direc-
6  tor, officer, employee, or person in control of, or
7  agent for, the permitted payment stablecoin issuer.

8      (9) INSURED DEPOSITORY INSTITUTION.—The
9  term "insured depository institution" means—

10          (A) an insured depository institution, as
11      defined in section 3 of the Federal Deposit In-
12      surance Act (12 U.S.C. 1813); and

13          (B) an insured credit union, as defined in
14      section 101 of the Federal Credit Union Act
15      (12 U.S.C. 1752).

16      (10) MONETARY VALUE.—The term "monetary
17  value" means a national currency or deposit (as de-
18  fined under Section 3 of the Federal Deposit Insur-
19  ance Act) denominated in a national currency.

20      (11) NATIONAL CURRENCY.—The term "na-
21  tional currency" means a Federal Reserve note, (as
22  the term is used in the first undesignated paragraph
23  of section 16 of the Federal Reserve Act (12 U.S.C.
24  411)), money issued by a central bank, and money

4

1    issued by an intergovernmental organization pursu-

2    ant to an agreement by one or more governments.

3        (12) NONBANK ENTITY.—The term "nonbank

4    entity" means a person that is not an insured depos-

5    itory institution or subsidiary of an insured deposi-

6    tory institution.

7        (13) PAYMENT STABLECOIN.—The term "pay-

8    ment stablecoin"—

9            (A) means a digital asset—

10                (i) that is or is designed to be used as

11            a means of payment or settlement; and

12                (ii) the issuer of which—

13                    (I) is obligated to convert, re-

14               deem, or repurchase for a fixed

15               amount of monetary value; and

16                    (II) represents will maintain or

17               creates the reasonable expectation

18               that it will maintain a stable value rel-

19               ative to the value of a fixed amount of

20               monetary value; and

21            (B) that is not—

22                (i) a national currency; or

23                (ii) a security issued by an investment

24            company registered under section 8(a) of

5

1          the Investment Company Act of 1940 (15

2          U.S.C. 80a–8(a)).

3      (14) PERMITTED PAYMENT STABLECOIN

4  ISSUER.—The term "permitted payment stablecoin

5  issuer" means—

6          (A) a subsidiary of an insured depository

7          institution that has been approved to issue pay-

8          ment stablecoins under section 5;

9          (B) a Federal qualified nonbank payment

10         stablecoin issuer that has been approved to

11         issue payment stablecoins under section 5; or

12         (C) a State qualified payment stablecoin

13         issuer.

14     (15) PERSON.—The term "person" means an

15  individual, partnership, company, corporation, asso-

16  ciation (incorporated or unincorporated), trust, es-

17  tate, cooperative organization, or other entity.

18     (16) PRIMARY FEDERAL PAYMENT STABLECOIN

19  REGULATOR.—

20         (A) IN GENERAL.—The term "primary

21         Federal payment stablecoin regulator" means—

22             (i) with respect to an insured deposi-

23             tory institution (other than an insured

24             credit union) or a subsidiary of an insured

25             depository institution (other than an in-

6

1     sured credit union), the appropriate Fed-

2     eral banking agency of such insured depos-

3     itory institution (as defined under section

4     3 of the Federal Deposit Insurance Act

5     (12 U.S.C. 1813));

6       (ii) with respect to an insured credit

7     union or a subsidiary of an insured credit

8     union, the National Credit Union Adminis-

9     tration;

10       (iii) with respect to a Federal quali-

11     fied nonbank payment stablecoin issuer

12     that is not a national bank, the Board; and

13       (iv) with respect to any entity char-

14     tered by the Comptroller, the Comptroller.

15    (B) PRIMARY FEDERAL PAYMENT

16    STABLECOIN REGULATORS.—The term "pri-

17    mary Federal payment stablecoin regulators"

18    means the Comptroller, the Board, the Corpora-

19    tion, and the National Credit Union Adminis-

20    tration.

21   (17) REGISTERED PUBLIC ACCOUNTING

22   FIRM.—The term "registered public accounting

23   firm" has the meaning given that term under section

24   2 of the Sarbanes-Oxley Act of 2002 (15 U.S.C.

25   7201).

7

1 (18) STATE.—The term "State" means each of
2 the several States, the District of Columbia, and
3 each territory of the United States.

4 (19) STATE QUALIFIED PAYMENT STABLECOIN
5 ISSUER.—The term "State qualified payment
6 stablecoin issuer" means an entity that—

7  (A) is legally established and approved to
8  issue payment stablecoins by a State payment
9  stablecoin regulator; and

10  (B) issues a payment stablecoin in compli-
11  ance with the requirements under section 4.

12 (20) STATE PAYMENT STABLECOIN REGU-
13 LATOR.—The term "State payment stablecoin regu-
14 lator" means a State agency that has primary regu-
15 latory and supervisory authority in such State over
16 entities that issue payment stablecoins.

17 (21) SUBSIDIARY OF AN INSURED CREDIT
18 UNION.—With respect to an insured credit union,
19 the term "subsidiary of an insured credit union"
20 means—

21  (A) an organization providing services to
22  the insured credit union that are associated
23  with the routine operations of credit unions, as
24  described under section 107(7)(I) of the Fed-

8

1      eral Credit Union Act (12 U.S.C. 1757(7)(I));

2      and

3           (B) a credit union service organization, as

4           such term is used under part 712 of title 12,

5           Code of Federal Regulations, with respect to

6           which the insured credit union has an owner-

7           ship interest or to which the insured credit

8           union has extended a loan.

9    **SEC. 3. LIMITATION ON WHO MAY ISSUE A PAYMENT**

10            **STABLECOIN.**

11    It shall be unlawful for any person other than a per-

12 mitted payment stablecoin issuer to issue a payment

13 stablecoin for use by any person in the United States.

14    **SEC. 4. REQUIREMENTS FOR ISSUING PAYMENT**

15            **STABLECOINS.**

16    (a) STANDARDS FOR THE ISSUANCE OF PAYMENT

17 STABLECOINS.—

18           (1) IN GENERAL.—Permitted payment

19           stablecoin issuers shall—

20                (A) maintain reserves backing the issuer's

21                payment stablecoins outstanding on an at least

22                one to one basis, with reserves comprising—

23                    (i) United States coins and currency

24                    (including Federal reserve notes);

9

1          (ii) funds held as insured demand de-
2      posits or insured shares at insured deposi-
3      tory institutions, subject to limitations es-
4      tablished by the Corporation and the Na-
5      tional Credit Union Administration, re-
6      spectively, to address safety and soundness
7      risks of such insured depository institu-
8      tions;
9          (iii) Treasury bills with a maturity of
10     90 days or less;
11         (iv) repurchase agreements with a ma-
12     turity of 7 days or less that are backed by
13     Treasury bills with a maturity of 90 days
14     or less;
15         (v) central bank reserve deposits; or
16         (vi) such other assets as—
17             (I) the primary Federal payment
18         stablecoin regulator determines appro-
19         priate; or
20             (II) in the case of a State quali-
21         fied payment stablecoin issuer, the
22         State payment stablecoin regulator
23         determines appropriate.
24     (B) publicly disclose the issuer's redemp-
25     tion policy;

1          (C) establish procedures for timely redemp-
2     tion of outstanding payment stablecoins; and
3          (D) publish the monthly composition of the
4     issuer's reserves on the website of the issuer,
5     containing—
6               (i) the total number of outstanding
7          payment stablecoins issued by the issuer;
8          and
9               (ii) the amount and composition of
10          the reserves described under subparagraph
11          (A).
12     (2) PROHIBITION ON REHYPOTHECATION.—Re-
13  serves described under paragraph (1)(A) may not be
14  pledged, rehypothecated, or reused, except for the
15  purpose of creating liquidity to meet reasonable ex-
16  pectations of requests to redeem payment
17  stablecoins, such that reserves in the form of Treas-
18  ury bills may be pledged as collateral for repurchase
19  agreements with a maturity of 90 days or less, pro-
20  vided that either—
21          (A) the repurchase agreements are cleared
22     by a central clearing counterparty that is ap-
23     proved by the primary Federal payment
24     stablecoin regulator; or

11

1         (B) the permitted payment stablecoin

2         issuer receives the prior approval of the primary

3         Federal payment stablecoin regulator.

4     (3) MONTHLY CERTIFICATION; EXAMINATION

5 OF REPORTS BY REGISTERED PUBLIC ACCOUNTING

6 FIRM.—

7         (A) IN GENERAL.—A permitted payment

8         stablecoin issuer shall, each month, have the in-

9         formation disclosed in the previous month-end

10         report required under paragraph (1)(D) exam-

11         ined by a registered public accounting firm.

12         (B) CERTIFICATION.—Each month, the

13         Chief Executive Officer and Chief Financial Of-

14         ficer of a permitted payment stablecoin issuer

15         shall submit an certification as to the accuracy

16         of the monthly report to—

17             (i) the primary Federal payment

18             stablecoin regulator; or

19             (ii) in the case of a State qualified

20             payment stablecoin issuer, to the State

21             payment stablecoin regulator.

22         (C) CRIMINAL PENALTY.—Any person who

23         submits a certification required under subpara-

24         graph (B) knowing that such certification is

25         false shall be subject to the criminal penalties

12

1     set forth under section 1350(c) of title 18,
2     United States Code.

3     (4) CAPITAL, LIQUIDITY, AND RISK MANAGE-
4     MENT REQUIREMENTS.—The primary Federal pay-
5     ment stablecoin regulators shall, jointly, issue—

6         (A) capital requirements applicable to per-
7     mitted payment stablecoin issuers, which may
8     not exceed what is sufficient to ensure the per-
9     mitted payment stablecoin issuer's ongoing op-
10    erations;

11        (B) liquidity requirements applicable to
12    permitted payment stablecoin issuers, which
13    may not exceed what is sufficient to ensure the
14    financial integrity of the permitted payment
15    stablecoin issuer and the ability of the issuer to
16    meet the financial obligations of the issuer, in-
17    cluding redemptions; and

18        (C) risk management requirements appli-
19    cable to permitted payment stablecoin issuers,
20    tailored to the business model and risk profile
21    of the permitted payment stablecoin issuer.

22    (5) TREATMENT UNDER THE BANK SECRECY
23    ACT.—A permitted payment stablecoin issuer shall
24    be treated as a financial institution for purposes of
25    the Bank Secrecy Act.

13

1       (6) LIMITATION ON ACTIVITIES.—A permitted

2  payment stablecoin issuer may only issue payment

3  stablecoins, redeem payment stablecoins, manage re-

4  lated reserves (including purchasing and holding re-

5  serve assets), provide custodial or safekeeping serv-

6  ices for payment stablecoins or private keys of pay-

7  ment stablecoins, and undertake other functions that

8  directly support the work of issuing and redeeming

9  payment stablecoins.

10  (b) RULEMAKING.—

11       (1) IN GENERAL.—The primary Federal pay-

12  ment stablecoin regulators may issue such orders

13  and regulations as may be necessary to administer

14  and carry out the requirements of this section, in-

15  cluding to establish conditions, and to prevent eva-

16  sions thereof.

17       (2) JOINT ISSUANCE OF REGULATION.—All reg-

18  ulations issued to carry out this section shall be

19  issued jointly by the primary Federal payment

20  stablecoin regulators.

21       (3) RULEMAKING DEADLINE.—Not later than

22  the end of the 180-day period beginning on the date

23  of enactment of this Act, the Federal payment

24  stablecoin regulators shall issue regulations to carry

25  out this section.

14

1  SEC. 5. APPROVAL OF SUBSIDIARIES OF INSURED DEPOSI-

2      TORY INSTITUTIONS AND FEDERAL QUALI-

3      FIED   NONBANK   PAYMENT   STABLECOIN

4      ISSUERS.

5  (a) IN GENERAL.—

6      (1) APPLICATION.—

7          (A) IN GENERAL.—Any insured depository

8      institution   that   seeks   to   issue   payment

9      stablecoins   through   a   subsidiary   and   any

10     nonbank entity (other than a State qualified

11     payment   stablecoin   issuer)   that   seeks   to   issue

12     payment   stablecoins   shall   file   an   application

13     with the primary Federal payment stablecoin

14     regulator.

15         (B) TIMING.—With respect to an applica-

16     tion   filed   under   this   paragraph,   the   primary

17     Federal payment stablecoin regulator shall in-

18     form   the   applicant   whether   the   applicant   has

19     submitted   a   complete   application   within   45

20     days of receiving the application.

21         (C) COMPLETION OF APPLICATION.—With

22     respect to an application filed under this para-

23     graph,   once   the   primary   Federal   payment

24     stablecoin regulator has informed the applicant

25     that the application is complete, such applica-

26     tion   shall   be   deemed   to   be   complete   unless   the

15

1    primary Federal payment stablecoin regulator
2    determines that a significant change in cir-
3    cumstances requires otherwise.

4    (2) EVALUATION OF APPLICATIONS.—A com-
5    plete application received under paragraph (1) shall
6    be evaluated by the primary Federal payment
7    stablecoin regulator using the factors described in
8    paragraph (3).

9    (3) FACTORS TO BE CONSIDERED.—The factors
10   described in this paragraph are the following:

11       (A) The ability of the applicant (or, in the
12       case of an applicant that is an insured deposi-
13       tory institution, the subsidiary of the appli-
14       cant), based on the financial condition and re-
15       sources, to meet the requirements set forth in
16       section 4.

17       (B) The general character and fitness of
18       the management of the applicant.

19       (C) The risks presented by the applicant
20       and benefits provided to consumers.

21   (4) TIMING FOR DECISION; GROUNDS FOR DE-
22   NIAL.—

23       (A) TIMING.—The primary Federal pay-
24       ment stablecoin regulator shall render a deci-
25       sion on an application no later than 120 days

1    after informing the applicant that the applica-

2    tion is complete.

3        (B) DENIAL OF APPLICATION.—

4            (i) GROUNDS FOR DENIAL.—The pri-

5        mary Federal payment stablecoin regulator

6        may only deny a complete application re-

7        ceived under paragraph (1) if the regulator

8        determines that the activities of the appli-

9        cant would be unsafe or unsound based on

10       the factors described in paragraph (3).

11           (ii) EXPLANATION REQUIRED.—If the

12       primary Federal payment stablecoin regu-

13       lator denies a complete application received

14       under paragraph (1), the regulator shall

15       provide the applicant with written notice

16       explaining such denial, including all find-

17       ings made by the regulator with respect to

18       all identified material shortcomings regard-

19       ing the application, including recommenda-

20       tions on how the applicant could address

21       the identified material shortcomings.

22           (iii) OPPORTUNITY FOR HEARING;

23       FINAL DETERMINATION.—

24               (I) IN GENERAL.—Not later than

25           30 days after the date of receipt of

17

1     any notice of the denial of an applica-
2     tion under this subsection, the appli-
3     cant may request, in writing, an op-
4     portunity for a written or oral hearing
5     before the primary Federal payment
6     stablecoin regulator to appeal the de-
7     nial.

8          (II) TIMING.—Upon receipt of a
9     timely request, the primary Federal
10    payment stablecoin regulator shall no-
11    tice a time (not later than 30 days
12    after the date of receipt of the re-
13    quest) and place at which the appli-
14    cant may appear, personally or
15    through counsel, to submit written
16    materials or provide oral testimony
17    and oral argument).

18         (III) FINAL DETERMINATION.—
19    Not later than 60 days after the date
20    of a hearing under this clause, the
21    primary Federal payment stablecoin
22    regulator shall notify the applicant of
23    the final determination of the primary
24    Federal payment stablecoin regulator,
25    which shall contain a statement of the

18

1    basis for that determination, with spe-
2    cific findings.

3              (IV) NOTICE IF NO HEARING.—If
4         an applicant does not make a timely
5         request for a hearing under this
6         clause, the primary Federal payment
7         stablecoin regulator shall notify the
8         applicant, not later than 10 days after
9         the date by which the applicant may
10        request a hearing under this clause, in
11        writing, that the denial of the applica-
12        tion is a final determination of the
13        regulator.

14       (C) FAILURE TO RENDER A DECISION.—If
15    the primary Federal payment stablecoin regu-
16    lator fails to render a decision on a complete
17    application within the time period specified in
18    subparagraph (A), the application shall be
19    deemed approved.

20       (D) RIGHT TO REAPPLY.—The denial of
21    an application under this subsection shall not
22    prohibit the applicant from filing a subsequent
23    application.

24    (5) REPORT ON PENDING APPLICATIONS.—
25    Each primary Federal payment stablecoin regulator

19

1    shall annually report to Congress on the applications

2    that have been pending for 6 months or longer since

3    the date of the initial application filed under para-

4    graph (1) where the applicant has been informed

5    that the application remains incomplete, including

6    providing documentation on the status of the appli-

7    cation and why the application has not yet been ap-

8    proved.

9        (6) RULEMAKING.—The primary Federal regu-

10   latory agencies shall, jointly, issue rules necessary

11   for the regulation of the issuance of payment

12   stablecoins, but may not impose requirements incon-

13   sistent with the requirements specified under section

14   4.

15   (b) EFFECTIVE DATE.—

16       (1) IN GENERAL.—This section shall take effect

17   on the earlier of—

18           (A) 18 months after the date of enactment

19       of this Act; or

20           (B) the date that is 120 days after the

21       date on which the primary Federal payment

22       stablecoin regulators issue final regulations im-

23       plementing this section.

24       (2) AUTHORITY TO ISSUE REGULATIONS AND

25   PROCESS APPLICATIONS.—The primary Federal pay-

20

1     ment stablecoin regulators may, before the effective
2     date described under paragraph (1)—
3            (A) issue regulations to carry out this sec-
4        tion; and
5            (B)  pursuant  to  regulations  described
6        under subparagraph (A), accept and process ap-
7        plications described under this section.
8     (3) NOTICE TO CONGRESS.—Each of the pri-
9     mary Federal payment stablecoin regulators shall
10    notify Congress once beginning to process applica-
11    tions described under this section.
12    (4)  SAFE  HARBOR  FOR  PENDING  APPLICA-
13    TIONS.—The primary Federal payment stablecoin
14    regulator may waive the application of the require-
15    ments of this section for a period not to exceed 12
16    months beginning on the effective date described
17    under paragraph (1), with respect to—
18           (A) a subsidiary of an insured depository
19        institution, if the insured depository institution
20        has an application pending for the subsidiary to
21        become a permitted payment stablecoin issuer
22        on the effective date described under paragraph
23        (1); or
24           (B) a nonbank entity with an application
25        pending to become a Federal qualified nonbank

21

1          stablecoin issuer on the effective date described

2          under paragraph (1).

**SEC. 6. SUPERVISION AND ENFORCEMENT WITH RESPECT**

**TO SUBSIDIARIES OF INSURED DEPOSITORY**

**INSTITUTIONS AND FEDERAL QUALIFIED**

**NONBANK STABLECOIN ISSUERS.**

7    (a) SUPERVISION.—

8        (1) SUBSIDIARY OF AN INSURED DEPOSITORY

9   INSTITUTION.—

10          (A) IN GENERAL.—Each permitted pay-

11          ment stablecoin issuer that is a subsidiary of an

12          insured depository institution shall be subject to

13          supervision by the primary Federal payment

14          stablecoin regulator in the same manner as

15          such insured depository institution.

16          (B) GRAMM-LEACH-BLILEY ACT.—For

17          purposes of title V of the Gramm-Leach-Bliley

18          Act (15 U.S.C. 6801 et seq.) each permitted

19          payment stablecoin issuer that is a subsidiary

20          of an insured depository institution shall be

21          deemed a financial institution.

22        (2) FEDERAL QUALIFIED NONBANK PAYMENT

23   STABLECOIN ISSUER.—

24          (A) SUBMISSION OF REPORTS.—Each Fed-

25          eral qualified nonbank payment stablecoin

22

1     issuer shall, upon request, submit reports to the

2     primary Federal payment stablecoin regulator

3     as to—

4         (i) the Federal qualified nonbank pay-

5         ment stablecoin issuer's financial condition,

6         systems for monitoring and controlling fi-

7         nancial and operating risks; and

8         (ii) compliance by the Federal quali-

9         fied nonbank payment stablecoin issuer

10        (and any subsidiary thereof) with this Act.

11     (B) EXAMINATIONS.—The primary Fed-

12     eral payment stablecoin regulator may make ex-

13     aminations of a Federal qualified nonbank pay-

14     ment stablecoin issuer and each subsidiary of a

15     Federal qualified nonbank stablecoin issuer in

16     order to inform the regulator of—

17         (i) the nature of the operations and fi-

18         nancial condition of the Federal qualified

19         nonbank stablecoin issuer;

20         (ii) the financial, operational, and

21         other risks within the Federal qualified

22         nonbank stablecoin issuer that may pose a

23         threat to—

23

1          (I) the safety and soundness of
2              the   Federal   qualified   nonbank
3              stablecoin issuer; or
4          (II) the stability of the financial
5              system of the United States; and
6          (iii) the systems of the Federal quali-
7              fied nonbank payment stablecoin issuer for
8              monitoring and controlling the risks de-
9              scribed in clause (ii).
10      (C) REQUIREMENT TO USE EXISTING RE-
11 PORTS.—In supervising and examining a Fed-
12 eral   qualified   nonbank   payment   stablecoin
13 issuer, the primary Federal payment stablecoin
14 regulator shall, to the fullest extent possible,
15 use existing reports and other supervisory infor-
16 mation.
17      (D) AVOIDANCE OF DUPLICATION.—The
18 primary Federal payment stablecoin regulator
19 shall, to the fullest extent possible, avoid dupli-
20 cation of examination activities, reporting re-
21 quirements, and requests for information in
22 carrying out this Act with respect to a Federal
23 qualified nonbank payment stablecoin issuer.
24      (E) GRAMM-LEACH-BLILEY   ACT.—For
25 purposes of title V of the Gramm-Leach-Bliley

24

1      Act (15 U.S.C. 6801 et seq.) each Federal

2      qualified nonbank stablecoin issuer shall be

3      deemed a financial institution.

4   (b) ENFORCEMENT.—

5      (1) SUSPENSION OR REVOCATION OF REGISTRA-

6   TION.—The primary Federal payment stablecoin

7   regulator may prohibit a permitted payment

8   stablecoin issuer from issuing payment stablecoins, if

9   the primary Federal payment stablecoin regulator

10  determines that such permitted payment stablecoin

11  issuer, or an institution-affiliated party of the per-

12  mitted payment stablecoin issuer, is—

13      (A) violating or has violated this Act or

14      any regulation or order issued under this Act;

15      or

16      (B) violating or has violated any condition

17      imposed in writing by the primary Federal pay-

18      ment stablecoin regulator in connection with a

19      written agreement entered into between the per-

20      mitted payment stablecoin issuer and the pri-

21      mary Federal payment stablecoin regulator or a

22      condition imposed in connection with any appli-

23      cation or other request.

24      (2) CEASE-AND-DESIST PROCEEDINGS.—If the

25  primary Federal payment stablecoin regulator has

25

1    reasonable cause to believe that a permitted payment

2    stablecoin issuer or any institution-affiliated party of

3    a permitted payment stablecoin issuer is violating,

4    has violated, or is attempting to violate this Act, any

5    regulation or order issued under this Act, or any

6    written agreement entered into with the primary

7    Federal payment stablecoin regulator or condition

8    imposed in writing by the primary Federal payment

9    stablecoin regulator in connection with any applica-

10   tion or other request, the primary Federal payment

11   stablecoin regulator may, by provisions that are

12   mandatory or otherwise, order the permitted pay-

13   ment stablecoin issuer or institution-affiliated party

14   of the permitted payment stablecoin issuer to—

15         (A) cease and desist from such violation or

16      practice;

17         (B) take affirmative action to correct the

18      conditions resulting from any such violation or

19      practice; or

20         (C) take such other action as the primary

21      Federal payment stablecoin regulator deter-

22      mines to be appropriate.

23      (3) REMOVAL AND PROHIBITION AUTHORITY.—

24   The primary Federal payment stablecoin regulator

25   may remove an institution-affiliated party of a per-

26

1     mitted payment stablecoin issuer from their position
2     or office or prohibit further participation in the af-
3     fairs of the permitted payment stablecoin issuer or
4     all permitted payment stablecoin issuers by such in-
5     stitution-affiliated party, if the primary Federal pay-
6     ment stablecoin regulator determines that—

7          (A) the institution-affiliated party has, di-
8          rectly or indirectly, committed a violation or at-
9          tempted violation of this Act or any regulation
10         or order issued under this Act; or

11         (B) the institution-affiliated party has
12         committed a violation of any provision of sub-
13         chapter II of chapter 53 of title 31, United
14         States Code.

15    (4) PROCEDURES.—

16         (A) IN GENERAL.—If the primary Federal
17         payment stablecoin regulator identifies a viola-
18         tion or attempted violation of this Act or makes
19         a determination under paragraph (1), (2), or
20         (3), the primary Federal payment stablecoin
21         regulator shall comply with the procedures set
22         forth in subsections (b) and (e) of sections 8 of
23         the Federal Deposit Insurance Act (12 U.S.C.
24         1818).

27

1          (B) JUDICIAL REVIEW.—A person ag-
2      grieved by a final action under this subsection
3      may obtain judicial review of such action exclu-
4      sively as provided in section 8(h) of the Federal
5      Deposit Insurance Act (12 U.S.C. 1818(h)).

6          (C) INJUNCTION.—The primary Federal
7      payment stablecoin regulator may, in the dis-
8      cretion of the regulator, follow the procedures
9      provided in section 8(i)(1) of the Federal De-
10     posit Insurance Act (12 U.S.C. 1818(i)(1)) for
11     judicial enforcement of any effective and out-
12     standing notice or order issued under this sub-
13     section.

14         (D) TEMPORARY CEASE-AND-DESIST PRO-
15     CEEDINGS.—If the primary Federal payment
16     stablecoin regulator determines that a violation
17     or attempted violation of this Act or an action
18     with respect to which a determination was made
19     under paragraph (1), (2), or (3), or the con-
20     tinuation thereof, is likely to cause insolvency or
21     significant dissipation of assets or earnings of a
22     permitted payment stablecoin issuer, or is likely
23     to weaken the condition of the permitted pay-
24     ment stablecoin issuer or otherwise prejudice
25     the interests of the customers of the permitted

28

1    payment stablecoin issuer prior to the comple-
2    tion the proceedings conducted under this para-
3    graph, the primary Federal payment stablecoin
4    regulator may follow the procedures provided in
5    section 8(c) of the Federal Deposit Insurance
6    Act (12 U.S.C. 1818(c)) to issue a temporary
7    cease-and-desist order.

8    (5) CIVIL MONEY PENALTIES.—

9        (A) FAILURE TO BE APPROVED.—Any per-
10   son who issues a payment stablecoin and who is
11   not a permitted payment stablecoin issuer, and
12   any institution-affiliated party of such a person
13   who knowingly participates is issuing such a
14   payment stablecoin, shall be liable for a civil
15   penalty of not more than $100,000 for each day
16   during which such payment stablecoins are
17   issued.

18       (B) FIRST TIER.—Except as provided in
19   subparagraph (A), a permitted payment
20   stablecoin issuer or institution-affiliated party
21   of such permitted payment stablecoin issuer
22   that violates this Act or any regulation or order
23   issued under this Act, or that violates any con-
24   dition imposed in writing by the primary Fed-
25   eral payment stablecoin regulator in connection

29

1       with a written agreement entered into between
2       the permitted payment stablecoin issuer and the
3       primary Federal payment stablecoin regulator
4       or a condition imposed in connection with any
5       application or other request, shall be liable for
6       a civil penalty of up to $100,000 for each day
7       during which the violation continues.

8       (C) SECOND TIER.—Except as provided in
9       subparagraph (A), and in addition to the pen-
10      alties described under subparagraph (B), a per-
11      mitted payment stablecoin issuer or institution-
12      affiliated party of such permitted payment
13      stablecoin issuer who knowingly participates in
14      a violation of any provision of this Act, or any
15      regulation or order issued thereunder, is liable
16      for a civil penalty of up to an additional
17      $100,000 for each day during which the viola-
18      tion continues.

19      (D) PROCEDURE.—Any penalty imposed
20      under this paragraph may be assessed and col-
21      lected by the primary Federal payment
22      stablecoin regulator pursuant to the procedures
23      set forth in section 8(i)(2) of the Federal De-
24      posit Insurance Act (12 U.S.C. 1818(i)(2)).

30

1          (E) NOTICE AND ORDERS AFTER SEPARA-
2     TION FROM SERVICE.—The resignation, termi-
3     nation of employment or participation, or sepa-
4     ration of an institution-affiliated party (includ-
5     ing a separation caused by the closing of a per-
6     mitted payment stablecoin issuer) shall not af-
7     fect the jurisdiction and authority of the pri-
8     mary Federal payment stablecoin regulator to
9     issue any notice or order and proceed under
10    this subsection against any such party, if such
11    notice or order is served before the end of the
12    six-year period beginning on the date such
13    party ceased to be an institution-affiliated party
14    with respect to such permitted payment
15    stablecoin issuer.

16       (6) NON-APPLICABILITY TO A STATE QUALI-
17    FIED PAYMENT STABLECOIN ISSUER.—This sub-
18    section shall not apply to a State qualified payment
19    stablecoin issuer.

20  **SEC. 7. STATE QUALIFIED PAYMENT STABLECOIN ISSUERS.**

21       (a) IN GENERAL.—A State payment stablecoin regu-
22  lator shall have supervisory, examination, and enforcement
23  authority over a State qualified payment stablecoin issuer
24  of such State.

31

1      (b) AUTHORITY TO ENTER INTO AGREEMENTS
2  WITH THE BOARD.—A State payment stablecoin regu-
3  lator may enter into a memorandum of understanding
4  with the Board, by mutual agreement, under which the
5  Board may carry out the supervision, examination, and
6  enforcement authority with respect to the State qualified
7  payment stablecoin issuers of such State.

8      (c) SHARING OF INFORMATION.—A State payment
9  stablecoin regulator and the Board shall share information
10 on an ongoing basis with respect to a State qualified pay-
11 ment stablecoin issuer of such State, including a copy of
12 the initial application and any accompanying documents.

13      (d) RULEMAKING.—The Board shall issue orders and
14 rules under section 4 applicable to State qualified payment
15 stablecoin issuers to the same extent as the primary Fed-
16 eral payment stablecoin regulators issue orders and rules
17 under section 4 applicable to permitted payment stablecoin
18 issuers that are not a State qualified payment stablecoin
19 issuers.

20      (e) BOARD ENFORCEMENT AUTHORITY IN EXIGENT
21 CIRCUMSTANCES.—

22          (1) IN GENERAL.—In exigent circumstances,
23      the Board may, after no less than 48 hours prior
24      written notice to the applicable State payment
25      stablecoin regulator, take an enforcement action

Case 3:23-cv-06003-WHO   Document 70-10   Filed 05/09/24   Page 33 of 43

32

1 against a State qualified payment stablecoin issuer

2 or an institution-affiliated party of such issuer for

3 violations of this Act.

4 (2) RULEMAKING.—Not later than the end of

5 the 180-day period beginning on the date of enact-

6 ment of this Act, the Board shall issue rules to set

7 forth those exigent circumstances in which the

8 Board may act under this subsection.

9 (f) GRAMM-LEACH-BLILEY ACT.—For purposes of

10 title V of the Gramm-Leach-Bliley Act (15 U.S.C. 6801

11 et seq.) a State qualified payment stablecoin issuer is

12 deemed a financial institution.

13 (g) EFFECT ON STATE LAW.—The provisions of this

14 section do not preempt any law of a State and do not su-

15 persede any State licensing requirement.

16 **SEC. 8. CUSTOMER PROTECTION.**

17 (a) IN GENERAL.—A person may only engage in the

18 business of providing custodial or safekeeping services for

19 permitted payment stablecoins or private keys of per-

20 mitted payment stablecoins, if the person—

21 (1) is subject to—

22 (A) supervision or regulation by a primary

23 Federal payment stablecoin regulator or a pri-

24 mary financial regulatory agency described

25 under subparagraph (B) or (C) of section 2(12)

•HR 4766 IH

33

1       of the Dodd-Frank Wall Street Reform and

2       Consumer Protection Act (12 U.S.C.

3       5301(12)); or

4           (B) supervision by a State bank super-

5       visor, as defined under section 3 of the Federal

6       Deposit Insurance Act (12 U.S.C. 1813) or a

7       State credit union supervisor, as defined under

8       section 6003 of the Anti-Money Laundering Act

9       of 2020, and such state bank supervisor or

10      state credit union supervisor makes available to

11      the Board such information as the Board deter-

12      mines necessary and relevant to the categories

13      of information under subsection (d); and

14      (2) complies with the segregation requirements

15     under subsection (b), unless such person complies

16     with similar requirements as required by a primary

17     Federal payment stablecoin regulator, the Securities

18     and Exchange Commission, or the Commodity Fu-

19     tures Trading Commission.

20     (b) SEGREGATION REQUIREMENT.—A person de-

21    scribed in subsection (a) shall—

22      (1) treat and deal with the payment stablecoins,

23     private keys, cash, and other property of a person

24     for whom or on whose behalf the person receives, ac-

25     quires, or holds payment stablecoins, private keys,

34

1    cash, and other property (hereinafter in this section

2    referred to as the "customer") as belonging to such

3    customer; and

4        (2) take such steps as are appropriate to pro-

5    tect the payment stablecoins, private keys, cash, and

6    other property of a customer from the claims of

7    creditors of the person.

8    (c) COMMINGLING PROHIBITED.—

9        (1) IN GENERAL.—Payment stablecoins, cash,

10    and other property of a customer shall be separately

11    accounted for by a person described in subsection

12    (a) and shall not be commingled with the funds of

13    the person.

14        (2) EXCEPTION.—Notwithstanding paragraph

15    (1)—

16            (A) the payment stablecoins, cash, and

17        other property of a customer may, for conven-

18        ience, be commingled and deposited in an omni-

19        bus account holding the payment stablecoins,

20        cash, and other property of more than one cus-

21        tomer at an insured depository institution or

22        trust company;

23            (B) such share of the payment stablecoins,

24        cash, and other property of the customer that

25        shall be necessary to transfer, adjust, or settle

35

1 a transaction or transfer of assets may be with-
2 drawn and applied to such purposes, including
3 the payment of commissions, taxes, storage,
4 and other charges lawfully accruing in connec-
5 tion with the provision of services by a person
6 described in subsection (a); and

7 (C) in accordance with such terms and
8 conditions as the Board may prescribe by rule,
9 regulation, or order, any customer payment
10 stablecoin, cash, and other property described
11 in this subsection may be commingled and de-
12 posited in customer accounts with payment
13 stablecoins, cash, and other property received
14 by the person and required by the Board to be
15 separately accounted for, treated, and dealt
16 with as belonging to customers.

17 (d) REGULATORY INFORMATION.—A person de-
18 scribed under subsection (a) shall submit to the Board in-
19 formation concerning the person's business operations and
20 processes to protect customer assets, in such form and
21 manner as the Board shall determine.

22 (e) EXCLUSION.—The requirements of this section
23 shall not apply to any person solely on the basis that such
24 person engages in the business of providing hardware or
25 software to facilitate a customer's own custody or safe-

36

1  keeping of the customer's payment stablecoins or private

2  keys.

3      (f) CLARIFICATION.—The Board, the Comptroller,

4  the Corporation, the National Credit Union Administra-

5  tion, and the Financial Crimes Enforcement Network shall

6  make no rules, regulations, orders, or guidance, or take

7  any other administrative action, which would restrict the

8  ability of an individual to use digital assets for such indi-

9  vidual's own purposes or prohibit or otherwise restrict an

10  individual to use hardware or software to facilitate such

11  individual's own custody or safekeeping of such individ-

12  ual's digital assets.

**SEC. 9. INTEROPERABILITY STANDARDS.**

14      The primary Federal payment stablecoin regulators,

15  in consultation with the National Institute of Standards

16  and Technology, other relevant standard setting organiza-

17  tions, and State governments, shall assess and, if nec-

18  essary, may, pursuant to section 553 of title 5 and in a

19  manner consistent with the National Technology Transfer

20  and Advancement Act of 1995 (Public Law 104–113),

21  prescribe standards for payment stablecoin issuers to pro-

22  mote compatibility and interoperability.

37

1 **SEC. 10. MORATORIUM ON ENDOGENOUSLY**
2 **COLLATERALIZED STABLECOINS.**

3 (a) MORATORIUM.—During the 2-year period begin-
4 ning on the date of enactment of this Act, it shall be un-
5 lawful to issue, create, or originate an endogenously
6 collateralized stablecoin not in existence on the date of en-
7 actment of this Act.

8 (b) STUDY BY TREASURY.—

9 (1) STUDY.—The Secretary of the Treasury, in
10 consultation with the Board, the Comptroller, the
11 Corporation, and the Securities and Exchange Com-
12 mission, shall carry out a study of endogenously
13 collateralized stablecoins.

14 (2) REPORT.—Not later than 365 days after
15 the date of the enactment of this Act, the Secretary
16 shall provide to the Committee on Financial Services
17 of the House of Representatives and the Committee
18 on Banking, Housing, and Urban Affairs of the Sen-
19 ate a report that contains all findings made in car-
20 rying out the study under subsection (a), including
21 an analysis of—

22 (A) the categories of non-payment
23 stablecoins, including the benefits and risks of
24 technological design features;

25 (B) the participants in non-payment
26 stablecoin arrangements;

38

1          (C) utilization and potential utilization of
2     non-payment stablecoins;
3          (D) nature of reserve compositions;
4          (E) types of algorithms being employed;
5          (F) governance structure, including aspects
6     of decentralization;
7          (G) nature of public promotion and adver-
8     tising; and
9          (H) clarity and availability of consumer
10     notices disclosures.
11     (c) ENDOGENOUSLY COLLATERALIZED STABLECOIN
12 DEFINED.—In this section, the term "endogenously
13 collateralized stablecoin" means any digital asset—
14          (1) in which its originator has represented will
15     be converted, redeemed, or repurchased for a fixed
16     amount of monetary value; and
17          (2) that relies solely on the value of another
18     digital asset created or maintained by the same
19     originator to maintain the fixed price.
20 **SEC. 11. REPORT ON RULEMAKING STATUS.**
21     Not later than 6 months after the date of enactment
22 of this Act, the primary Federal payment stablecoin regu-
23 lators shall provide a status update on the development
24 of the rulemaking under this Act to the Committee on Fi-
25 nancial Services of the House of Representatives and the

39

1 Committee on Banking, Housing, and Urban Affairs of
2 the Senate.

**SEC. 12. AUTHORITY OF BANKING INSTITUTIONS.**

4    (a) RULE OF CONSTRUCTION.—Nothing in this Act
5 may be construed to limit the authority of a depository
6 institution, Federal credit union, State credit union, or
7 trust company to engage in activities permissible pursuant
8 to applicable State and Federal law, including—

9         (1) accepting or receiving deposits and issuing
10        digital assets that represent deposits;

11        (2) utilizing a distributed ledger for the books
12        and records of the entity and to affect intrabank
13        transfers; and

14        (3) providing custodial services for payment
15        stablecoins, private keys of payment stablecoins, or
16        reserves backing payment stablecoins.

17    (b) TREATMENT OF CUSTODY ACTIVITIES.—The ap-
18 propriate Federal banking agency (as defined under sec-
19 tion 3 of the Federal Deposit Insurance Act (12 U.S.C.
20 1813)), the National Credit Union Administration (in the
21 case of a credit union), and the Securities and Exchange
22 Commission may not require a depository institution, na-
23 tional bank, Federal credit union, State credit union, or
24 trust company, or any affiliate thereof—

40

1    (1) to include assets held in custody as a liabil-
2 ity on any financial statement or balance sheet, in-
3 cluding payment stablecoin custody or safekeeping
4 activities;

5    (2) to hold additional regulatory capital against
6 assets in custody or safekeeping, except as necessary
7 to mitigate against operational risks inherent with
8 the custody or safekeeping services, as determined
9 by—

10        (A) the appropriate Federal banking agen-
11    cy;

12        (B) the National Credit Union Administra-
13    tion (in the case of a credit union);

14        (C) a State bank supervisor (as defined
15    under section 3 of the Federal Deposit Insur-
16    ance Act (12 U.S.C. 1813)); or

17        (D) a State credit union supervisor (as de-
18    fined under section 6003 of the Anti-Money
19    Laundering Act of 2020);

20    (3) to recognize a liability for any obligations
21 related to activities or services performed for digital
22 assets that the entity does not own if that liability
23 would exceed the expense recognized in the income
24 statement as a result of the corresponding obliga-
25 tion.

41

1    (c) DEFINITIONS.—In this section:

2         (1) DEPOSITORY INSTITUTION.—The terms
3    "depository institution" has the meaning given that
4    term under section 3 of the Federal Deposit Insur-
5    ance Act.

6         (2) CREDIT UNION TERMS.—The terms "Fed-
7    eral credit union" and "State credit union" have the
8    meaning given those terms, respectively, under sec-
9    tion 101 of the Federal Credit Union Act.

10   **SEC. 13. CLARIFYING THAT PAYMENT STABLECOINS ARE**
11        **NOT SECURITIES OR COMMODITIES.**

12   (a) INVESTMENT ADVISERS ACT OF 1940.—Section
13   202(a)(18) of the Investment Advisers Act of 1940 (15
14   U.S.C. 80b–2(a)(18)) is amended by adding at the end
15   the following: "The term 'security' does not include a pay-
16   ment stablecoin issued by a permitted payment stablecoin
17   issuer, as such terms are defined, respectively, in section
18   2 of the Clarity for Payment Stablecoins Act of 2023.".

19   (b) INVESTMENT COMPANY ACT OF 1940.—Section
20   2(a)(36) of the Investment Company Act of 1940 (15
21   U.S.C. 80a–2(a)(36)) is amended by adding at the end
22   the following: "The term 'security' does not include a pay-
23   ment stablecoin issued by a permitted payment stablecoin
24   issuer, as such terms are defined, respectively, in section
25   2 of the Clarity for Payment Stablecoins Act of 2023.".

42

1    (c) SECURITIES ACT OF 1933.—Section 2(a)(1) of
2 the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) is
3 amended by adding at the end the following: ''The term
4 'security' does not include a payment stablecoin issued by
5 a permitted payment stablecoin issuer, as such terms are
6 defined, respectively, in section 2 of the Clarity for Pay-
7 ment Stablecoins Act of 2023.''.

8    (d) SECURITIES EXCHANGE ACT OF 1934.—Section
9 3(a)(10) of the Securities Exchange Act of 1934 (15
10 U.S.C. 78c(a)(10)) is amended by adding at the end the
11 following: ''The term 'security' does not include a payment
12 stablecoin issued by a permitted payment stablecoin
13 issuer, as such terms are defined, respectively, in section
14 2 of the Clarity for Payment Stablecoins Act of 2023.''.

15    (e) SECURITIES INVESTOR PROTECTION ACT OF
16 1970.—Section 16(14) of the Securities Investor Protec-
17 tion Act of 1970 (15 U.S.C. 78lll(14)) is amended by add-
18 ing at the end the following: ''The term 'security' does
19 not include a payment stablecoin issued by a permitted
20 payment stablecoin issuer, as such terms are defined, re-
21 spectively, in section 2 of the Clarity for Payment
22 Stablecoins Act of 2023.''.

○