# EXHIBIT M

I

117TH CONGRESS
2D SESSION
# H. R. 7614

To provide for orderly and secure digital commodity exchange markets, and for other purposes.

———————————

## IN THE HOUSE OF REPRESENTATIVES

APRIL 28, 2022

Mr. THOMPSON of Pennsylvania (for himself, Mr. KHANNA, Mr. SOTO, and Mr. EMMER) introduced the following bill; which was referred to the Committee on Agriculture

———————————

# A BILL

To provide for orderly and secure digital commodity exchange markets, and for other purposes.

1   *Be it enacted by the Senate and House of Representa-*

2   *tives of the United States of America in Congress assembled,*

3   **SECTION 1. SHORT TITLE.**

4       This Act may be cited as the ''Digital Commodity Ex-

5   change Act of 2022''.

6   **SEC. 2. AMENDMENTS TO THE COMMODITY EXCHANGE**

7           **ACT.**

8       (a) DEFINITIONS.—Section 1a of the Commodity Ex-

9   change Act (7 U.S.C. 1a) is amended—

10          (1) in paragraph (28)(A)(i)—

2

1          (A) in subclause (I)—

2              (i) in item (aa)—

3                  (I) by striking "or" at the end of

4              subitem (EE); and

5                  (II) by adding at the end the fol-

6              lowing:

7                      "(GG) the purchase or

8                  sale of a unit of a digital

9                  commodity that is traded on

10                 or subject to the rules of a

11                 registered entity;'';

12             (ii) in item (bb), by striking "and"

13         and inserting "or"; and

14             (iii) by adding at the end the fol-

15         lowing:

16                     "(cc)      acting      as      a

17                 counterparty to any cash or spot

18                 agreement,   contract,   or   trans-

19                 action   involving   a   digital   com-

20                 modity with a person who is not

21                 an   eligible   contract   participant,

22                 unless the activity is—

23                     "(AA)   conducted   in

24                 compliance   with   the   laws   of

3

1              the State in which the activ-

2              ity occurs;

3                  ''(BB) subject to regu-

4              lation by another Federal

5              authority; or

6                  ''(CC) separately regu-

7              lated under this Act; and'';

8              and

9         (B) in subclause (II), by striking ''(aa) or

10    (bb)'' and inserting ''(aa), (bb), or (cc)'';

11    (2) in paragraph (40)—

12         (A) in subparagraph (E), by striking

13    ''and'' at the end; and

14         (B) by redesignating subparagraph (F) as

15    subparagraph (G) and inserting after subpara-

16    graph (E) the following:

17    ''(F) a digital commodity exchange reg-

18    istered under section 5i; and''; and

19    (3) by adding at the end the following:

20    ''(52) DIGITAL COMMODITY.—

21         ''(A) IN GENERAL.—The term 'digital com-

22    modity' means any form of fungible intangible

23    personal property that can be exclusively pos-

24    sessed and transferred person to person without

25    necessary reliance on an intermediary.

4

1                                      "(B) EXCLUSIONS.—The term 'digital

2         commodity' does not include any asset that con-

3         veys—

4                 "(i) an equity or debt interest in a

5                 company, partnership, or fund;

6                 "(ii) a profit or revenue share derived

7                 solely from the managerial efforts of oth-

8                 ers; or

9                 "(iii) an entitlement to any interest or

10                 dividend payment.

11         "(C) FURTHER EXCLUSIONS.—The Com-

12         mission, by rule or regulation, may exclude

13         from the term 'digital commodity' any intan-

14         gible personal property that can be exclusively

15         possessed and transferred person to person

16         without necessary reliance on an intermediary

17         that is not of the nature of a digital asset, if

18         the Commission determines that the rule or reg-

19         ulation will effectuate the purposes of this Act.

20         "(53) DIGITAL COMMODITY CUSTODIAN.—The

21 term 'digital commodity custodian' means an entity

22 that holds, maintains, or safeguards digital commod-

23 ities and other assets on behalf of digital commodity

24 market participants.

5

1           "(54) DIGITAL COMMODITY EXCHANGE.—The

2 term 'digital commodity exchange' means a trading

3 facility that lists for trading at least one digital com-

4 modity.

5           "(55) DIGITAL COMMODITY PRESALE.—The

6 term 'digital commodity presale' means the delivery

7 of a unit of a digital commodity, or any promise or

8 right to a future unit of a digital commodity, before

9 the listing of the digital commodity for trading on

10 a registered digital commodity exchange, to—

11           "(A) a participant in a securities offering

12     that is—

13           "(i) intended to finance the develop-

14         ment of the digital commodity; and

15           "(ii) conducted in compliance with the

16         Securities Act of 1933;

17           "(B) a founder, promoter, developer, man-

18     ager, affiliated organization, or other person di-

19     rectly associated with the development of the

20     digital commodity; or

21           "(C) any other person the Commission de-

22     termines has personal knowledge of the activi-

23     ties of individuals directly associated with the

24     development of the digital commodity.".

6

1    (b) Commission Jurisdiction Over Retail Dig-

2  ital Commodity Transactions.—

3        (1) In general.—Section 2(c)(2) of such Act

4        (7 U.S.C. 2(c)(2)) is amended—

5               (A) in subparagraph (D)(ii)—

6                   (i) in subclause (III), in the matter

7               that precedes item (aa), by inserting "of a

8               commodity, other than a digital com-

9               modity," before "that"; and

10                  (ii) by redesignating subclauses (IV)

11               and (V) as subclauses (V) and (VI) and in-

12               serting after subclause (III) the following:

13                     "(IV) a contract of sale of a dig-

14                   ital commodity that—

15                        "(aa) results in actual deliv-

16                     ery within 2 days or such other

17                     period as the Commission may

18                     determine by rule or regulation

19                     based upon the typical commer-

20                     cial practice in cash or spot mar-

21                     kets for the digital commodity in-

22                     volved; or

23                        "(bb) is executed on or sub-

24                     ject to the rules of a registered

25                     digital commodity exchange or

7

1          with a registered futures commis-

2          sion merchant;''; and

3          (B) by adding at the end the following:

4    ''(F) COMMISSION JURISDICTION OVER DIGITAL

5 COMMODITY TRANSACTIONS.—

6          ''(i) IN GENERAL.—Subject to sections 6d and

7    12(e), the Commission shall have exclusive jurisdic-

8    tion over any agreement, contract, or transaction in-

9    volving a contract of sale of a digital commodity in

10   interstate commerce.

11         ''(ii) WITHHOLDING OF RULEMAKING AUTHOR-

12   ITY    OVER    CERTAIN    TRANSACTIONS.—Notwith-

13   standing clause (i), this subparagraph shall not be

14   interpreted to permit the Commission to issue any

15   rule or regulation regarding any agreement, con-

16   tract, or transaction that is not offered, solicited,

17   traded, facilitated, executed, cleared, reported, or

18   otherwise dealt in—

19              ''(I) on or subject to the rules of a reg-

20         istered entity;

21              ''(II) by any other entity registered by the

22         Commission; or

23              ''(III) for the purpose of transferring a

24         digital commodity, or any promise or right to a

25         future unit of a digital commodity, obtained

8

1            through a digital commodity presale and subject

2            to section 4c(h).

3            ''(iii) LIMITATIONS.—Clause (i) shall not apply

4            with respect to—

5                   ''(I) custodial or depository activities for a

6            digital commodity, or custodial or depository ac-

7            tivities for any promise or right to a future dig-

8            ital commodity, of an entity regulated by a

9            State or other Federal regulatory agency; or

10           ''(II) a securities offering or transaction

11            associated with—

12                 ''(aa) a digital commodity presale; or

13                 ''(bb) a sale described in section

14                 4c(h)(3)(A).''.

15     (2) CONFORMING AMENDMENT.—Section

16     2(a)(1)(A) of such Act (7 U.S.C. 2(a)(1)(A)) is

17     amended in the 1st sentence by inserting ''sub-

18     section (c)(2)(F) of this section or'' before ''section

19     19''.

20   (c) PROHIBITED TRANSACTIONS.—Section 4c of such

21 Act (7 U.S.C. 6c) is amended by adding at the end the

22 following:

23     ''(h) PROHIBITED DIGITAL COMMODITY TRANS-

24 ACTIONS.—

9

1　　　　"(1) IN GENERAL.—It shall be a violation of
2　　this Act for any person who owns or controls a unit
3　　of a digital commodity, or any promise or right to
4　　a future unit of a digital commodity, obtained
5　　through a digital commodity presale and subject to
6　　the restrictions in this subsection, to offer to enter
7　　into, to enter into, or to execute a contract for the
8　　purchase or sale of the unit, promise, or right, ex-
9　　cept as provided in paragraph (3).

10　　　　"(2) UNLAWFUL FACILITATION OF PROHIBITED
11　　TRANSACTIONS.—It shall be a violation of this Act
12　　for any person willfully to execute, confirm the exe-
13　　cution of, or conduct any office or business for the
14　　purpose of soliciting, accepting any order for, or oth-
15　　erwise dealing in, any transaction in, or in connec-
16　　tion with, a contract for the purchase or sale of a
17　　unit of a digital commodity, or any promise or right
18　　to a future unit of a digital commodity, which such
19　　person has reason to believe is obtained through a
20　　digital commodity presale and subject to the restric-
21　　tions in this subsection, except as provided in para-
22　　graph (3).

23　　　　"(3) EXCEPTIONS.—

24　　　　　　"(A) OFF-EXCHANGE TRANSACTIONS.—

10

1            ''(i) SALE OF A PROMISE OR RIGHT.—

2        A promise or right to a future unit of a

3        digital commodity obtained through a dig-

4        ital commodity presale may be sold pursu-

5        ant to a securities transaction conducted in

6        compliance with the Securities Act of

7        1933.

8           ''(ii) SALE OF A DIGITAL COM-

9        MODITY.—A unit of a digital commodity

10       obtained through a digital commodity

11       presale may be sold—

12            ''(I) pursuant to a securities

13           transaction conducted in compliance

14           with the Securities Act of 1933; or

15            ''(II) to an accredited investor

16           (as defined in section 2(a)(15) of such

17           Act).

18           ''(iii) TREATMENT.—For purposes of

19       this subsection, a unit of a digital com-

20       modity or any promise or right to a future

21       unit of a digital commodity obtained

22       through a transaction utilizing this excep-

23       tion shall continue to be considered to be

24       obtained through a digital commodity

25       presale.

11

1        "(B) ON-EXCHANGE TRANSACTIONS.—

2                "(i) IN GENERAL.—A unit of a digital

3        commodity that is obtained through a dig-

4        ital commodity presale or a transaction de-

5        scribed in subparagraph (A) may be of-

6        fered for sale or exchange on a registered

7        digital commodity exchange, subject to any

8        limitations imposed by the exchange.

9                "(ii) TREATMENT.—For purposes of

10       this subsection, a unit of a digital com-

11       modity obtained through a transaction uti-

12       lizing this exception shall not be considered

13       to be obtained though a digital commodity

14       presale.

15       "(C) UTILIZATION OF PRESOLD DIGITAL

16       COMMODITIES.—

17               "(i) IN GENERAL.—A unit of a digital

18       commodity that is obtained through a dig-

19       ital commodity presale may be—

20                   "(I) utilized for the purposes of

21               receiving the non-financial rights or

22               services associated with the digital

23               commodity; or

24                   "(II) exchanged or sold in such

25               limited quantities as the Commission

12

1          determines support the public use and
2          functioning of services and rights as-
3          sociated with the digital commodity.
4              "(ii) TREATMENT.—For purposes of
5          this subsection, a unit of a digital com-
6          modity obtained through a transaction uti-
7          lizing this exception shall not be considered
8          to be obtained though a digital commodity
9          presale.
10         "(D) PRIOR DIGITAL COMMODITIES.—A
11     unit of a digital commodity shall not be subject
12     to this subsection if, before the date of the en-
13     actment of this subsection, the digital com-
14     modity was publicly available for trading on a
15     trading facility licensed as a money services
16     business with the Department of the Treasury.
17     "(4) TRANSITION RULES.—
18         "(A) IN GENERAL.—For the purpose of a
19     transaction described in paragraph (3)(B), the
20     Commission shall consider a trading facility to
21     be a registered digital commodity exchange if—
22             "(i) the trading facility—
23                 "(I) has been continuously li-
24             censed as a money services business

13

1        with the Department of the Treasury

2        since August 1, 2019;

3                ''(II) is a registered designated

4        contract market; or

5                ''(III) is a registered swap execu-

6        tion facility;

7        ''(ii) the trading facility submits a no-

8        tice to the Commission containing—

9                ''(I)    documentation    dem-

10       onstrating its licensing referred to in

11       clause (i)(I); and

12               ''(II) an assessment of the digital

13       commodity and all units of the digital

14       commodity to be permitted to trade,

15       in accordance with section 5i(c)(3);

16       and

17       ''(iii) the Commission has not issued a

18       notice of disapproval.

19       ''(B) DISAPPROVAL PROCESS.—In making

20       a disapproval under subparagraph (A), the

21       Commission shall—

22               ''(i) issue any disapproval within 20

23       business days after receipt of a completed

24       notice; and

14

1     "(ii) identify the specific deficiencies

2     with the notice that necessitated the dis-

3     approval.

4    "(C) EXTENSIONS.—The Commission may

5  extend the time for consideration under sub-

6  paragraph (B)—

7     "(i) once, for 20 business days,

8     through written notice to the digital com-

9     modity exchange; and

10     "(ii) once, for an additional 90 busi-

11     ness days, through notice to the digital

12     commodity exchange which includes a de-

13     scription of any deficiencies with the listing

14     notice, including any—

15      "(I) novel or complex issues

16      which require additional time to ana-

17      lyze;

18      "(II) missing information or in-

19      adequate explanations; or

20      "(III) potential inconsistencies

21      with this Act.

22    "(D) EXPIRATION.—The authority pro-

23  vided by this subparagraph shall expire 1 year

24  after the date of the final promulgation of the

25  digital commodity exchange registration re-

15

1 quirements, or on the first registration of a dig-

2 ital commodity exchange, whichever occurs ear-

3 lier.''.

4 (d) SEGREGATION OF DIGITAL COMMODITIES.—Sec-

5 tion 4d of such Act (7 U.S.C. 6d) is amended by adding

6 at the end the following:

7 ''(i) SEGREGATION OF DIGITAL COMMODITIES.—

8 ''(1) HOLDING OF CUSTOMER ASSETS.—

9 ''(A) IN GENERAL.—Each futures commis-

10 sion merchant shall hold customer money, as-

11 sets, and property in a manner to minimize the

12 customer's risk of loss or unreasonable delay in

13 the access to the money, assets, and property of

14 the customer.

15 ''(B) QUALIFIED DIGITAL COMMODITY

16 CUSTODIAN.—A futures commission merchant

17 shall hold in a qualified digital commodity cus-

18 todian each unit of a digital commodity that

19 is—

20 ''(i) the property of a customer of the

21 futures commission merchant; or

22 ''(ii) otherwise so required by the

23 Commission to reasonably protect cus-

24 tomers or promote the public interest.

25 ''(2) SEGREGATION OF FUNDS.—

1          "(A) IN GENERAL.—A futures commission

2     merchant shall treat and deal with all money,

3     assets, and property of any digital commodity

4     customer received as belonging to the customer.

5          "(B) COMMINGLING PROHIBITED.—Money,

6     assets, and property of a customer described in

7     subparagraph (A) shall be separately accounted

8     for, and shall not be commingled with the funds

9     of the futures commission merchant or be used

10    to margin, secure, or guarantee any trades or

11    accounts of any customer or person other than

12    the person for whom the same are held.

13         "(C) DIGITAL COMMODITY CUSTOMER DE-

14    FINED.—For the purposes of this paragraph,

15    the term 'digital commodity customer' means a

16    customer involved in a cash or spot, leveraged,

17    margined, or financed digital commodity trans-

18    action in which the futures commission mer-

19    chant is acting as the counterparty.

20    "(3) EXCEPTIONS.—

21         "(A) USE OF FUNDS.—

22              "(i) IN GENERAL.—Notwithstanding

23         paragraph (2), money, assets, and property

24         of customers of a futures commission mer-

25         chant described in paragraph (2) may, for

17

1               convenience, be commingled and deposited

2               in the same account or accounts with any

3               bank, trust company, derivatives clearing

4               organization, or qualified digital com-

5               modity custodian.

6                     "(ii) WITHDRAWAL.—Notwithstanding

7               paragraph (2), the share of the money, as-

8               sets, and property described in clause (i)

9               as in the normal course of business shall

10               be necessary to margin, guarantee, secure,

11               transfer, adjust, or settle a digital com-

12               modity transaction with a registered entity

13               may be withdrawn and applied to such

14               purposes, including the payment of com-

15               missions, brokerage, interest, taxes, stor-

16               age, and other charges, lawfully accruing

17               in connection with the digital commodity

18               transaction.

19                   "(B) COMMISSION ACTION.—Notwith-

20               standing paragraph (2), in accordance with

21                such terms and conditions as the Commission

22               may prescribe by rule, regulation, or order, any

23               money, assets, or property of the customers of

24               a futures commission merchant described in

25               paragraph (2) may be commingled and depos-

18

1         ited in customer accounts with any other

2         money, assets, or property received by the fu-

3         tures commission merchant and required by the

4         Commission to be separately accounted for and

5         treated and dealt with as belonging to the cus-

6         tomer of the futures commission merchant.

7         "(4) PERMITTED INVESTMENTS.—Money de-

8         scribed in paragraph (2) may be invested in obliga-

9         tions of the United States, in general obligations of

10        any State or of any political subdivision of a State,

11        and in obligations fully guaranteed as to principal

12        and interest by the United States, or in any other

13        investment that the Commission may by rule or reg-

14        ulation prescribe, and the investments shall be made

15        in accordance with such rules and regulations and

16        subject to such conditions as the Commission may

17        prescribe.

18        "(5) PROHIBITION.—It shall be unlawful for

19        any person, including any derivatives clearing orga-

20        nization or depository institution that has received

21        any money, securities, or property for deposit in a

22        separate account or accounts as provided in para-

23        graph (2) to hold, dispose of, or use any of the

24        money, assets, or property that belongs to the depos-

25        iting futures commission merchant or any person

19

1    other than the digital commodity customer of the fu-
2    tures commission merchant.

3        ''(6) CUSTOMER RIGHT TO OPT OUT.—

4            ''(A) IN GENERAL.—A customer shall have
5        the right to waive the restrictions in this sub-
6        section, by affirmatively electing, in writing to
7        the futures commission merchant, to waive the
8        restrictions.

9            ''(B) LIMITATIONS.—The Commission
10        may, by rule, establish notice and disclosure re-
11        quirements, segregation requirements, invest-
12        ment limitations, and other rules related to the
13        waiving of any restrictions under this sub-
14        section that are reasonably necessary to protect
15        customers, including eligible contract partici-
16        pants, non-eligible contract participants, or any
17        other class of customers.

18        ''(7) CUSTOMER PROTECTION DURING BANK-
19    RUPTCY.—

20            ''(A) CUSTOMER PROPERTY.—All money,
21        assets, or property described in paragraph (2)
22        shall be considered customer property for pur-
23        poses of section 761 of title 11, United States
24        Code.

20

1        "(B) TRANSACTIONS.—A cash or spot, le-
2    veraged, margined, or financed digital com-
3    modity transaction in which the futures com-
4    mission merchant is acting as the counterparty
5    shall be considered a 'contract for the purchase
6    or sale of a commodity for future delivery on,
7    or subject to the rules of, a contract market or
8    board of trade' for purposes of the definition of
9    'commodity contract' in section 761 of title 11,
10   United States Code.

11       "(C) ASSETS REMOVED FROM SEGREGA-
12   TION.—Assets removed from segregation due to
13   a customer election under paragraph (6) shall
14   not be considered customer property for pur-
15   poses of section 761 of title 11, United States
16   Code.".

17   (e) LIMITATION ON FUTURES COMMISSION MER-
18 CHANT ACTING AS A COUNTERPARTY IN DIGITAL COM-
19 MODITY TRANSACTIONS.—Section 4d of such Act (7
20 U.S.C. 6d) is further amended by adding at the end the
21 following:

22   "(j) LIMITATION ON FUTURES COMMISSION MER-
23 CHANT ACTING AS A COUNTERPARTY IN DIGITAL COM-
24 MODITY TRANSACTIONS.—A registered futures commis-
25 sion merchant shall not act as a counterparty in any

21

1 agreement, contract, or transaction involving a digital

2 commodity that has not been listed for trading on a reg-

3 istered digital commodity exchange.''.

4     (f) COMMON PROVISIONS APPLICABLE TO REG-

5 ISTERED ENTITIES.—Section 5c of such Act (7 U.S.C.

6 7a–2) is amended—

7         (1) in subsection (a), by striking ''5(d) and

8     5b(c)(2)'' and inserting ''5(d), 5b(c)(2), and 5i(c)'';

9         (2) in subsection (b)—

10             (A) in each of paragraphs (1) and (2), by

11         inserting ''digital commodity exchange,'' before

12         ''derivatives''; and

13             (B) in paragraph (3), by inserting ''digital

14         commodity exchange,'' before ''derivatives'' each

15         place it appears; and

16         (3) in subsection (c)—

17             (A) in paragraph (2), by inserting ''or par-

18         ticipants'' before ''(in'';

19             (B) in paragraph (4)(B), by striking

20         ''1a(10)'' and inserting ''1a(9)''; and

21             (C) in paragraph (5), by adding at the end

22         the following:

23                 ''(D) SPECIAL RULES FOR THE LISTING OF

24             CERTAIN DIGITAL COMMODITIES.—

22

1        ''(i) IN GENERAL.—In the case of list-
2     ing a digital commodity for trading which
3     has not yet been listed for trading on an-
4     other registered entity, paragraphs (2) and
5     (3) shall apply as if the listing were a rule,
6     and paragraph (2) shall be applied by sub-
7     stituting '20 business days' for '10 busi-
8     ness days'.

9        ''(ii) TRANSITIONAL   EXTENSION.—
10    For 1 year after the registration of the
11    first digital commodity exchange, the Com-
12    mission shall have an additional 20 busi-
13    ness days to review any certification under
14    clause (i).

15       ''(iii)      DIGITAL      COMMODITY
16    PRESALES.—

17          ''(I) IN GENERAL.—In conjunc-
18       tion with listing a digital commodity
19       in which any unit of the digital com-
20       modity was obtained through a digital
21       commodity presale, a registered entity
22       shall prohibit any transaction with
23       any unit of the digital commodity ob-
24       tained in violation of section 4c(h).

1          ''(II) RELIANCE ON DISCLOSURE
2              BY   REGISTERED   DEVELOPER.—In
3              complying with subclause (I), a reg-
4              istered entity may rely on the records
5              and disclosures of a registered digital
6              commodity developer submitted to the
7              Commission or its designee under sec-
8              tion 4v in determining whether a unit
9              of a digital commodity was obtained
10             in violation of section 4c(h).

11         ''(iv) CONSIDERATION   OF   COM-
12              MENTS.—In  conducting  a  review  under
13              clause (i), the Commission shall consider
14              any comments provided by the Securities
15              and Exchange Commission regarding any
16              inconsistencies with this Act posed by the
17              potential listing of an asset that is not a
18              digital commodity.''.

19     (g) REGISTRATION OF DIGITAL COMMODITY EX-
20  CHANGES;   QUALIFIED   DIGITAL   COMMODITY
21  CUSTODIANS.—

22         (1) IN GENERAL.—The Commodity Exchange
23      Act (7 U.S.C. 1 et seq.) is amended by inserting
24      after section 5h the following:

24

1 **"SEC. 5i. REGISTRATION OF DIGITAL COMMODITY EX-**

2 **CHANGES.**

3     "(a) IN GENERAL.—

4         "(1) REGISTRATION.—

5             "(A) IN GENERAL.—Any trading facility

6         that offers or seeks to offer a market in digital

7         commodities may register with the Commission

8         as a digital commodity exchange.

9             "(B) APPLICATION.—A person desiring to

10         register as a digital commodity exchange shall

11         submit to the Commission an application in

12         such form and containing such information as

13         the Commission may require for the purpose of

14         making the determinations required for ap-

15         proval under subsections (c) and (e).

16         "(2) DEEMED REGISTRATION.—A registered

17     designated contract market or registered swap exe-

18     cution facility which fulfills the requirements of this

19     section may elect to be considered a registered dig-

20     ital commodity exchange, in such form and manner

21     as the Commission shall prescribe.

22         "(3) ADDITIONAL REGISTRATIONS.—A reg-

23     istered digital commodity exchange shall be—

24             "(A) a member of a registered futures as-

25         sociation; and

25

1          "(B) registered with the Secretary of the
2      Treasury as a Money Services Business.

3  "(b) TRADING.—

4          "(1) IN GENERAL.—A digital commodity ex-
5      change that is registered under subsection (a) may
6      make available for trading any digital commodity
7      that is not readily susceptible to manipulation, sub-
8      ject to this subsection.

9          "(2) RULES GOVERNING MARGINED OR LEVER-
10     AGED TRADING.—The Commission may make, pro-
11     mulgate, and enforce such additional rules governing
12     margined, leveraged, or financed transactions as are
13     reasonably necessary to protect market participants
14     and promote the orderly settlement of transactions
15     with respect to—

16               "(A) disclosure;

17               "(B) recordkeeping;

18               "(C) capital, margin, and other financial
19          resources;

20               "(D) reporting;

21               "(E) business conduct;

22               "(F) documentation; and

23               "(G) such other matters as the Commis-
24          sion demonstrates to be necessary.

26

1       "(3) PROHIBITION ON CERTAIN TRADING PRAC-

2   TICES.—Sections 4b, 4c, and 6(c) shall apply to any

3   agreement, contract, or transaction in a digital com-

4   modity as if the agreement, contract, or transaction

5   were a contract of sale of a commodity for future de-

6   livery.

7       "(4) PROHIBITION ON TRADING DERIVATIVES

8   PRODUCTS.—Registration as a digital commodity ex-

9   change shall not permit a trading facility to offer

10   any contract of sale of a commodity for future deliv-

11   ery, option, or swap for trading without also being

12   registered as a designated contract market or swap

13   execution facility.

14       "(5) RULES FOR DIGITAL COMMODITY

15   PRESALES.—The digital commodity exchange shall

16   have in place such rules as may be necessary to rea-

17   sonably ensure the orderly sale of any unit of a dig-

18   ital commodity obtained through a digital commodity

19   presale.

20   "(c) CORE PRINCIPLES FOR DIGITAL COMMODITY

21  EXCHANGES.—

22       "(1) COMPLIANCE WITH CORE PRINCIPLES.—

23          "(A) IN GENERAL.—To be registered, and

24          maintain registration, as a digital commodity

1    exchange, the digital commodity exchange shall

2    comply with—

3        ''(i) the core principles described in

4        this subsection; and

5        ''(ii) any requirement that the Com-

6        mission may impose by rule or regulation

7        pursuant to section 8a(5).

8    ''(B) REASONABLE DISCRETION OF A DIG-

9    ITAL COMMODITY EXCHANGE.—Unless other-

10   wise determined by the Commission by rule or

11   regulation, a digital commodity exchange de-

12   scribed in subparagraph (A) shall have reason-

13   able discretion in establishing the manner in

14   which the digital commodity exchange complies

15   with the core principles described in this sub-

16   section.

17   ''(2) COMPLIANCE WITH RULES.—A digital

18   commodity exchange shall—

19       ''(A) establish and enforce compliance with

20       any rule of the digital commodity exchange, in-

21       cluding—

22           ''(i) the terms and conditions of the

23           trades traded or processed on or through

24           the digital commodity exchange; and

28

1      "(ii) any limitation on access to the
2      digital commodity exchange;

3      "(B) establish and enforce trading, trade
4      processing, and participation rules that will
5      deter abuses and have the capacity to detect,
6      investigate, and enforce those rules, including
7      means—

8          "(i) to provide market participants
9      with impartial access to the market; and

10         "(ii) to capture information that may
11     be used in establishing whether rule viola-
12     tions have occurred; and

13     "(C) establish rules governing the oper-
14     ation of the exchange, including rules specifying
15     trading procedures to be used in entering and
16     executing orders traded or posted on the facil-
17     ity.

18     "(3) DIGITAL COMMODITIES NOT READILY SUS-
19     CEPTIBLE TO MANIPULATION.—

20         "(A) IN GENERAL.—The digital commodity
21     exchange shall permit trading in only digital
22     commodities that are not readily susceptible to
23     manipulation.

29

1                 "(B) LISTING RESTRICTIONS.—A digital

2      commodity exchange shall not permit trading

3      in—

4                  "(i) a unit of a digital commodity, if

5           it is reasonably likely that the transaction

6           history of the digital commodity can be

7           fraudulently altered by any person or

8           group of persons acting collectively; or

9                  "(ii) a unit of a digital commodity

10          subject to the restrictions in section 4c(h),

11         if it is reasonably likely that the

12         functionality or operation of the digital

13         commodity can be materially altered by

14         any person or group of persons under com-

15         mon control.

16              "(C) CONSIDERATIONS.—In assessing a

17      digital commodity under this paragraph, the ex-

18      change shall consider, with respect to the digital

19      commodity—

20                  "(i) its purpose and use;

21                  "(ii) its unit creation or release proc-

22           ess;

23                  "(iii) its consensus mechanism;

24                  "(iv) its governance structure;

25                  "(v) its participation and distribution;

30

1               "(vi) its current and proposed

2               functionality; and

3               "(vii) any other factor required by the

4               Commission.

5        "(D) RULES FOR FIXED-VALUE DIGITAL

6     COMMODITIES.—A fixed-value digital com-

7     modity shall be determined to be not readily

8     susceptible to manipulation under this section if

9     the issuer of the fixed-value digital commodity

10     is registered as a fixed-value digital commodity

11     operator or subject to comparable, comprehen-

12     sive supervision and regulation by another Fed-

13     eral regulator or an appropriate government au-

14     thority in the home country of the fixed-value

15     digital commodity operator.

16    "(4) TREATMENT OF CUSTOMER ASSETS.—

17     "(A) REQUIRED STANDARDS AND PROCE-

18     DURES.—Each digital commodity exchange

19     shall establish standards and procedures that

20     are designed to protect and ensure the safety of

21     customer money, assets, and property.

22     "(B) HOLDING OF CUSTOMER ASSETS.—

23         "(i) IN GENERAL.—Each digital com-

24         modity exchange shall hold customer

25         money, assets, and property in a manner

31

1 to minimize the customer's risk of loss or
2 unreasonable delay in the access to the
3 money, assets, and property of the cus-
4 tomer.

5 "(ii) SEGREGATION OF FUNDS.—

6 "(I) IN GENERAL.—A digital
7 commodity exchange shall treat and
8 deal with all money, assets, and prop-
9 erty of any customer received as be-
10 longing to the customer.

11 "(II) COMMINGLING PROHIB-
12 ITED.—Money, assets, and property of
13 a customer described in subclause (I)
14 shall be separately accounted for and
15 shall not be commingled with the
16 funds of the digital commodity ex-
17 change or be used to margin, secure,
18 or guarantee any trades or accounts
19 of any customer or person other than
20 the person for whom the same are
21 held.

22 "(iii) EXCEPTIONS.—

23 "(I) USE OF FUNDS.—

24 "(aa) IN GENERAL.—Not-
25 withstanding clause (ii), money,

32

1                 assets, and property of customers

2                 of a digital commodity exchange

3                 described in clause (ii) may, for

4                 convenience, be commingled and

5                 deposited in the same account or

6                 accounts with any bank, trust

7                 company, or qualified digital

8                 commodity custodian.

9                     "(bb) WITHDRAWAL.—Not-

10                 withstanding clause (ii), such

11                 share of the money, assets, and

12                 property described in item (aa)

13                 as in the normal course of busi-

14                 ness shall be necessary to mar-

15                 gin, guarantee, secure, transfer,

16                 adjust, or settle a digital com-

17                 modity transaction with a reg-

18                 istered entity may be withdrawn

19                 and applied to such purposes, in-

20                 cluding the payment of commis-

21                 sions, brokerage, interest, taxes,

22                 storage, and other charges, law-

23                 fully accruing in connection with

24                 the digital commodity trans-

25                 action.

33

1          ''(II) COMMISSION ACTION.—

2               Notwithstanding clause (ii), in accord-

3               ance with such terms and conditions

4               as the Commission may prescribe by

5               rule, regulation, or order, any money,

6               assets, or property of the customers of

7               a digital commodity exchange de-

8               scribed in clause (ii) may be commin-

9               gled and deposited in customer ac-

10              counts with any other money, assets,

11              or property received by the digital

12              commodity exchange and required by

13              the Commission to be separately ac-

14              counted for and treated and dealt

15              with as belonging to the customer of

16              the digital commodity exchange.

17          ''(C) PERMITTED INVESTMENTS.—Money

18      described in clause (ii) may be invested in obli-

19      gations of the United States, in general obliga-

20      tions of any State or of any political subdivision

21      of a State, and in obligations fully guaranteed

22      as to principal and interest by the United

23      States, or in any other investment that the

24      Commission may by rule or regulation pre-

25      scribe, and such investments shall be made in

34

1    accordance with such rules and regulations and
2    subject to such conditions as the Commission
3    may prescribe.

4        ''(D) CUSTOMER PROTECTION DURING
5    BANKRUPTCY.—

6            ''(i) CUSTOMER PROPERTY.—All as-
7        sets held on behalf of a customer by a dig-
8        ital commodity exchange registered under
9        section 5i of this Act, and all money, as-
10       sets, and property of any customer re-
11       ceived by a digital commodity exchange
12       registered under section 5i of this Act for
13       trading or custody, or to facilitate, margin,
14       guarantee, or secure digital commodity
15       transactions (including money, assets, or
16       property accruing to the customer as the
17       result of the transactions), shall be consid-
18       ered customer property for purposes of sec-
19       tion 761 of title 11, United States Code.

20           ''(ii) TRANSACTIONS.—A transaction
21       involving a unit of a digital commodity oc-
22       curring on or subject to the rules of a dig-
23       ital commodity exchange registered under
24       section 5i of this Act shall be considered a
25       'contract for the purchase or sale of a com-

35

1       modity for future delivery, on or subject to

2       the rules of, a contract market or board of

3       trade' for the purposes of the definition of

4       a 'commodity contract' in section 761 of

5       title 11, United States Code.

6          "(iii) EXCHANGES.—A digital com-

7       modity exchange registered under section

8       5i of this Act shall be considered a futures

9       commission merchant for purposes of sec-

10      tion 761 of title 11, United States Code.

11         "(iv) ASSETS REMOVED FROM SEG-

12      REGATION.—Notwithstanding clause (i),

13      assets that have been removed from seg-

14      regation due to a customer election under

15      subparagraph (F) shall not be considered

16      customer property for purposes of section

17      761 of title 11, United States Code.

18     "(E) MISUSE OF CUSTOMER PROPERTY.—

19 It shall be unlawful—

20         "(i) for any digital commodity ex-

21      change that has received any customer

22      money, assets, or property for custody to

23      dispose of, or use any such money, assets,

24      or property as belonging to the digital

25      commodity exchange; or

36

1              "(ii) for any other person, including

2        any depository, other digital commodity ex-

3        change, or digital commodity custodian

4        that has received any customer money, as-

5        sets, or property for deposit, to hold, dis-

6        pose of, or use any such money, assets, or

7        property as belonging to the depositing

8        digital commodity exchange or any person

9        other than the customers of the digital

10       commodity exchange.

11       "(F) CUSTOMER RIGHT TO OPT OUT.—

12              "(i) IN GENERAL.—A customer shall

13       have the right to waive the restrictions in

14       subparagraph (B), by affirmatively elect-

15       ing, in writing to the digital commodity ex-

16       change, to waive the restrictions.

17              "(ii) LIMITATIONS.—The Commission

18       may, by rule, establish notice and disclo-

19       sure requirements, segregation require-

20       ments, investment limitations, and other

21       rules related to the waiving of any restric-

22       tions under this paragraph that are rea-

23       sonably necessary to protect customers, in-

24       cluding eligible contract participants, non-

1             eligible contract participants, or any other

2             class of customers.

3    ''(5) MONITORING OF TRADING AND TRADE

4 PROCESSING.—

5             ''(A) IN GENERAL.—The digital commodity

6             exchange shall provide a competitive, open, and

7             efficient market and mechanism for executing

8             transactions that protects the price discovery

9             process of trading on the exchange.

10             ''(B) PROTECTION OF MARKETS AND MAR-

11             KET PARTICIPANTS.—The digital commodity ex-

12             change shall establish and enforce rules—

13                    ''(i) to protect markets and market

14                    participants from abusive practices com-

15                    mitted by any party, including abusive

16                    practices committed by a party acting as

17                    an agent for a participant; and

18                    ''(ii) to promote fair and equitable

19                    trading on the exchange.

20             ''(C) The digital commodity exchange

21             shall—

22                    ''(i) establish and enforce rules or

23                    terms and conditions defining, or specifica-

24                    tions detailing—

38

1          "(I)  trading  procedures  to  be
2     used  in  entering  and  executing  orders
3     traded  on  or  through  the  facilities  of
4     the  digital  commodity  exchange;  and

5          "(II)  procedures  for  trade  proc-
6     essing  of  digital  commodities  on  or
7     through  the  facilities  of  the  digital
8     commodity  exchange;  and

9          "(ii)  monitor  trading  in  digital  com-
10     modities  to  prevent  manipulation,  price
11     distortion,  and  disruptions  of  the  delivery
12     or  cash  settlement  process  through  surveil-
13     lance,  compliance,  and  disciplinary  prac-
14     tices  and  procedures,  including  methods
15     for  conducting  real-time  monitoring  of
16     trading  and  comprehensive  and  accurate
17     trade  reconstructions.

18     "(6) ABILITY TO OBTAIN INFORMATION.—The
19 digital commodity exchange shall—

20          "(A)  establish  and  enforce  rules  that  will
21     allow  the  facility  to  obtain  any  necessary  infor-
22     mation  to  perform  any  of  the  functions  de-
23     scribed  in  this  section;

24          "(B)  provide  the  information  to  the  Com-
25     mission  on  request;  and

39

1          ''(C) have the capacity to carry out such
2     international information-sharing agreements as
3     the Commission may require.

4          ''(7) EMERGENCY AUTHORITY.—The digital
5     commodity exchange shall adopt rules to provide for
6     the exercise of emergency authority, in consultation
7     or cooperation with the Commission or a registered
8     entity, as is necessary and appropriate, including the
9     authority to facilitate the liquidation or transfer of
10    open positions in any digital commodity or to sus-
11    pend or curtail trading in a digital commodity.

12         ''(8) REPORTING REQUIREMENTS.—

13         ''(A) DUTY OF DIGITAL COMMODITY EX-
14         CHANGE.—Each digital commodity exchange
15         shall provide to the Commission all information
16         that is determined by the Commission to be
17         necessary to perform each responsibility of the
18         Commission under this Act.

19         ''(B) TIMELY PUBLICATION OF TRADING
20         INFORMATION.—

21              ''(i) IN GENERAL.—The digital com-
22              modity exchange shall make public timely
23              information on price, trading volume, and
24              other trading data on digital commodities

40

1　　to the extent prescribed by the Commis-

2　　sion.

3　　　　"(ii) CAPACITY OF DIGITAL COM-

4　　MODITY EXCHANGE.—The digital com-

5　　modity exchange shall be required to have

6　　the capacity to electronically capture and

7　　transmit trade information with respect to

8　　transactions executed on the exchange.

9　　"(9) RECORDKEEPING AND REPORTING.—

10　　　　"(A) IN GENERAL.—A digital commodity

11　　exchange shall—

12　　　　"(i) maintain records of all activities

13　　relating to the business of the facility, in-

14　　cluding a complete audit trail, in a form

15　　and manner acceptable to the Commission

16　　for a period of 5 years;

17　　　　"(ii) report to the Commission, in a

18　　form and manner acceptable to the Com-

19　　mission, such information as the Commis-

20　　sion determines to be necessary or appro-

21　　priate for the Commission to perform the

22　　duties of the Commission under this Act;

23　　and

24　　　　"(iii) keep any such records of digital

25　　commodities which relate to a security

1            open to inspection and examination by the

2            Securities and Exchange Commission.

3               "(B) INFORMATION-SHARING.—Subject to

4            section 8, and on request, the Commission shall

5            share information collected under subparagraph

6            (A) with—

7                   "(i) the Board;

8                   "(ii) the Securities and Exchange

9            Commission;

10                  "(iii) each appropriate Federal bank-

11            ing agency;

12                  "(iv) each appropriate State bank su-

13            pervisor (within the meaning of section 3

14            of the Federal Deposit Insurance Act);

15                  "(v) the Financial Stability Oversight

16            Council;

17                  "(vi) the Department of Justice; and

18                  "(vii) any other person that the Com-

19            mission determines to be appropriate, in-

20            cluding—

21                      "(I) foreign financial supervisors

22                (including foreign futures authorities);

23                      "(II) foreign central banks; and

24                      "(III) foreign ministries.

42

1          ''(C) CONFIDENTIALITY AGREEMENT.—Be-
2     fore the Commission may share information
3     with any entity described in subparagraph (B),
4     the Commission shall receive a written agree-
5     ment from each entity stating that the entity
6     shall abide by the confidentiality requirements
7     described in section 8 relating to the informa-
8     tion on digital commodity transactions that is
9     provided.

10          ''(D)   PROVIDING   INFORMATION.—Each
11     digital commodity exchange shall provide to the
12     Commission (including any designee of the
13     Commission) information under subparagraph
14     (A) in such form and at such frequency as is
15     required by the Commission.

16     ''(10)   ANTITRUST   CONSIDERATIONS.—Unless
17     necessary or appropriate to achieve the purposes of
18     this Act, the digital commodity exchange shall not—

19          ''(A) adopt any rules or take any actions
20     that result in any unreasonable restraint of
21     trade; or

22          ''(B) impose any material anticompetitive
23     burden on trading.

24     ''(11) CONFLICTS OF INTEREST.—The digital
25     commodity exchange shall—

43

1          ''(A) establish and enforce rules to mini-
2     mize conflicts of interest in its decision-making
3     process; and
4          ''(B) establish a process for resolving the
5     conflicts of interest.
6     ''(12) FINANCIAL RESOURCES.—
7          ''(A) IN GENERAL.—Each digital com-
8     modity exchange shall have adequate financial,
9     operational, and managerial resources, as deter-
10    mined by the Commission, to discharge each re-
11    sponsibility of the digital commodity exchange.
12         ''(B) MINIMUM AMOUNT OF FINANCIAL RE-
13    SOURCES.—Each digital commodity exchange
14    shall possess financial resources that, at a min-
15    imum, exceed the total amount that would en-
16    able the digital commodity exchange to conduct
17    an orderly wind-down of its activities.
18         ''(C) ADDITIONAL FINANCIAL RESOURCES
19    FOR LEVERAGE TRADING.—The Commission
20    may require such additional financial resources
21    as are necessary to enable a digital commodity
22    exchange which offers margined, leveraged, or
23    financed transactions to fulfill its customer obli-
24    gations.
25    ''(13) GOVERNANCE FITNESS STANDARDS.—

44

1          "(A)  GOVERNANCE  ARRANGEMENTS.—

2     Each digital commodity exchange shall establish

3     governance arrangements that are transparent

4     to fulfill public interest requirements.

5          "(B) FITNESS STANDARDS.—Each digital

6     commodity exchange shall establish and enforce

7     appropriate fitness standards for—

8               "(i) directors;

9               "(ii) any individual or entity with di-

10          rect access to the settlement activities of

11          the digital commodity exchange;

12               "(iii) any individual or entity with di-

13          rect access to any affiliated digital com-

14          modity custodian;

15               "(iv) any entity offering affiliated

16          services for the digital commodity ex-

17          change; and

18               "(v) any party affiliated with any in-

19          dividual or entity described in this clause.

20     "(14) SYSTEM SAFEGUARDS.—The digital com-

21     modity exchange shall—

22          "(A) establish and maintain a program of

23     risk analysis and oversight to identify and mini-

24     mize sources of operational and security risks,

45

1         through the development of appropriate controls

2         and procedures, and automated systems, that—

3                  "(i) are reliable and secure; and

4                  "(ii) have adequate scalable capacity;

5          "(B) establish and maintain emergency

6         procedures, backup facilities, and a plan for dis-

7         aster recovery that allow for—

8                  "(i) the timely recovery and resump-

9                  tion of operations; and

10                "(ii) the fulfillment of the responsibil-

11                ities and obligations of the digital com-

12                modity exchange; and

13          "(C) periodically conduct tests to verify

14         that the backup resources of the digital com-

15         modity exchange are sufficient to ensure contin-

16         ued—

17                "(i) order processing and trade

18                matching;

19                "(ii) price reporting;

20                "(iii) market surveillance; and

21                "(iv) maintenance of a comprehensive

22                and accurate audit trail.

23   "(d) APPOINTMENT OF TRUSTEE.—

24         "(1) IN GENERAL.—If a proceeding under sec-

25   tion 5e results in the suspension or revocation of the

46

1    registration of a digital commodity exchange, or if a

2    digital commodity exchange withdraws from registra-

3    tion, the Commission, on notice to the digital com-

4    modity exchange, may apply to the appropriate

5    United States district court where the digital com-

6    modity exchange is located for the appointment of a

7    trustee.

8        "(2) ASSUMPTION OF JURISDICTION.—If the

9    Commission applies for appointment of a trustee

10   under paragraph (1)—

11           "(A) the court may take exclusive jurisdic-

12       tion over the digital commodity exchange and

13       the records and assets of the digital commodity

14       exchange, wherever located; and

15           "(B) if the court takes jurisdiction under

16       subparagraph (A), the court shall appoint the

17       Commission, or a person designated by the

18       Commission, as trustee with power to take pos-

19       session and continue to operate or terminate

20       the operations of the digital commodity ex-

21       change in an orderly manner for the protection

22       of customers subject to such terms and condi-

23       tions as the court may prescribe.

24   "(e) QUALIFIED DIGITAL COMMODITY CUSTO-

25   DIAN.—A digital commodity exchange shall hold in a

47

1 qualified digital commodity custodian each unit of a digital

2 commodity that is—

3   ''(1) the property of a customer of the digital

4   commodity exchange;

5   ''(2) required to be held by the digital com-

6   modity exchange under subsection (b)(2) or (c)(12)

7   of this section; or

8   ''(3) otherwise so required by the Commission

9   to reasonably protect customers or promote the pub-

10   lic interest.

11  ''(f) EXEMPTIONS.—In order to promote responsible

12 economic or financial innovation and fair competition, or

13 protect customers, the Commission may (on its own initia-

14 tive or on application of the registered digital commodity

15 exchange) exempt, either unconditionally or on stated

16 terms or conditions or for stated periods and either retro-

17 actively or prospectively, or both, a registered digital com-

18 modity exchange from the requirements of this section, if

19 the Commission determines that—

20   ''(1)(A) the exemption would be consistent with

21   the public interest and the purposes of this Act; and

22   ''(B) the exemption will not have a material ad-

23   verse effect on the ability of the Commission or the

24   digital commodity exchange to discharge regulatory

25   or self-regulatory duties under this Act; or

48

1        ''(2) the digital commodity exchange is subject

2        to comparable, comprehensive supervision and regu-

3        lation by the appropriate government authorities in

4        the home country of the organization.

5        ''(g) CUSTOMER DEFINED.—In this section, the term

6   'customer' means any person that maintains an account

7   for the trading of digital commodities directly with a dig-

8   ital commodity exchange (other than a person that is

9   owned or controlled, directly or indirectly, by the digital

10  commodity exchange) for its own behalf or on behalf of

11  other any person.

12       ''(h) FEDERAL PREEMPTION.—Notwithstanding any

13  other provision of law, the Commission shall have exclusive

14  jurisdiction over any digital commodity exchange reg-

15  istered under this section.

16  **"SEC. 5j. QUALIFIED DIGITAL COMMODITY CUSTODIANS.**

17       ''(a) IN GENERAL.—The Commission shall designate

18  a digital commodity custodian as a qualified digital com-

19  modity custodian, if—

20       ''(1) the Commission finds the digital com-

21       modity custodian is subject to adequate supervision

22       and appropriate regulation by the Commission, the

23       Securities and Exchange Commission, an appro-

24       priate Federal banking agency, a State bank super-

25       visor (within the meaning of section 3 of the Federal

49

1    Deposit Insurance Act), or an appropriate foreign
2    governmental authority in the home country of the
3    digital commodity custodian; and

4        "(2) the digital commodity custodian agrees to
5        such regular and periodic sharing of information as
6        the Commission determines by rule shall be reason-
7        ably necessary to effectuate any of the provisions, or
8        to accomplish any of the purposes, of this Act.

9    "(b) RULEMAKING AUTHORITY.—For purposes of
10   subsection (a), the Commission, by rule or order, shall de-
11   fine 'adequate supervision' and 'appropriate regulation' as
12   any regulatory regime which meets such minimum stand-
13   ards for supervision and regulation as the Commission de-
14   termines are reasonably necessary to protect the property
15   of customers of a registered digital commodity exchange,
16   including minimum standards relating to—

17        "(1) accessibility of customer assets;
18        "(2) financial resources;
19        "(3) risk management requirements;
20        "(4) governance arrangements;
21        "(5) fitness standards;
22        "(6) recordkeeping;
23        "(7) information-sharing; and
24        "(8) conflicts of interest.

50

1 "(c) AUTHORITY TO TEMPORARILY SUSPEND

2 STANDARDS.—The Commission may, by rule or order,

3 temporarily suspend, in whole or in part, any requirement

4 imposed under, or any standard referred to in, this section

5 if the Commission determines that the suspension would

6 be consistent with the public interest and the purposes of

7 this Act.".

8 (2) CERTAIN DIGITAL COMMODITY EXCHANGE

9 FUNCTIONS NOT SUFFICIENT TO TRIGGER REQUIRE-

10 MENT TO REGISTER AS FUTURES COMMISSION MER-

11 CHANT.—Section 4f(c) of the Commodity Exchange

12 Act (7 U.S.C. 6f(c)) is amended by adding at the

13 end the following:

14 "(12) CLARIFICATION OF SCOPE OF REGISTRA-

15 TION REQUIREMENT.—A registered digital com-

16 modity exchange shall not be required to register as

17 a futures commission merchant for any activity for

18 which the exchange is regulated under section 5i.".

19 (h) REGISTRATION AND REGULATION OF FIXED-

20 VALUE DIGITAL COMMODITY OPERATORS.—

21 (1) DEFINITIONS.—Section 1a of the Com-

22 modity Exchange Act (7 U.S.C. 1a) is further

23 amended by adding at the end the following:

24 "(56) FIXED-VALUE DIGITAL COMMODITY.—

51

1            ''(A) IN GENERAL.—The term 'fixed-value

2         digital commodity' means a digital commodity

3         which is redeemable for a fixed amount of fiat

4         currency or another commodity, or the value

5         thereof.

6            ''(B) FURTHER DEFINITION.—The Com-

7         mission, by rule or regulation, may include

8         within, or exclude from, the term 'fixed-value

9         digital commodity' any digital commodity if the

10        Commission determines that the rule or regula-

11        tion will effectuate the purposes of this Act.

12       ''(57) FIXED-VALUE DIGITAL COMMODITY OP-

13 ERATOR.—

14            ''(A) IN GENERAL.—The term 'fixed-value

15         digital commodity operator' means any per-

16         son—

17               ''(i) engaged in a business that solic-

18            its, accepts, or receives funds, property, or

19            other assets from others for the purpose of

20            issuing units of a fixed-value digital com-

21            modity; or

22               ''(ii) who is registered with the Com-

23            mission as a fixed-value digital commodity

24            operator.

52

1            "(B) FURTHER DEFINITION.—The Com-

2       mission, by rule or regulation, may include

3       within, or exclude from, the term 'fixed-value

4       digital commodity operator' any person engaged

5       in a business of issuing fixed-value digital com-

6       modities, if the Commission determines that the

7       rule or regulation will effectuate the purposes of

8       this Act.".

9     (2) REGISTRATION AND REGULATION.—The

10 Commodity Exchange Act (7 U.S.C. 1 et seq.) is

11 amended by inserting after section 4t the following:

12 **"SEC. 4u. REGISTRATION AND REGULATION OF FIXED-**

13         **VALUE DIGITAL COMMODITY OPERATORS.**

14   "(a) REGISTRATION.—

15     "(1) IN GENERAL.—A person may register with

16 the Commission as a fixed-value digital commodity

17 operator.

18     "(2) FILING REQUIREMENT.—A person desiring

19 to register with the Commission as a fixed-value dig-

20 ital commodity operator shall file with the Commis-

21 sion a registration application, in such form and

22 manner as is prescribed by the Commission.

23     "(3) APPLICATION CONTENTS.—The application

24 shall include—

1               "(A) a description of the operation of the

2        fixed-value digital commodity, including the

3        process for issuing, redeeming, and calculating

4        the value of the outstanding redeemable units

5        of the fixed-value digital commodity;

6               "(B) the process by which the fixed-value

7        digital commodity operator would wind-down its

8        business, including—

9                   "(i) transferring the funds and prop-

10           erty available for the redemption of units

11           of the fixed-value digital commodity to an-

12           other fixed-value digital commodity oper-

13           ator; or

14                   "(ii) redeeming outstanding units of

15           the fixed-value digital commodity in an or-

16           derly manner; and

17               "(C) such other information as the Com-

18        mission considers necessary concerning the

19        business in which the applicant is or will be en-

20        gaged.

21      "(b) PROHIBITIONS; ENFORCEMENT.—

22           "(1) STATUTORY DISQUALIFICATION.—Except

23      to the extent otherwise specifically provided by rule,

24      regulation, or order, it shall be unlawful for a reg-

25      istered fixed-value digital commodity operator to

54

1 permit any person who is associated with the oper-

2 ator and is subject to a statutory disqualification, to

3 take any action in relation to the fixed-value digital

4 commodity on behalf of the operator, if the operator

5 knew, or in the exercise of reasonable care should

6 have known, of the statutory disqualification.

7 "(2) REVOCATION.—

8 "(A) IN GENERAL.—The failure of a reg-

9 istered fixed-value digital commodity operator

10 to comply with any provision of this Act or any

11 regulation or order of the Commission under

12 this Act shall be cause for the suspension for a

13 period not to exceed 180 days, or revocation, of

14 the registration of the operator as a fixed-value

15 digital commodity operator, in accordance with

16 the procedures and subject to the judicial re-

17 view provided in section 6(b).

18 "(B) TRUSTEE.—If a proceeding under

19 subparagraph (A) results in the suspension or

20 revocation of the registration of a fixed-value

21 digital commodity operator, or if such an oper-

22 ator withdraws from registration, the Commis-

23 sion, on notice to the operator, may apply to

24 the appropriate United States district court for

55

1   the judicial district in which the operator is lo-
2   cated for the appointment of a trustee.

3   ''(C) ASSUMPTION OF JURISDICTION.—If
4   the Commission applies for appointment of a
5   trustee under subparagraph (B)—

6          ''(i) the court may take exclusive ju-
7       risdiction over the fixed-value digital com-
8       modity operator and the records and assets
9       of the operator, wherever located; and

10         ''(ii) if the court takes jurisdiction
11      under clause (i), the court shall appoint
12      the Commission, or a person designated by
13      the Commission, as trustee with power to
14      take possession and continue to operate or
15      terminate the operations of the fixed-value
16      digital commodity operator in an orderly
17      manner for the protection of participants,
18      subject to such terms and conditions as the
19      court may prescribe.

20  ''(c) DUTIES OF A REGISTERED FIXED-VALUE DIG-
21  ITAL COMMODITY OPERATOR.—A registered fixed-value
22  digital commodity operator shall comply, in such manner
23  as the Commission shall by rule or order determine, with
24  the following requirements:

56

1          "(1) DISCLOSURE OF GENERAL INFORMA-
2     TION.—For each fixed-value digital commodity it op-
3     erates, such an operator shall—
4               "(A) disclose to the Commission informa-
5          tion concerning—
6                    "(i) the terms and conditions of the
7               fixed-value digital commodity transactions;
8                    "(ii) the fixed-value digital commodity
9               operations, mechanisms, and practices;
10                   "(iii) the process for the issuance and
11              redemption of units of the fixed-value dig-
12              ital commodity;
13                   "(iv) the financial integrity protec-
14              tions relating to the fixed-value digital
15              commodity; and
16                   "(v) other information relevant to
17              transacting in the fixed-value digital com-
18              modity; and
19              "(B) continue to submit to the Commission
20         reports that contain such information per-
21         taining to the business of the operator as the
22         Commission may require.
23         "(2) PUBLICLY AVAILABLE INFORMATION.—
24    For each fixed-value digital commodity it operates,

1     such an operator shall make available to the public,

2     information concerning—

3           ''(A) the fixed-value digital commodity op-

4     erations, mechanisms, and practices;

5           ''(B) the process for the issuance and re-

6     demption of the units of the fixed-value digital

7     commodity;

8           ''(C) information about the material risks

9     and characteristics of the fixed-value digital

10     commodity;

11           ''(D) the total value of the outstanding

12     units of the fixed-value digital commodity;

13           ''(E) the total value of funds and other

14     property held by the operator for redemption;

15           ''(F) any material incentives or conflicts of

16     interest that the operator may have in connec-

17     tion with the fixed-value digital commodity; and

18           ''(G) any other information the Commis-

19     sion determines is relevant to the public's un-

20     derstanding of the operation of the fixed-value

21     digital commodity.

22     ''(3) RECORD OF ASSETS AND LIABILITIES.—

23     For each fixed-value digital commodity it operates,

24     such an operator shall maintain daily redemption

25     fund records reflecting the total amount of funds or

58

property held by the operator for redemption and
the total value of outstanding redeemable units of
the fixed-value digital commodity.

"(4) ABILITY TO OBTAIN INFORMATION.—Such
an operator shall—

"(A) establish and enforce internal systems
and procedures to obtain any necessary infor-
mation to perform any of the functions de-
scribed in this section; and

"(B) provide the information to the Com-
mission, as applicable, on request.

"(5) CONFLICTS OF INTEREST.—Such an oper-
ator shall implement conflict-of-interest systems and
procedures that address such issues as the Commis-
sion determines to be appropriate.

"(6) RISK MANAGEMENT PROCEDURES.—Such
an operator shall establish robust and professional
risk management systems adequate for managing
the day-to-day business of the operator.

"(7) REPORTING AND RECORDKEEPING.—Such
an operator shall—

"(A) make such reports as are required by
the Commission by rule or regulation regarding
the issuance and redemption transactions, and

1     positions and financial condition of the reg-
2     istered fixed-value digital commodity operator;

3          ''(B) keep books and records in such form
4     and manner and for such period as may be pre-
5     scribed by the Commission by rule or regula-
6     tion; and

7          ''(C) keep the books and records referred
8     to in subparagraph (B) open to inspection and
9     examination by any representative of the Com-
10    mission.

11         ''(8) BUSINESS CONDUCT STANDARDS.—Such
12    an operator shall conform with such business con-
13    duct standards as the Commission may prescribe, re-
14    lated to—

15         ''(A) fraud, manipulation, and other abu-
16    sive practices involving the issuance and re-
17    demption of any unit of the fixed-value digital
18    commodity;

19         ''(B) diligent supervision of the business of
20    the operator;

21         ''(C) communicating with the public in a
22    fair and balanced manner based on principles of
23    fair dealing and good faith; and

24         ''(D) such other standards and require-
25    ments as the Commission may determine are

60

1     appropriate in the public interest, for the pro-
2     tection of participants in the fixed-value digital
3     commodity, or otherwise in furtherance of the
4     purposes of this section.

5     ''(9) REQUIREMENTS FOR ISSUANCE AND RE-
6     DEMPTION TRANSACTION RECORDS.—

7           ''(A) IN GENERAL.—For each fixed-value
8           digital commodity it operates, such an operator
9           shall maintain daily transaction records of the
10          units of the fixed-value digital commodity
11          issued or redeemed by the operator for such pe-
12          riod as may be required by the Commission by
13          rule or regulation.

14          ''(B) COUNTERPARTY RECORDS.—For each
15          fixed-value digital commodity it operates, such
16          an operator shall maintain daily transaction
17          records for each counterparty to an issuance or
18          redemption transaction in a manner and form
19          that is identifiable with each fixed-value digital
20          commodity transaction.

21          ''(C) AUDIT TRAIL.—For each fixed-value
22          digital commodity it operates, such an operator
23          shall maintain a complete audit trail for con-
24          ducting comprehensive and accurate issuance
25          and redemption transaction reconstructions.

61

1                 "(D)   INFORMATION   REQUIREMENTS.—

2              Such a daily transaction record shall include

3              such information as the Commission shall re-

4              quire by rule or regulation.

5    "(d) FUNDS HELD FOR REDEMPTION.—

6        "(1) AMOUNT OF FUNDS.—For each fixed-value

7 digital commodity it operates, a registered fixed-

8 value digital commodity operator shall maintain

9 funds or other property equal to the total value of

10 any outstanding redeemable fixed-value digital com-

11 modities issued by the operator, as determined in ac-

12 cordance with such requirements and limitations on

13 valuation as the Commission shall, by rule, pre-

14 scribe.

15        "(2) SEGREGATION REQUIREMENTS.—

16                 "(A) FUNDS HELD FOR REDEMPTION.—

17              For each fixed-value digital commodity it oper-

18              ates, a registered fixed-value digital commodity

19              operator shall—

20                     "(i) segregate the funds or other

21                 property held for redemption; and

22                     "(ii) in accordance with such rules

23                 and regulations as the Commission may

24                 promulgate, maintain the funds or other

25                 property in a segregated account separate

62

1              from the assets and other interests of the

2              operator.

3              ''(B) APPLICABILITY.—Subparagraph (A)

4              shall not preclude any commercial arrangement

5              regarding the investment of segregated funds or

6              other property that may only be invested in

7              such investments as the Commission may per-

8              mit by rule or regulation.

9              ''(C) CUSTODIANS.—The segregated ac-

10            count referred to in subparagraph (A) shall be

11            carried by a qualified digital commodity custo-

12            dian for any digital commodity held for redemp-

13            tion.

14    ''(e) FINANCIAL RESOURCES.—

15        ''(1) IN GENERAL.—A registered fixed-value

16    digital commodity operator shall meet such min-

17    imum capital requirements as the Commission shall

18    by rule or regulation prescribe, pursuant to the

19    standards in paragraph (2).

20        ''(2) STANDARDS FOR CAPITAL REQUIRE-

21    MENTS.—

22              ''(A) The requirements imposed under

23              paragraph (1) shall—

1          "(i) help ensure the safety and sound-
2      ness of the fixed-value digital commodity
3      operator;
4          "(ii) be appropriate for the risk asso-
5      ciated with the funds for redemption held
6      by such an operator; and
7          "(iii) be sufficient for the operator to
8      comply with its plan for an orderly wind-
9      down of its activities.
10      "(B) ADJUSTMENTS.—In setting capital
11  requirements for a registered fixed-value digital
12  commodity operator, the Commission shall take
13  into account—
14          "(i) the risks associated with other ac-
15      tivities conducted by the operator or affili-
16      ated entity for activities not subject to reg-
17      ulations providing for a minimum capital
18      standard; and
19          "(ii) any other capital requirement
20      imposed on the operator or affiliated entity
21      for activities subject to regulations pro-
22      viding for a minimum capital standard.
23      "(f) EXEMPTIONS.—In order to promote responsible
24  economic or financial innovation and fair competition, or
25  protect customers, the Commission may (on its own initia-

64

1 tive or on application of the registered fixed-value digital

2 commodity operator) exempt, either unconditionally or on

3 stated terms or conditions or for stated periods and either

4 retroactively or prospectively, or both, a registered fixed-

5 value digital commodity operator from the requirements

6 of this section, if the Commission determines that—

7      ''(1) the exemption would be consistent with the

8      public interest and the purposes of this Act; and

9      ''(2) the exemption will not have a material ad-

10      verse effect on the ability of the Commission or the

11      operator to discharge any duty of the Commission or

12      the operator, respectively, under this Act.

13 ''(g) RULEMAKING.—

14      ''(1) IN GENERAL.—The Commission shall

15      adopt rules for registered fixed-value digital com-

16      modity operators and to effectuate the requirements

17      of this section.

18      ''(2) PROHIBITION ON THE COLLECTION OF

19      CERTAIN INFORMATION.—This section shall not be

20      construed to—

21           ''(A) require a registered fixed-value digital

22           commodity operator to solicit, collect, maintain,

23           report, or otherwise make available to the Com-

24           mission, any other State or Federal agency, or

25           any foreign authority, any record or informa-

65

1           tion relating to any person, counterparty,

2           amount, or account utilizing a unit of the fixed-

3           value digital commodity in a transaction which

4           does not involve the issuance or redemption of

5           a unit of the fixed-value digital commodity, or

6           to cause any other person to do the same; or

7              "(B) permit the Commission to require

8           such an operator to solicit, collect, maintain, re-

9           port, or otherwise make available to the Com-

10          mission, any other State or Federal agency, or

11          any foreign authority, any record or informa-

12          tion relating to any person, counterparty,

13          amount, or account utilizing a unit of the fixed-

14          value digital commodity in a transaction which

15          does not involve the issuance or redemption of

16          a unit of the fixed-value digital commodity, or

17          to cause any other person to do the same.".

18     (i) VOLUNTARY REGISTRATION AND DISCLOSURES

19 BY DIGITAL COMMODITY DEVELOPERS.—

20        (1) DEFINITION.—Section 1a of the Commodity

21 Exchange Act (7 U.S.C. 1a) is further amended by

22 adding at the end the following:

23        "(58) DIGITAL COMMODITY DEVELOPER.—The

24 term 'digital commodity developer' means a person

25 who creates or develops a digital commodity.".

1       (2) REGISTRATION AND DISCLOSURES.—The

2     Commodity Exchange Act (7 U.S.C. 1 et seq.), as

3     amended by subsection (f)(2) of this section, is fur-

4     ther amended by inserting after section 4t the fol-

5     lowing:

6   **"SEC. 4v. REGISTRATION AND DISCLOSURES BY DIGITAL**

7            **COMMODITY DEVELOPERS.**

8     "(a) REGISTRATION.—Any person may register with

9 the Commission as a digital commodity developer by filing

10 a registration application with the Commission.

11     "(b) REQUIREMENTS.—

12       "(1) IN GENERAL.—The application shall be

13     made in such form and manner as prescribed by the

14     Commission, and shall contain such information, as

15     the Commission determines by rule is necessary to

16     effectuate the purposes of this Act.

17       "(2) MEMBERSHIP.—Any person registered as

18     a digital commodity developer shall be a member of

19     a registered futures association for the duration of

20     the registration.

21       "(3) EXPIRATION.—Each registration under

22     this section shall expire—

23         "(A) when the applicant withdraws from

24       registration;

67

1        "(B) when the applicant fails to comply
2      with the requirements of this section; or

3        "(C) at such other time as the Commission
4      may prescribe by rule or regulation.

5    "(c) DISCLOSURES.—For each digital commodity, a
6  registered digital commodity developer shall submit to the
7  Commission or its designee, and maintain on a publicly
8  available website, in such form and manner as prescribed
9  by the Commission, the following:

10      "(1) INITIAL DISCLOSURES.—

11          "(A) PROJECT DISCLOSURES.—A general
12        description of the digital commodity, includ-
13        ing—

14              "(i) its purpose and use;

15              "(ii) its unit creation or release proc-
16            ess;

17              "(iii) its consensus mechanism;

18              "(iv) its governance structure;

19              "(v) its participation and distribution;

20              "(vi) its current and proposed
21            functionality; and

22              "(vii) any other such information the
23            Commission determines will effectuate the
24            purposes of this Act.

1              "(B)    DEVELOPMENT    DISCLOSURES.—A

2          list of all individuals who are—

3                 "(i) participants in a related digital

4              commodity presale;

5                 "(ii) holders of units of the digital

6              commodity subject to the limitations in

7              section 4c(h);

8                 "(iii) holders of rights or promises to

9              future units of the digital commodity; or

10                "(iv) compensated in any fashion for

11              providing material support for the develop-

12              ment of the digital commodity.

13          "(C)    TECHNICAL    DISCLOSURES.—Tech-

14         nical documentation related to the digital com-

15         modity, including any—

16                "(i) whitepaper;

17                "(ii) source code;

18                "(iii) development guide; or

19                "(iv) other similar material.

20         "(2)    PERIODIC    DISCLOSURES.—The    digital

21 commodity developer shall periodically update the

22 disclosures made pursuant to subsection (c)(1), at

23 such frequency as prescribed by the Commission.

24         "(3) POST-FILING DIGITAL COMMODITY SALE

25 DISCLOSURES.—

69

1          "(A) IN GENERAL.—The digital commodity
2      developer shall publicly disclose the sale or
3      transfer of any unit, or any promise or right to
4      any future unit, of the digital commodity, that
5      is subject to the restrictions in section 4c(h).

6          "(B) CONTENTS.—Each disclosure re-
7      quired under subparagraph (A) shall include
8      the date of sale, number of digital commodities
9      sold, number of purchasers if identifiable, any
10     limitations or restrictions on the transferability
11     of the digital commodities sold, price per digital
12     commodity, and the type and amount of consid-
13     eration received.

14     "(4) SUBSTITUTE DISCLOSURES.—The Com-
15  mission may exempt, conditionally or uncondition-
16  ally, a digital commodity developer from the disclo-
17  sure requirements under this section if the Commis-
18  sion determines that the digital commodity developer
19  complies with the comparable disclosure require-
20  ments of another federal regulator.

21     "(d) NO REQUIREMENT TO REGISTER.—The creator
22  or developer of a digital commodity shall not be required
23  to be registered under this section in order for a digital
24  commodity created or developed by the creator or devel-

70

1  oper to be listed for trading on a registered digital com-

2  modity exchange.''.

○