# EXHIBIT N

II

117TH CONGRESS
2D SESSION

# S. 4760

To amend the Commodity Exchange Act to provide the Commodity Futures
Trading Commission jurisdiction to oversee the spot digital commodity
market, and for other purposes.

————————

## IN THE SENATE OF THE UNITED STATES

AUGUST 3, 2022

Ms. STABENOW (for herself, Mr. BOOZMAN, Mr. BOOKER, and Mr. THUNE)
introduced the following bill; which was read twice and referred to the
Committee on Agriculture, Nutrition, and Forestry

————————

# A BILL

To amend the Commodity Exchange Act to provide the Com-
modity Futures Trading Commission jurisdiction to over-
see the spot digital commodity market, and for other
purposes.

1   *Be it enacted by the Senate and House of Representa-*

2   *tives of the United States of America in Congress assembled,*

3   **SECTION 1. SHORT TITLE.**

4       This Act may be cited as the "Digital Commodities

5   Consumer Protection Act of 2022".

6   **SEC. 2. DEFINITIONS.**

7       (a) IN GENERAL.—Section 1a of the Commodity Ex-

8   change Act (7 U.S.C. 1a) is amended—

2

1          (1) by redesignating paragraphs (3) through
2     (15) and paragraphs (16) through (51) as para-
3     graphs (5) through (17) and paragraphs (25)
4     through (60), respectively;

5          (2) by inserting after paragraph (2) the fol-
6     lowing:

7          "(3) ASSOCIATED PERSON OF A DIGITAL COM-
8     MODITY BROKER.—

9               "(A) IN GENERAL.—The term 'associated
10          person of a digital commodity broker' means a
11          person who is associated with a digital com-
12          modity broker as a partner, officer, employee,
13          or agent (or any person occupying a similar sta-
14          tus or performing similar functions) in any ca-
15          pacity that involves—

16                    "(i) the solicitation or acceptance of a
17               digital commodity trade; or

18                    "(ii) the supervision of any person en-
19               gaged in the solicitation or acceptance of a
20               digital commodity trade.

21               "(B) EXCLUSION.—The term 'associated
22          person of a digital commodity broker' does not
23          include any person associated with a digital
24          commodity broker the functions of which are
25          solely clerical or ministerial.

3

1 ''(4) ASSOCIATED PERSON OF A DIGITAL COM-
2 MODITY DEALER.—

3 ''(A) IN GENERAL.—The term 'associated
4 person of a digital commodity dealer' means a
5 person who is associated with a digital com-
6 modity dealer as a partner, officer, employee, or
7 agent (or any person occupying a similar status
8 or performing similar functions) in any capacity
9 that involves—

10 ''(i) the solicitation or acceptance of a
11 digital commodity trade; or

12 ''(ii) the supervision of any person en-
13 gaged in the solicitation or acceptance of a
14 digital commodity trade.

15 ''(B) EXCLUSION.—The term 'associated
16 person of a digital commodity dealer' does not
17 include any person associated with a digital
18 commodity dealer the functions of which are
19 solely clerical or ministerial.'';

20 (3) in paragraph (11) (as so redesignated), by
21 striking ''and frozen concentrated orange juice'' and
22 inserting ''frozen concentrated orange juice, and dig-
23 ital commodities,'';

24 (4) in paragraph (12)(A) (as so redesignated)—

4

1          (A) by redesignating clauses (iii) and (iv)
2     as clauses (iv) and (v), respectively; and
3          (B) by inserting after clause (ii) the fol-
4     lowing:
5               ''(iii) digital commodity;'';
6     (5) in paragraph (13)(A)(i) (as so redesig-
7     nated)—
8          (A) by redesignating subclauses (III) and
9     (IV) as subclauses (IV) and (V), respectively;
10    and
11         (B) by inserting after subclause (II) the
12    following:
13              ''(III) digital commodity;'';
14    (6) in paragraph (14)(A)(i) (as so redesig-
15    nated)—
16         (A) in subclause (II), by adding a semi-
17    colon at the end;
18         (B) by redesignating subclauses (III) and
19    (IV) as subclauses (IV) and (V), respectively;
20    and
21         (C) by inserting after subclause (II) the
22    following:
23              ''(III) a digital commodity;'';
24    (7) by inserting after paragraph (17) (as so re-
25    designated) the following:

5

1    "(18) DIGITAL COMMODITY.—

2        "(A) IN GENERAL.—The term 'digital com-

3        modity' means a fungible digital form of per-

4        sonal property that can be possessed and trans-

5        ferred person-to-person without necessary reli-

6        ance on an intermediary.

7        "(B) INCLUSIONS.—The term 'digital com-

8        modity' includes property commonly known as

9        cryptocurrency or virtual currency, such as

10       Bitcoin and Ether.

11       "(C) EXCLUSIONS.—The term 'digital

12       commodity' does not include—

13           "(i) an interest in a physical com-

14           modity;

15           "(ii) a security;

16           "(iii) a digital form of currency

17           backed by the full faith and credit of the

18           United States;

19           "(iv) except as provided in subpara-

20           graph (D), an instrument regulated by the

21           Commission pursuant to any provision of

22           this Act other than section 2(c)(2)(F); or

23           "(v) any other instrument that the

24           Commission determines not to be a digital

25           commodity.

6

1          "(D)   EXCEPTION.—The   exclusion   de-

2     scribed in subparagraph (C)(iv) shall not apply

3     to a commodity transaction that is subject only

4     to Commission antimanipulation, antifraud, or

5     false reporting authority.

6     "(19) DIGITAL COMMODITY BROKER.—

7          "(A) IN GENERAL.—The term 'digital com-

8     modity broker' means a person that is engaged,

9     as an identifiable business, in—

10          "(i) soliciting or accepting orders on

11     behalf of another person for a digital com-

12     modity trade;

13          "(ii) accepting digital commodities

14     from another person for the purpose of en-

15     tering into digital commodity trades;

16          "(iii) arranging digital commodity

17     trades on behalf of another person; or

18          "(iv) a similar activity, as determined

19     by the Commission.

20          "(B) EXCLUSION.—The term 'digital com-

21     modity broker' does not include a person solely

22     because that person validates digital commodity

23     transactions.

24     "(20) DIGITAL COMMODITY CUSTODIAN.—

7

1          "(A) IN GENERAL.—The term 'digital com-
2     modity custodian' means a person that, as an
3     identifiable business, maintains possession, cus-
4     tody, or control over digital commodities on be-
5     half of another person.
6          "(B) EXCLUSIONS.—The term 'digital
7     commodity custodian' does not include—
8               "(i) an insured depository institution
9          (as defined in section 3 of the Federal De-
10         posit Insurance Act (12 U.S.C. 1813)); or
11              "(ii) an insured credit union (as de-
12         fined in section 101 of the Federal Credit
13         Union Act (12 U.S.C. 1752)).
14    "(21) DIGITAL COMMODITY DEALER.—
15         "(A) IN GENERAL.—The term 'digital com-
16    modity dealer' means a person that—
17              "(i) has an identifiable business of
18         dealing in a digital commodity as principal
19         for its own account;
20              "(ii) makes a market in a digital com-
21         modity;
22              "(iii) holds itself out as a dealer in a
23         digital commodity;
24              "(iv) has as an identifiable business of
25         buying or selling digital commodities for

8

1    conversion into other digital commodities,
2    currency, or other consideration;

3        ''(v) has as an identifiable business of
4        accepting digital commodities from another
5        person (referred to in this clause as a 'de-
6        positor') with an obligation to return the
7        digital commodities, consideration linked to
8        the digital commodities, or both to the de-
9        positor; or

10        ''(vi) engages in a similar activity, as
11        determined by the Commission.

12        ''(B) EXCLUSION.—The term 'digital com-
13    modity dealer' does not include a person solely
14    because that person validates digital commodity
15    transactions.

16        ''(22) DIGITAL COMMODITY PLATFORM.—

17        ''(A) IN GENERAL.—The term 'digital com-
18    modity platform' means a person that is 1 or
19    more of the following:

20        ''(i) A digital commodity broker.

21        ''(ii) A digital commodity custodian.

22        ''(iii) A digital commodity dealer.

23        ''(iv) A digital commodity trading fa-
24        cility.

9

1          "(B)  CATEGORY.—The  term  'category',
2     with  respect  to  a  digital  commodity  platform,
3     means  1  or  more  categories  described  in  clauses
4     (i)  through  (iv)  of  subparagraph  (A)  of  that
5     digital  commodity  platform.
6          "(23) DIGITAL COMMODITY TRADE.—
7          "(A) IN GENERAL.—The term 'digital com-
8     modity  trade'  means  a  purchase  or  sale  of  a
9     digital  commodity  in  exchange  for—
10              "(i) another digital commodity; or
11              "(ii) any other consideration.
12          "(B) INCLUSIONS.—The term 'digital com-
13     modity  trade'  includes—
14              "(i) an offer to enter into a purchase
15          or sale described in subparagraph (A); and
16              "(ii) a loan of a digital commodity, an
17          offer  to  enter  into  a  loan  of  a  digital  com-
18          modity,  or  a  similar  activity,  as  determined
19          by  the  Commission.
20          "(C) EXCLUSION.—Except as provided in
21     subparagraph  (D),  the  term  'digital  commodity
22     trade'  excludes  a  transaction  regulated  by  the
23     Commission  pursuant  to  any  provision  of  this
24     Act except section 2(c)(2)(F).

10

1     ''(D)   EXCEPTION.—The   exclusion   de-
2     scribed in subparagraph (C) shall not apply to
3     a commodity transaction that is subject only to
4     Commission   antimanipulation,   antifraud,   or
5     false reporting authority.

6     ''(24) DIGITAL COMMODITY TRADING FACIL-
7     ITY.—

8         ''(A) IN GENERAL.—The term 'digital com-
9     modity trading facility' means a trading facility
10    that facilitates the execution or trading of dig-
11    ital commodity trades between persons.

12        ''(B) EXCLUSION.—The term 'digital com-
13    modity trading facility' does not include a per-
14    son solely because that person validates digital
15    commodity transactions.'';

16    (8) in paragraph (43) (as so redesignated)—

17        (A) in the paragraph heading, by striking
18    ''; MEMBER OF A DERIVATIVES TRANSACTION
19    EXECUTION FACILITY'';

20        (B) in the matter preceding subparagraph
21    (A), by striking ''entity or derivatives trans-
22    action execution facility,'' and inserting ''enti-
23    ty,'';

11

1          (C) in subparagraph (A), by striking "enti-

2     ty" and all that follows through the semicolon

3     and inserting "entity;"; and

4          (D) in subparagraph (B), by striking "en-

5     tity" and all that follows through the period at

6     the end and inserting "entity."; and

7     (9) in paragraph (49) (as so redesignated)—

8          (A) by redesignating subparagraphs (E)

9     and (F) as subparagraphs (F) and (G), respec-

10    tively; and

11         (B) by inserting after subparagraph (D)

12    the following:

13         "(E) a digital commodity trading facility

14    registered under section 5i;".

15  (b) CONFORMING AMENDMENTS.—

16    (1) Section 1a of the Commodity Exchange Act

17  (7 U.S.C. 1a) is amended—

18         (A) in paragraph (26)(A) (as redesignated

19    by subsection (a)(1)), in the matter preceding

20    clause (i), by striking "(18)(A)" and inserting

21    "(27)(A)"; and

22         (B) in paragraph (27)(A)(vii)(III)(aa) (as

23    redesignated by subsection (a)(1)), by striking

24    "(17)(A)" and inserting "(26)(A)".

12

1  (2) Section 4(c)(1)(A)(i)(I) of the Commodity
2  Exchange Act (7 U.S.C. 6(c)(1)(A)(i)(I)) is amended
3  by striking "paragraphs (2), (3), (4), (5), and (7),
4  paragraph (18)(A)(vii)(III), paragraphs (23), (24),
5  (31), (32), (38), (39), (41), (42), (46), (47), (48),
6  and (49) of section 1a" and inserting "paragraphs
7  (2), (5), (6), (7), (9), (27)(A)(vii)(III), (32), (33),
8  (40), (41), (47), (48), (50), (51), (55), (56), (57),
9  and (58) of section 1a".

10  (3) Section 4q(a)(1) of the Commodity Ex-
11  change Act (7 U.S.C. 6q(a)(1)) is amended by strik-
12  ing "1a(9)" and inserting "1a(11)".

13  (4) Section 4s of the Commodity Exchange Act
14  (7 U.S.C. 6s) is amended—

15  (A) in subsection (f)(1)(D), by striking
16  "1a(47)(A)(v)" and inserting "1a(56)(A)(v)";
17  and

18  (B) in subsection (h)(5)(A)(i), in the mat-
19  ter preceding subclause (I), by striking
20  "1a(18)" and inserting "1a(27)(A)".

21  (5) Section 4t(b)(1)(C) of the Commodity Ex-
22  change Act (7 U.S.C. 6t(b)(1)(C)) is amended by
23  striking "1a(47)(A)(v))," and inserting
24  "1a(56)(A)(v)),".

13

1      (6) Section 5 of the Commodity Exchange Act

2    (7 U.S.C. 7) is amended—

3          (A) in subsection (d)(23), by striking

4        "1a(47)(A)(v)" and inserting "1a(56)(A)(v)";

5        and

6          (B) in subsection (e)(1), by striking

7        "1a(9)" and inserting "1a(11)".

8      (7) Section 5b(k)(3)(A) of the Commodity Ex-

9    change Act (7 U.S.C. 7a–1(k)(3)(A)) is amended by

10    striking "1a(47)(A)(v))" and inserting

11    "1a(56)(A)(v))".

12      (8) Section 5c(c)(4)(B) of the Commodity Ex-

13    change Act (7 U.S.C. 7a–2(c)(4)(B)) is amended by

14    striking "1a(10)" and inserting "1a(11)".

15      (9) Section 5h(f)(10)(A)(iii) of the Commodity

16    Exchange Act (7 U.S.C. 7b–3(f)(10)(A)(iii)) is

17    amended by striking "1a(47)(A)(v)" and inserting

18    "1a(56)(A)(v)".

19      (10) Section 21(f)(4)(C) of the Commodity Ex-

20    change Act (7 U.S.C. 24a(f)(4)(C)) is amended by

21    striking "1a(48)" and inserting "1a(57)".

22      (11) Section 403 of the Legal Certainty for

23    Bank Products Act of 2000 (7 U.S.C. 27a) is

24    amended—

14

1          (A) in subsection (a)(2), by striking

2          "1a(47)(A)(v)" and inserting "1a(56)(A)(v)";

3          and

4          (B) in subsection (b)(1), by striking

5          "1a(47)" and inserting "1a".

6     (12) Section 5(e) of the Securities Act of 1933

7  (15 U.S.C. 77e(e)) is amended by striking "section

8  1a(18) of the Commodity Exchange Act (7 U.S.C.

9  1a(18))" and inserting "section 1a of the Com-

10  modity Exchange Act (7 U.S.C. 1a)".

11     (13) Section 3C(g)(3)(A)(v) of the Securities

12  Exchange Act of 1934 (15 U.S.C. 78c–

13  3(g)(3)(A)(v)) is amended by striking "section

14  1a(10) of the Commodity Exchange Act;" and in-

15  serting "section 1a of the Commodity Exchange Act

16  (7 U.S.C. 1a);".

17     (14) Section 6(g)(5)(B)(i) of the Securities Ex-

18  change Act of 1934 (15 U.S.C. 78f(g)(5)(B)(i)) is

19  amended—

20          (A) in subclause (I), by striking "section

21          1a(18)(B)(ii) of the Commodity Exchange Act"

22          and inserting "subparagraph (B)(ii) of section

23          1a(27) of the Commodity Exchange Act (7

24          U.S.C. 1a(27))"; and

15

1          (B) in subclause (II), by striking "such

2      section 1a(18))" and inserting "that section)".

3          (15) Section 712(a)(8) of the Dodd-Frank Wall

4      Street Reform and Consumer Protection Act (15

5      U.S.C. 8302(a)(8)) is amended by striking "section

6      1a(47)(D) of the Commodity Exchange Act (7

7      U.S.C.   1a(47)(D))"   and   inserting   "section

8      1a(56)(D) of the Commodity Exchange Act (7

9      U.S.C. 1a(56)(D))".

10          (16) Section 752(a) of the Dodd-Frank Wall

11      Street Reform and Consumer Protection Act (15

12      U.S.C. 8325(a)) is amended by striking "section

13      1a(39) of the Commodity Exchange Act)," and in-

14      serting "section 1a of the Commodity Exchange Act

15      (7 U.S.C. 1a))".".

16  **SEC. 3. COMMISSION JURISDICTION OVER DIGITAL COM-**

17              **MODITY TRADES.**

18      Section 2 of the Commodity Exchange Act (7 U.S.C.

19  2) is amended—

20          (1) in subsection (a)(1)(A), in the first sen-

21      tence, by striking "section 19 of this Act" and in-

22      serting "subsection (c)(2)(F) or section 19"; and

23          (2) in subsection (c)(2), by adding at the end

24      the following:

16

1        "(F) COMMISSION JURISDICTION OVER

2    DIGITAL COMMODITY TRADES.—

3            "(i) IN GENERAL.—Except as pro-

4        vided in clause (ii), this Act applies to, and

5        the Commission shall have exclusive juris-

6        diction over, any account, agreement, con-

7        tract, or transaction involving a digital

8        commodity trade.

9            "(ii) EXCEPTION.—Nothing in this

10        Act applies to, and the Commission shall

11        not have jurisdiction over, any digital com-

12        modity transaction by a merchant or con-

13        sumer that uses a digital commodity solely

14        for the purchase or sale of a good or serv-

15        ice.

16            "(iii) PROHIBITION ON CERTAIN

17        TRADING PRACTICES.—Sections 4b, 4c,

18        and 6(c) shall apply to any digital com-

19        modity trade as if the digital commodity

20        trade were a contract of sale of a com-

21        modity for future delivery.".

22 **SEC. 4. DIGITAL COMMODITY PLATFORMS.**

23        The Commodity Exchange Act is amended by insert-

24 ing after section 5h (7 U.S.C. 7b–3) the following:

17

1 **"SEC. 5i. DIGITAL COMMODITY PLATFORMS.**

2     "(a) REGISTRATION.—

3         "(1) REQUIREMENT.—It shall be unlawful for

4     any person to act as any category of digital com-

5     modity platform unless the person is registered

6     under this section as that category of digital com-

7     modity platform.

8         "(2) APPLICATIONS.—A person desiring to reg-

9     ister as any category of digital commodity platform

10     shall submit to the Commission an application in

11     such form and containing such information as the

12     Commission may require for the purpose of deter-

13     mining whether the applicant is in compliance with

14     subsection (b) and the other requirements of this

15     Act.

16         "(3) MULTIPLE REGISTRATIONS.—As appro-

17     priate to further the purposes of this Act and avoid

18     duplicative or unnecessary requirements, and taking

19     into consideration potential conflicts of interest or

20     other risks, the Commission may prescribe rules or

21     regulations permitting, or may otherwise authorize—

22         "(A) registration by a person in more than

23     1 category of digital commodity platform;

24         "(B) a registered entity, a swap dealer, or

25     a futures commission merchant registered

26     under this Act to register under this section in

18

1          1 or more categories of digital commodity plat-

2          form; and

3              "(C) exemptions or additional require-

4          ments applicable to persons with multiple reg-

5          istrations under this Act.

6     "(b) CORE PRINCIPLES FOR DIGITAL COMMODITY

7 PLATFORMS.—

8          "(1) COMPLIANCE WITH CORE PRINCIPLES.—

9              "(A) IN GENERAL.—To be registered, and

10         maintain registration, as a digital commodity

11         platform, the digital commodity platform shall

12         comply with—

13                  "(i) the core principles described in

14              this subsection; and

15                  "(ii) any requirement that the Com-

16              mission may impose by rule or regulation.

17              "(B) REASONABLE DISCRETION OF DIG-

18         ITAL COMMODITY PLATFORM.—Unless other-

19         wise determined by the Commission by rule or

20         regulation, a digital commodity platform de-

21         scribed in subparagraph (A) shall have reason-

22         able discretion in establishing the manner in

23         which the digital commodity platform complies

24         with the core principles described in this sub-

25         section.

19

1         "(2) CORE PRINCIPLES APPLICABLE TO DIG-

2   ITAL COMMODITY TRADING FACILITIES.—

3             "(A) COMPLIANCE WITH RULES.—A digital

4         commodity trading facility shall—

5             "(i) establish and enforce compliance

6         with any rule of the digital commodity

7         trading facility, including—

8             "(I) the terms and conditions of

9         the transactions in digital commod-

10       ities traded or processed on or

11       through the digital commodity trading

12       facility; and

13           "(II) any limitation on access to

14       the digital commodity trading facility;

15         "(ii) establish and enforce trading,

16       trade processing, and participation rules

17       that will deter abuses and have the capac-

18       ity to detect, investigate, and enforce those

19       rules, including means—

20           "(I) to provide market partici-

21       pants with impartial access to the

22       market; and

23           "(II) to capture information that

24       may be used in establishing whether

25       rule violations have occurred; and

20

1          "(iii) establish rules governing the op-
2     eration of the digital commodity trading
3     facility.

4          "(B) DIGITAL COMMODITY TRANSACTIONS
5     NOT READILY SUSCEPTIBLE TO MANIPULA-
6     TION.—A digital commodity trading facility
7     shall permit trading only in transactions in dig-
8     ital commodities that are not readily susceptible
9     to manipulation.

10          "(C) MONITORING OF TRADING AND
11     TRADE PROCESSING.—

12               "(i) MARKETS AND MECHANISMS.—

13                    "(I) IN GENERAL.—A digital
14               commodity trading facility shall pro-
15               vide a competitive, open, and efficient
16               market and mechanism for executing
17               transactions that protects the price
18               discovery process of trading on the
19               digital commodity trading facility.

20                    "(II) CENTRALIZED MARKET.—A
21               digital commodity trading facility
22               shall provide a centralized market for
23               executing transactions.

24               "(ii) PROTECTION OF MARKETS AND
25          MARKET PARTICIPANTS.—A digital com-

21

modity trading facility shall establish and
enforce rules—

"(I) to protect markets and mar-
ket participants from abusive prac-
tices committed by any party, includ-
ing abusive practices committed by a
party acting as an agent for a partici-
pant; and

"(II) to promote fair and equi-
table trading on the digital commodity
trading facility.

"(iii) PROCEDURES AND MONI-
TORING.—A digital commodity trading fa-
cility shall—

"(I) establish and enforce rules
or terms and conditions defining, or
specifications detailing—

"(aa) trading procedures to
be used in entering and executing
orders traded on or through the
facilities of the digital commodity
trading facility; and

"(bb) procedures for trade
processing of digital commodities
on or through the facilities of the

22

1               digital commodity trading facil-

2               ity; and

3               "(II) monitor trading in digital

4               commodities to prevent manipulation,

5               price distortion, and disruptions of the

6               delivery or settlement process through

7               surveillance, compliance, and discipli-

8               nary practices and procedures, includ-

9               ing investigations, sanctions, and

10              methods for conducting real-time

11              monitoring of trading and comprehen-

12              sive and accurate trade reconstruc-

13              tions.

14        "(D) ABILITY TO OBTAIN INFORMATION.—

15     A digital commodity trading facility shall—

16              "(i) establish and enforce rules that

17              will allow the digital commodity trading fa-

18              cility to obtain any necessary information

19              to perform any of the functions described

20              in this section;

21              "(ii) provide the information to the

22              Commission on request; and

23              "(iii) have the capacity to carry out

24              such international information-sharing

23

1     agreements as the Commission may re-

2     quire.

3     "(E) FINANCIAL INTEGRITY OF TRANS-

4     ACTIONS.—A digital commodity trading facility

5     shall establish and enforce rules and procedures

6     for ensuring the financial integrity of digital

7     commodity trades entered on or through the fa-

8     cilities of the digital commodity trading facility.

9     "(F) EMERGENCY AUTHORITY.—A digital

10     commodity trading facility shall adopt rules to

11     provide for the exercise of emergency authority,

12     in consultation or cooperation with the Commis-

13     sion, as is necessary and appropriate, including

14     the authority to liquidate or transfer open posi-

15     tions in any digital commodity or to suspend or

16     curtail trading in a digital commodity.

17     "(G) TIMELY PUBLICATION OF TRADING

18     INFORMATION.—

19         "(i) IN GENERAL.—A digital com-

20         modity trading facility shall make public

21         timely information on price, trading vol-

22         ume, and other trading data on digital

23         commodities to the extent prescribed by

24         the Commission.

24

1        "(ii) CAPACITY OF DIGITAL COM-
2     MODITY TRADING FACILITY.—A digital
3     commodity trading facility shall be re-
4     quired to have the capacity to electronically
5     capture and transmit trade information
6     with respect to transactions executed on
7     the digital commodity trading facility.

8        "(H) AVAILABILITY OF GENERAL INFOR-
9     MATION.—A digital commodity trading facility
10    shall make available to market authorities, mar-
11    ket participants, and the public accurate infor-
12    mation concerning—

13        "(i) the terms and conditions of the
14     contracts for transactions in digital com-
15     modities;

16        "(ii) the rules and mechanisms for
17     executing digital commodity trades on or
18     through the facilities of the digital com-
19     modity trading facility; and

20        "(iii) the rules and specifications de-
21     scribing the operation of the electronic
22     matching platform or trade execution facil-
23     ity of the digital commodity trading facil-
24     ity.

25

1        ''(I) DISCIPLINARY PROCEDURES.—A dig-
2    ital commodity trading facility shall establish
3    and enforce—

4            ''(i) disciplinary procedures that au-
5        thorize the digital commodity trading facil-
6        ity to discipline, suspend, or expel market
7        participants that violate the rules of the
8        digital commodity trading facility; or

9            ''(ii) similar methods for performing
10       the functions described in clause (i), in-
11       cluding delegation to third parties.

12       ''(J) DISPUTE RESOLUTION.—A digital
13   commodity trading facility shall establish and
14   enforce rules regarding, and provide facilities
15   for alternative dispute resolution, as appro-
16   priate, for, market participants and market
17   intermediaries.

18   ''(3) CORE PRINCIPLES APPLICABLE TO DIG-
19   ITAL COMMODITY DEALERS AND DIGITAL COM-
20   MODITY BROKERS.—

21       ''(A) EXECUTION.—A digital commodity
22   dealer or digital commodity broker—

23           ''(i) shall establish prices fairly and
24       objectively;

26

1          "(ii) shall disclose the basis for those

2      prices; and

3          "(iii) shall not disrupt market func-

4      tioning or hinder the price discovery proc-

5      ess.

6      "(B) DAILY TRADING RECORDS.—

7          "(i) IN GENERAL.—A digital com-

8      modity dealer or digital commodity broker

9      shall keep full, complete, and systematic

10     records (including all pertinent data and

11     memoranda) of all transactions relating to

12     its business of dealing or brokerage in dig-

13     ital commodity transactions.

14          "(ii) INCLUDED COMMUNICATIONS.—

15     A digital commodity dealer or digital com-

16     modity broker shall keep all oral and writ-

17     ten communications provided or received

18     concerning quotes, solicitations, bids, of-

19     fers, instructions, trading, and prices that

20     lead to the execution of a transaction in a

21     digital commodity.

22     "(C) BUSINESS CONDUCT STANDARDS.—A

23     digital commodity dealer or digital commodity

24     broker shall conform with such business con-

25     duct standards as may be prescribed by the

27

1 Commission by rule or regulation that relate
2 to—

3       "(i) fraud, manipulation, and other
4       abusive practices involving digital com-
5       modity trades (including digital commodity
6       trades that are offered but not entered
7       into);

8       "(ii) diligent supervision of the busi-
9       ness of the digital commodity dealer or
10       digital commodity broker; and

11       "(iii) such other matters as the Com-
12       mission determines to be appropriate.

13 "(D) DUTIES.—A digital commodity dealer
14 or digital commodity broker shall comply with
15 the following requirements:

16       "(i) RISK MANAGEMENT PROCE-
17       DURES.—The digital commodity dealer or
18       digital commodity broker shall establish ro-
19       bust and professional risk management
20       systems adequate for managing the day-to-
21       day business of the digital commodity deal-
22       er or digital commodity broker.

23       "(ii) DISCLOSURE OF GENERAL IN-
24       FORMATION.—The digital commodity deal-
25       er or digital commodity broker shall dis-

28

close to the Commission, as applicable, in-
formation concerning—

"(I) terms and conditions of its
digital commodity trades;

"(II) trading operations, mecha-
nisms, and practices;

"(III) financial integrity protec-
tions relating to transactions in digital
commodity trades; and

"(IV) other information relevant
to its digital commodity trades.

"(E) ABILITY TO OBTAIN INFORMATION.—
A digital commodity dealer or digital com-
modity broker shall—

"(i) establish and enforce internal sys-
tems and procedures to obtain any nec-
essary information to perform any of the
functions described in this section; and

"(ii) provide the information described
in clause (i) to the Commission on request.

"(4) CORE PRINCIPLES APPLICABLE TO ALL
DIGITAL COMMODITY PLATFORMS.—

"(A) RECORDKEEPING AND REPORTING.—
A digital commodity platform shall—

29

1          ''(i)(I) maintain records of all activi-
2     ties relating to the business of the digital
3     commodity platform, including a complete
4     audit trail, in a form and manner accept-
5     able to the Commission for a period of 5
6     years; and
7          ''(II) keep the records described in
8     subclause (I) open to inspection by the
9     Commission;
10         ''(ii) provide to the Commission, in a
11    form and manner acceptable to the Com-
12    mission, such information as the Commis-
13    sion determines to be necessary or appro-
14    priate for the Commission to perform the
15    duties of the Commission under this Act;
16    and
17         ''(iii) make such reports as are re-
18    quired by the Commission relating to the
19    transactions and positions of the customers
20    of the digital commodity platform.
21    ''(B) ANTITRUST CONSIDERATIONS.—Un-
22    less necessary or appropriate to achieve the
23    purposes of this Act, a digital commodity plat-
24    form shall not—

30

1          "(i) adopt any rules or take any ac-
2     tions that result in any unreasonable re-
3     straint of trade; or
4          "(ii) impose any material anticompeti-
5     tive burden on trading or custody.
6     "(C) CONFLICTS OF INTEREST.—The
7     Commission shall require conflict of interest
8     systems and procedures that—
9          "(i) establish structural and institu-
10    tional safeguards—
11              "(I) to minimize conflicts of in-
12         terest that might potentially bias the
13         judgment or supervision of a digital
14         commodity platform and contravene
15         the core principles of fair and equi-
16         table trading and the business con-
17         duct standards described in this Act,
18         including conflicts arising out of
19         transactions or arrangements with af-
20         filiates (including affiliates acting as
21         issuers, market-makers, or
22         custodians); and
23              "(II) which may include, as the
24         Commission determines to be appro-
25         priate, information partitions and the

31

| | |
|---|---|
| 1 | legal separation of different categories |
| 2 | of digital commodity platforms; |
| 3 | "(ii) establish a process for resolving |
| 4 | conflicts of interest described in clause (i); |
| 5 | "(iii) require disclosure by a digital |
| 6 | commodity platform of any material incen- |
| 7 | tives or conflicts of interest that the digital |
| 8 | commodity platform is unable to resolve; |
| 9 | and |
| 10 | "(iv) address such other issues as the |
| 11 | Commission determines to be appropriate. |
| 12 | "(D) FINANCIAL RESOURCES.— |
| 13 | "(i) IN GENERAL.—A digital com- |
| 14 | modity platform shall have adequate finan- |
| 15 | cial, operational, and managerial resources |
| 16 | to discharge each responsibility of the dig- |
| 17 | ital commodity platform. |
| 18 | "(ii) FINANCIAL RESOURCES FOR |
| 19 | MARGIN TRADING.—The Commission shall |
| 20 | require such additional financial resources |
| 21 | as are necessary to enable a digital com- |
| 22 | modity platform to fulfill obligations of the |
| 23 | digital commodity platform arising from |
| 24 | margined, leveraged, or financed trans- |
| 25 | actions. |

1           "(E) SYSTEM SAFEGUARDS.—A digital

2     commodity platform shall—

3                "(i) establish and maintain a program

4         of risk analysis and oversight to identify

5         and minimize sources of operational risk

6         (including cybersecurity risk), through the

7         development of appropriate controls and

8         procedures, and automated systems, that—

9                "(I) are reliable and secure; and

10                "(II) have adequate scalable ca-

11         pacity;

12                "(ii) establish and maintain emer-

13         gency procedures, backup facilities, and a

14         plan for disaster recovery that allow for—

15                "(I) the timely recovery and re-

16         sumption of operations; and

17                "(II) the fulfillment of the re-

18         sponsibilities and obligations of the

19         digital commodity platform; and

20                "(iii) periodically conduct tests to

21         verify that the backup resources of the dig-

22         ital commodity platform are sufficient to

23         ensure continued—

24                "(I) order processing and trade

25         matching;

33

1          ''(II) price reporting;

2                    ''(III) market surveillance; and

3                    ''(IV)  maintenance  of  a  com-

4              prehensive and accurate audit trail.

5          ''(F) DESIGNATION OF CHIEF COMPLIANCE

6     OFFICER.—

7                    ''(i)  IN  GENERAL.—A  digital  com-

8              modity  platform  shall  designate  an  indi-

9              vidual to serve as a chief compliance officer

10             (referred  to  in  this  paragraph  as  a  'chief

11             compliance officer').

12                   ''(ii) DUTIES.—A chief compliance of-

13             ficer shall—

14                    ''(I)  report  directly  to  the  board

15                 or  to  the  senior  officer  of  the  digital

16                 commodity platform;

17                    ''(II)  review  compliance  with  the

18                 core  principles  described  in  this  sub-

19                 section;

20                    ''(III)  in  consultation  with  the

21                 board  of  the  digital  commodity  plat-

22                 form,  a  body  performing  a  function

23                 similar  to  that  of  a  board,  or  the  sen-

24                 ior  officer  of  the  digital  commodity

34

1       platform, resolve any conflicts of in-

2       terest that may arise;

3             "(IV) be responsible for estab-

4       lishing and administering the policies

5       and procedures required to be estab-

6       lished pursuant to this section;

7             "(V) ensure compliance with this

8       Act and the rules and regulations

9       issued under this Act, including rules

10      prescribed by the Commission pursu-

11      ant to this section; and

12            "(VI) establish procedures for

13      the remediation of noncompliance

14      issues found during compliance office

15      reviews, look backs, internal or exter-

16      nal audit findings, self-reported er-

17      rors, or through validated complaints.

18          "(iii) Requirements for proce-

19      dures.—In establishing procedures under

20      clause (ii)(VI), a chief compliance officer

21      shall design the procedures to establish the

22      handling, management response, remedi-

23      ation, retesting, and closing of noncompli-

24      ance issues.

25          "(iv) Annual reports.—

35

1          "(I) IN GENERAL.—In accord-
2      ance with rules prescribed by the
3      Commission, a chief compliance offi-
4      cer shall annually prepare and sign a
5      report that contains a description of—
6              "(aa) the compliance of the
7          digital commodity platform with
8          this Act; and
9              "(bb) the policies and proce-
10         dures, including the code of eth-
11         ics and conflict of interest poli-
12         cies, of the digital commodity
13         platform.
14         "(II) REQUIREMENTS.—A chief
15     compliance officer shall—
16             "(aa) submit each report de-
17         scribed in subclause (I) with the
18         appropriate financial report of
19         the digital commodity platform
20         that is required to be submitted
21         to the Commission pursuant to
22         this section; and
23             "(bb) include in the report a
24         certification that, under penalty

36

1          of law, the report is accurate and

2          complete.

3          "(G) GOVERNANCE; FITNESS STAND-

4    ARDS.—

5          "(i) GOVERNANCE ARRANGEMENTS.—

6    A digital commodity platform shall estab-

7    lish governance arrangements that are

8    transparent to fulfill public interest re-

9    quirements.

10         "(ii) FITNESS STANDARDS.—A digital

11    commodity platform shall establish and en-

12    force appropriate fitness standards for—

13         "(I) directors; and

14         "(II) any entity offering affiliated

15    services for the digital commodity

16    platform.

17         "(H) TREATMENT OF CUSTOMER AS-

18    SETS.—

19         "(i) IN GENERAL.—A digital com-

20    modity platform shall hold customer prop-

21    erty (including digital commodities) in a

22    manner that minimizes the risk of loss of,

23    or unreasonable delay in access to, the cus-

24    tomer property.

25         "(ii) SEGREGATION OF FUNDS.—

37

1          "(I)  IN  GENERAL.—A  digital

2          commodity platform shall treat and

3          deal with all customer property that is

4          received  by  the  digital  commodity

5          platform  as  belonging  to  the  cus-

6          tomer.

7              "(II)  COMMINGLING  PROHIB-

8          ITED.—Customer  property  described

9          in subclause (I)—

10              "(aa)  shall be separately ac-

11              counted for; and

12              "(bb)  shall  not  be  commin-

13              gled  with  the  assets  of  the  digital

14              commodity platform.

15          "(iii) EXCEPTIONS.—

16              "(I) USE OF FUNDS.—Notwith-

17          standing  clause  (ii),  customer  prop-

18          erty described in that clause may, for

19          convenience,  be  commingled  in  the

20          same account or accounts with—

21              "(aa)  an  insured  depository

22              institution  (as  defined  in  section

23              3 of the Federal Deposit Insur-

24              ance Act (12 U.S.C. 1813));

38

1          "(bb) an insured credit
2          union (as defined in section 101
3          of the Federal Credit Union Act
4          (12 U.S.C. 1752)); or
5               "(cc) a digital commodity
6          platform.
7               "(II) WITHDRAWAL.—Notwith-
8          standing clause (ii), such share of the
9          customer property described in that
10         clause as, in the normal course of
11         business, is necessary to margin,
12         guarantee, secure, transfer, adjust, or
13         settle a digital commodity transaction
14         with a digital commodity platform, or
15         with any customer of a digital com-
16         modity platform, may be withdrawn
17         and applied to such purposes lawfully
18         accruing in connection with the digital
19         commodity transaction, including the
20         payment of commissions, taxes, and
21         brokerage, interest, storage, and other
22         charges.
23              "(III) COMMISSION ACTION.—
24         Notwithstanding clause (ii)—

39

1         "(aa) the Commission may

2     adopt rules or regulations permit-

3     ting the lending of digital com-

4     modities by a digital commodity

5     platform holding those digital

6     commodities for customers, sub-

7     ject to such conditions as the

8     Commission may prescribe to

9     protect customers and achieve

10     the purposes of this Act; and

11         "(bb) in accordance with

12     such terms and conditions as the

13     Commission may prescribe by

14     rule, regulation, or order, any

15     customer property described in

16     that clause may be commingled

17     and deposited in customer ac-

18     counts with any other money, se-

19     curities, or property received by

20     the digital commodity platform

21     and required by the Commission

22     to be separately accounted for,

23     treated, and dealt with as belong-

24     ing to customers.

25     "(iv) PERMITTED INVESTMENTS.—

40

1           "(I) IN GENERAL.—Customer
2      property described in clause (ii) in the
3      form of money may be invested in—
4              "(aa) obligations of the
5          United States;
6              "(bb) obligations the prin-
7          cipal and interest of which are
8          fully guaranteed by the United
9          States; and
10             "(cc) any other investment
11         that the Commission may by rule
12         or regulation prescribe.
13          "(II) RULES AND CONDITIONS.—
14     Investments under subclause (I) shall
15     be made in accordance with such rules
16     and regulations, and subject to such
17     conditions, as the Commission may
18     prescribe.
19          "(v) PROHIBITION.—It shall be un-
20     lawful for any person, including a digital
21     commodity platform or a depository insti-
22     tution, that has received any customer
23     property for deposit in a separate account
24     or accounts in accordance with clause (ii)
25     to hold, dispose of, or use that customer

41

1          property as belonging to the depositing

2          digital commodity platform or any person

3          other than the customers of the digital

4          commodity platform.

5     ''(c) RULES GOVERNING MARGINED OR LEVERAGED

6  TRADING.—The Commission may make, promulgate, and

7  enforce such rules governing margined, leveraged, or fi-

8  nanced digital commodity trades on digital commodity

9  platforms as are reasonably necessary to protect the public

10 interest and promote the orderly settlement of trans-

11 actions.

12    ''(d) CONTRACT LISTINGS, RULES, AND RULE

13 AMENDMENTS FOR DIGITAL COMMODITY TRADING FA-

14 CILITIES.—

15         ''(1) IN GENERAL.—Subject to the require-

16     ments under this subsection, a digital commodity

17     trading facility may—

18             ''(A) list for trading a contract for a dig-

19         ital commodity; and

20             ''(B) approve and implement a new rule or

21         rule amendment.

22         ''(2) CERTIFICATION FROM DIGITAL COM-

23     MODITY TRADING FACILITY.—A digital commodity

24     trading facility that elects to carry out an activity

25     described in subparagraph (A) or (B) of paragraph

42

1    (1) shall, prior to carrying out that activity, provide

2    to the Commission a written certification that the

3    contract, new rule, or rule amendment, as applica-

4    ble, complies with this Act (including regulations

5    under this Act).

6        "(3) EFFECTIVE DATE OF LISTING, RULE, AND

7    RULE AMENDMENT.—Subject to paragraph (4), a

8    listing, rule, or rule amendment described in para-

9    graph (1) shall become effective on the date that

10   is—

11           "(A) in the case of a listing of a contract

12       that has not previously been listed on any dig-

13       ital commodity trading facility, 30 business

14       days after the date on which the Commission

15       receives the certification (or such shorter period

16       as determined by the Commission by rule or

17       regulation); or

18           "(B) in any other case, 10 business days

19       after the date on which the Commission receives

20       the certification (or such shorter period as de-

21       termined by the Commission by rule or regula-

22       tion).

23       "(4) STAY OF CERTIFICATION.—

24           "(A) IN GENERAL.—The Commission may

25       stay a certification for a listing, rule, or rule

43

1 amendment described in paragraph (1) by noti-
2 fying the digital commodity trading facility that
3 the Commission is staying the certification be-
4 cause there exists—

5   "(i) a novel or complex issue that re-
6   quires additional time to analyze;

7   "(ii) an inadequate explanation by the
8   submitting digital commodity trading facil-
9   ity; or

10   "(iii) a potential inconsistency with
11   this Act (including regulations under this
12   Act).

13 "(B) DURATION OF STAY.—A stay of cer-
14 tification by the Commission under subpara-
15 graph (A) shall be for a period of not more
16 than 90 days, beginning on the date of the noti-
17 fication by the Commission under that subpara-
18 graph.

19 "(C) EFFECTIVE DATE AFTER STAY.—A
20 listing, rule, or rule amendment subject to a
21 stay under subparagraph (A) shall become ef-
22 fective on the expiration of the period described
23 in subparagraph (B), unless the Commission—

24   "(i) withdraws the stay prior to that
25   time; or

44

1          "(ii) notifies the digital commodity

2          trading facility during such period that the

3          Commission objects to the proposed certifi-

4          cation and disapproves a listing, rule, or

5          rule amendment pursuant to paragraph

6          (5).

7     "(D) PUBLIC COMMENT.—The Commission

8     may provide a public comment period of not

9     less than 30 days, within the period in which a

10    stay is in effect under subparagraph (B), when-

11    ever the Commission reviews a listing, rule, or

12    rule amendment pursuant to a notification by

13    the Commission under subparagraph (A).

14    "(5) DISAPPROVAL.—

15    "(A) IN GENERAL.—The Commission may

16    disapprove a listing, rule, or rule amendment

17    described in paragraph (1) if the Commission

18    determines that the listing, rule, or rule amend-

19    ment is inconsistent with this Act (including the

20    considerations in subparagraph (B) and regula-

21    tions under this Act).

22    "(B) CONSIDERATIONS.—In making a de-

23    termination described in subparagraph (A) with

24    respect to a listing for a digital commodity, the

45

Commission may consider, among other things—

"(i) whether the operating structure and system of the digital commodity is secure from cybersecurity threats, including the possibility of material alterations by persons acting collectively;

"(ii) whether the functionality of the digital commodity will protect holders from operational failures;

"(iii) with respect to a digital commodity that purports to have a fixed value—

"(I) an identification and description of the issuer of the digital commodity;

"(II) the collateral or reserves backing the digital commodity; and

"(III) the terms by which the issuer will redeem the digital commodity; and

"(iv) whether the digital commodity and the market for the digital commodity are not readily susceptible to manipulation.

"(6) PRIOR APPROVAL.—

46

1          ''(A) IN GENERAL.—A digital commodity

2     trading facility may request that the Commis-

3     sion grant prior approval to the listing of any

4     new contract for a digital commodity.

5          ''(B) DEADLINE.—If prior approval is re-

6     quested under subparagraph (A), the Commis-

7     sion shall take final action on the request not

8     later than 90 days after submission of the re-

9     quest, unless the person submitting the request

10    agrees to an extension of the time limitation es-

11    tablished under this subparagraph.

12         ''(C) DISAPPROVAL.—Paragraphs (4) and

13    (5) shall apply to Commission action on a re-

14    quest under this paragraph.

15     ''(7) DELISTING; REVOCATION.—After the list-

16   ing of a contract for a digital commodity has taken

17   effect, the Commission may require the delisting of

18   the contract or disapprove the listing in accordance

19   with paragraph (5).

20     ''(8) DISCLOSURES.—

21         ''(A) IN GENERAL.—The Commission shall

22    require a digital commodity trading facility to

23    disclose to the public, on a timely basis, with re-

24    spect to a listing described in paragraph

25    (1)(A)—

47

1          "(i) the operating structure and sys-
2      tem of the digital commodity; and
3              "(ii) the trading volume and volatility
4      of the digital commodity.
5          "(B) FORMAT.—The Commission shall
6      prescribe rules and regulations for the stand-
7      ardization and simplification of disclosures
8      under subparagraph (A) and subsection
9      (f)(1)(A), including requiring that disclosures—
10             "(i) are conspicuous;
11             "(ii) use plain language comprehen-
12         sible to customers; and
13             "(iii) succinctly explain the informa-
14         tion that is required to be communicated
15         to the customer.
16  "(e) PRODUCT LISTING FOR DIGITAL COMMODITY
17 BROKERS AND DIGITAL COMMODITY DEALERS.—
18      "(1) IN GENERAL.—A digital commodity broker
19  and a digital commodity dealer may only trade, or
20  arrange a trade, in a contract for a digital com-
21  modity that is not readily susceptible to manipula-
22  tion.
23      "(2) DISCLOSURE, LISTING, AND CERTIFI-
24  CATION REQUIREMENTS.—A digital commodity
25  broker and a digital commodity dealer may only

48

1    trade, or arrange for trading, in digital commodities

2    that have met the requirements of subsection (d)

3    (including the listing and disclosure requirements).

4    "(f) CUSTOMER PROTECTION.—The Commission

5    shall adopt customer protection requirements that—

6         "(1) require disclosure by a digital commodity

7    platform to a customer (other than another digital

8    commodity platform registered under this section)

9    of—

10              "(A) information about the material risks

11         and characteristics of any applicable digital

12         commodity contracts; and

13              "(B) any material incentives or conflicts of

14         interest that the digital commodity platform

15         may have in connection with any applicable dig-

16         ital commodity contracts;

17         "(2) establish a duty for a digital commodity

18    platform to communicate in a fair and balanced

19    manner based on principles of fair dealing and good

20    faith;

21         "(3) establish standards governing digital com-

22    modity platform marketing and advertising, includ-

23    ing testimonials and endorsements; and

24         "(4) establish such other standards and re-

25    quirements as the Commission may determine are—

49

1             ''(A) in the public interest;

2             ''(B) appropriate for the protection of cus-

3         tomers; or

4             ''(C) otherwise in furtherance of the pur-

5         poses of this Act.

6     ''(g) EXAMINATION AND PUBLICATION OF ENERGY

7 CONSUMPTION IN DIGITAL COMMODITY MARKETS.—

8         ''(1) IN GENERAL.—The Commission shall ex-

9     amine, in collaboration with other Federal regulatory

10     agencies as the Commission determines appropriate,

11     the energy consumption and sources of energy used

12     in connection with the creation and transfer of the

13     most widely traded digital commodities.

14         ''(2) REPORT.—Not later than 180 days after

15     the date of enactment of the Digital Commodities

16     Consumer Protection Act of 2022, the Commission

17     shall submit to the Committee on Agriculture, Nutri-

18     tion, and Forestry of the Senate and the Committee

19     on Agriculture of the House of Representatives a re-

20     port describing—

21             ''(A) an estimate of the energy consump-

22         tion and sources of energy used in connection

23         with the creation and transfer of the most wide-

24         ly traded digital commodities; and

50

1            "(B) the methodology used by the Com-

2         mission to generate the estimate described in

3         subparagraph (A).

4        "(3) PUBLICATION.—Using the methodology

5 described in paragraph (2)(B), the Commission shall

6 publish on the website of the Commission, and peri-

7 odically update on a timely basis, an estimate of the

8 energy consumption and sources of energy used in

9 connection with the creation and transfer of the

10 most widely traded digital commodities.

11     "(h) PROHIBITION ON FRAUD, DECEPTION, AND MA-

12 NIPULATION.—It shall be unlawful for any digital com-

13 modity platform to engage in any act, practice, or course

14 of business in connection with its business as a digital

15 commodity platform that is fraudulent, deceptive, or ma-

16 nipulative.

17     "(i) SELF-REGULATION.—

18        "(1) IN GENERAL.—A digital commodity

19         broker, digital commodity dealer, or digital com-

20         modity custodian shall be a member of a registered

21         futures association, regardless of whether such per-

22         son is separately registered as a digital commodity

23         trading facility.

24        "(2) DELEGATION OF REGISTRATION FUNC-

25         TIONS.—The Commission may authorize any reg-

51

1 istered futures association to perform any portion of
2 the registration functions with respect to digital
3 commodity platforms, associated persons of digital
4 commodity brokers, and associated persons of digital
5 commodity dealers—

6      ''(A) in accordance with rules, notwith-
7     standing any other provision of law, adopted by
8     that registered futures association and sub-
9     mitted to the Commission for approval; and

10      ''(B) subject to the provisions of this sec-
11     tion applicable to registrations granted by the
12     Commission.

13   ''(j) DUAL REGISTRATION.—A digital commodity
14 platform registered under this section may also be reg-
15 istered with the Securities and Exchange Commission as
16 an exchange, broker, or dealer (as those terms are defined
17 in section 3 of the Securities Exchange Act of 1934 (15
18 U.S.C. 78c)) or another trading platform.

19   ''(k) FEES FOR REGISTRATION.—

20     ''(1) IN GENERAL.—The Commission shall, in
21     accordance with this subsection, assess and collect
22     fees, which shall be used to recover the annual costs
23     of—

24      ''(A) registering digital commodity plat-
25     forms;

52

1         "(B) conducting oversight of digital com-

2   modity trades; and

3         "(C) carrying out education and outreach

4   under subsection (l).

5   "(2) DETERMINATION OF FEE RATES.—In de-

6 termining fee rates under paragraph (1), the Com-

7 mission shall consider—

8         "(A) the volume of business of the digital

9   commodity platform; and

10         "(B) the category of the digital commodity

11   platform.

12   "(3) PROHIBITIONS.—

13         "(A) COMMISSION.—The Commission shall

14   not require a digital commodity platform to col-

15   lect directly from customers a per-transaction

16   fee for each digital commodity trade.

17         "(B) DIGITAL COMMODITY PLATFORMS.—

18   A digital commodity platform shall not impose

19   directly on customers a per-transaction fee for

20   each digital commodity trade to pay the fees

21   under paragraph (1).

22   "(4) PUBLICATION.—Not later than 60 days

23 after the date of enactment of an Act making a reg-

24 ular appropriation to the Commission for a fiscal

53

1    year, the Commission shall publish in the Federal

2    Register a notice of—

3            "(A) the fee rates determined pursuant to

4        this subsection for that fiscal year; and

5            "(B) any estimates or projections on which

6        those fee rates are based.

7        "(5) RECORDS AND DISCLOSURE.—In carrying

8    out this subsection, the Commission shall not be re-

9    quired to comply with section 553 of title 5, United

10   States Code.

11       "(6) NO JUDICIAL REVIEW.—A fee rate pre-

12   scribed under this subsection shall not be subject to

13   judicial review.

14       "(7) DEPOSIT OF FEES.—Fees collected pursu-

15   ant to this subsection for any fiscal year shall be de-

16   posited and credited as offsetting collections to the

17   account providing appropriations to the Commission.

18       "(8) ANNUAL ADJUSTMENT.—For each fiscal

19   year, the Commission shall, by order, determine fee

20   rates pursuant to this subsection that are reasonably

21   likely to produce aggregate fee collections that are

22   equal to the annual appropriation to the Commission

23   by Congress for activities relating to the registration

24   of digital commodity platforms and the oversight of

25   digital commodity trades.

54

1    "(9) LAPSE OF APPROPRIATION.—If, on the
2 first day of a fiscal year, a regular appropriation to
3 the Commission has not been enacted, the Commis-
4 sion shall continue to collect (as offsetting collec-
5 tions) fees pursuant to this subsection at each of the
6 rates in effect during the preceding fiscal year.

7    "(10) BUDGET REQUESTS.—The Commission
8 shall itemize in each budget submitted to the Presi-
9 dent or the Office of Management and Budget the
10 estimated annual costs of—

11        "(A) registering digital commodity plat-
12     forms;

13        "(B) conducting oversight of digital com-
14     modity trades; and

15        "(C) carrying out education and outreach
16     under subsection (l).

17    "(11) LIMITATIONS.—

18        "(A) IN GENERAL.—Fees may only be as-
19     sessed and imposed pursuant to this subsection
20     on digital commodity platforms regulated by the
21     Commission pursuant to this section.

22        "(B) USE OF FEES.—Fees authorized
23     under this subsection are prohibited from fund-
24     ing any Commission activity not directly related
25     to the registration of digital commodity plat-

forms, the oversight of digital commodity trades, and the education and outreach carried out under subsection (l).

"(l) CUSTOMER EDUCATION AND OUTREACH.—The Commission shall provide education and outreach to customers participating in digital commodity markets.

"(m) INSPECTION.—The Commission may inspect and monitor digital commodity platforms, on an ongoing basis, for the purpose of ensuring compliance with this Act.

"(n) PREEMPTION OF STATE LAWS.—

"(1) IN GENERAL.—The registration of a digital commodity platform, an associated person of a digital commodity broker, or an associated person of a digital commodity dealer under this section—

"(A) shall preempt any applicable registration requirements under State laws relating to money transmission, virtual currency, and commodity brokers; and

"(B) shall not affect the applicability of State antifraud laws.

"(2) COMPLIANCE.—Beginning on the effective date of a registration of a digital commodity platform under this section, the digital commodity platform shall not be required to comply with applicable

56

1    State law requirements relating to money trans-

2    mission, virtual currency, and commodity brokerage.

3    ''(o) REGULATIONS.—The Commission shall pre-

4    scribe such rules and regulations as are appropriate for

5    the implementation of this section.''.

**SEC. 5. ADDITIONAL AMENDMENTS.**

7    (a) RETAIL COMMODITY TRANSACTIONS.—Section

8    2(c)(2)(D)(ii) of the Commodity Exchange Act (7 U.S.C.

9    2(c)(2)(D)(ii)) is amended—

10    (1) in subclause (III)(bb), by striking ''or'' at

11    the end;

12    (2) by redesignating subclauses (IV) and (V) as

13    subclauses (V) and (VI), respectively; and

14    (3) by inserting after subclause (III) the fol-

15    lowing:

16    ''(IV)    a    digital    commodity

17    trade;''.

18    (b) APPLICABILITY.—Section 2(i) of the Commodity

19    Exchange Act (7 U.S.C. 2(i)) is amended—

20    (1) by redesignating paragraphs (1) and (2) as

21    subparagraphs (A) and (B), respectively, and indent-

22    ing appropriately;

23    (2) in the matter preceding subparagraph (A)

24    (as so redesignated), by striking ''The provisions''

25    and inserting the following:

57

1       ''(1) Swaps.—The provisions''; and

2       (3) by adding at the end the following:

3       ''(2) Digital commodities.—The provisions

4    of this Act (including any rule prescribed or regula-

5    tion promulgated under this Act) relating to digital

6    commodities shall not apply to activities outside the

7    United States unless those activities—

8           ''(A) have a reasonably foreseeable signifi-

9        cant effect within the United States;

10          ''(B) involve, for the purpose of soliciting

11       or accepting any order for, or otherwise dealing

12       in, digital commodities—

13              ''(i) the offering to enter into, enter-

14          ing into, execution, or confirming the exe-

15          cution of digital commodities with any

16          United States person; or

17              ''(ii) the conducting of any office or

18          business anywhere in the United States

19          (including any territory or possession of

20          the United States); or

21          ''(C) contravene such rules or regulations

22       as the Commission may prescribe or promulgate

23       as are necessary or appropriate to prevent the

24       evasion of any provision of this Act.''.

25    (c) Registration of Associated Persons.—

58

1     (1) IN GENERAL.—Section 4k of the Com-

2 modity Exchange Act (7 U.S.C. 6k) is amended—

3     (A) by redesignating paragraphs (4)

4 through (6) as paragraphs (5) through (7);

5     (B) by inserting after paragraph (3) the

6 following:

7     ''(4) It shall be unlawful for any person to act

8 as an associated person of a digital commodity

9 broker or an associated person of a digital com-

10 modity dealer unless such person is registered with

11 the Commission under this Act and such registration

12 shall not have expired, been suspended (and the pe-

13 riod of suspension has not expired), or been revoked.

14 It shall be unlawful for a digital commodity broker

15 or a digital commodity dealer to permit such a per-

16 son to become or remain associated with the digital

17 commodity broker or digital commodity dealer if

18 such digital commodity broker or digital commodity

19 dealer knew or should have known that such person

20 was not so registered or that such registration had

21 expired, been suspended (and the period of suspen-

22 sion has not expired), or been revoked.''; and

23     (C) in paragraph (5) (as so redesignated),

24 by striking ''or of a commodity trading advisor''

25 and inserting ''of a commodity trading advisor,

59

1       of a digital commodity broker, or of a digital

2       commodity dealer''.

3       (2) CONFORMING AMENDMENT.—The Com-

4       modity Exchange Act (7 U.S.C. 1a et seq.) is

5       amended by striking ''section 4k(6)'' each place it

6       appears and inserting ''section 4k(7)''.

7    (d) COMMODITY TRADING ADVISERS; COMMODITY

8  POOL OPERATORS.—

9       (1) IN GENERAL.—Section 4l of the Commodity

10      Exchange Act (7 U.S.C. 6l) is amended—

11         (A) in paragraph (2), by striking ''deriva-

12         tives transaction execution facilities'' and in-

13         serting ''digital commodity trades on or subject

14         to the rules of digital commodity trading facili-

15         ties''; and

16         (B) in paragraph (3), by striking ''deriva-

17         tives transaction execution facilities'' and in-

18         serting ''digital commodity trading facilities''.

19      (2) USE OF MAIL OR OTHER INTERSTATE COM-

20      MERCE.—Section 4m(3)(C) of the Commodity Ex-

21      change Act (7 U.S.C. 6m(3)(C)) is amended by in-

22      serting ''digital commodity trades,'' before ''and any

23      monies''.

24      (3) REGISTRATION.—Section 4n(3)(B) of the

25      Commodity Exchange Act (7 U.S.C. 6n(3)(B)) is

1 amended by inserting ''or digital commodity'' after

2 ''futures market''.

3 (e) ACCEPTABLE BUSINESS PRACTICES UNDER

4 CORE PRINCIPLES.—Section 5c(a)(1) of the Commodity

5 Exchange Act (7 U.S.C. 7a–2(a)(1)) is amended by strik-

6 ing ''and 5b(c)(2),'' and inserting '', 5b(c)(2), and 5i(b)''.

7 (f) PUBLIC DISCLOSURE.—Section 8(a)(1) of the

8 Commodity Exchange Act (7 U.S.C. 12(a)(1)) is amended,

9 in the first sentence of the matter preceding subparagraph

10 (A), by inserting '', digital commodity platforms,'' after

11 ''boards of trade''.

12 (g) ANTI-MONEY LAUNDERING.—

13 (1) AMENDMENT.—Section 5312(a)(2) of title

14 31, United States Code, is amended—

15 (A) by redesignating subparagraphs (Y)

16 and (Z) as subparagraphs (Z) and (AA), re-

17 spectively; and

18 (B) by inserting after subparagraph (X)

19 the following:

20 ''(Y) a digital commodity platform (as de-

21 fined in section 1a of the Commodity Exchange

22 Act (7 U.S.C. 1a));''.

23 (2) REGULATIONS.—

24 (A) PROPOSED REGULATIONS.—Not later

25 than 180 days after the date of enactment of

61

1    this Act, the Secretary of the Treasury, after
2    consultation with the Commodity Futures Trad-
3    ing Commission, shall publish proposed regula-
4    tions in the Federal Register requiring a digital
5    commodity platform (as defined in section 1a of
6    the Commodity Exchange Act (7 U.S.C. 1a))
7    registered with the Commodity Futures Trading
8    Commission to submit a report of any sus-
9    picious transaction under section 5318(g) of
10   title 31, United States Code.

11        (B) FINAL REGULATIONS.—Not later than
12   180 days after the date of publication of the
13   proposed regulations under subparagraph (A),
14   the Secretary of the Treasury shall publish
15   those regulations in final form.

16   (h) REGISTRATION OF COMMODITY DEALERS AND
17   ASSOCIATED PERSONS.—Section 8a of the Commodity
18   Exchange Act (7 U.S.C. 12a) is amended—

19        (1) in paragraph (1), by inserting "digital com-
20   modity brokers, associated persons of digital com-
21   modity brokers, digital commodity dealers, associ-
22   ated persons of digital commodity dealers," after "to
23   register";

24        (2) in paragraph (2)—

25             (A) in subparagraph (C)—

62

1     (i) in clause (i), by inserting "digital

2    commodity broker, digital commodity deal-

3    er," before "futures commission mer-

4    chant"; and

5     (ii) in clause (ii), by striking "con-

6    tracts of" and inserting "a digital com-

7    modity trade or a contract of";

8   (B) in subparagraph (D)—

9     (i) in clause (i), by inserting "digital

10    commodity trade or" before "contract of

11    sale"; and

12     (ii) in clause (ii), by inserting "digital

13    commodity broker, digital commodity deal-

14    er," before "futures commission mer-

15    chant"; and

16   (C) in subparagraph (E)(i), by striking

17  "Investors" and inserting "Investor";

18  (3) in paragraph (3)—

19   (A) in subparagraph (B)(i), by striking

20  "Investors" and inserting "Investor";

21   (B) in subparagraph (E)—

22     (i) in clause (i), by striking "contract

23    of sale of a commodity for future delivery

24    or" and inserting "contract of sale of a

1       commodity for future delivery, digital com-

2       modity trade, or''; and

3           (ii) in clause (ii), by inserting "digital

4       commodity broker, digital commodity deal-

5       er,'' before "futures commission mer-

6       chant''; and

7       (C) in subparagraph (J)—

8           (i) by inserting "a digital commodity

9       trading facility,'' before "a registered enti-

10      ty''; and

11          (ii) by striking "registered entity, as-

12      sociation'' and inserting "digital com-

13      modity trading facility, registered entity,

14      registered futures association'';

15      (4) in paragraph (4)—

16        (A) by striking "futures commission mer-

17      chant'' and inserting "digital commodity

18      broker, digital commodity dealer, futures com-

19      mission merchant,'';

20        (B) by inserting "digital commodity sub-

21      ject to the rules of a digital commodity trading

22      facility or'' before "commodity''; and

23        (C) by inserting "digital commodity trad-

24      ing facility or'' before "registered entity'' each

25      place it appears;

64

1 (5) in paragraph (6), by inserting "digital com-
2 modity trading facility, digital commodity custo-
3 dian," before "registered entity" each place it ap-
4 pears; and

5 (6) in paragraph (9)—

6 (A) by inserting "digital commodity trad-
7 ing facility or" before "registered entity" each
8 place it appears;

9 (B) by inserting "digital commodity or"
10 before "futures contract" each place it appears;
11 and

12 (C) by inserting "digital commodity or"
13 before "commodity" each place it appears.

14 (i) AMENDMENTS TO TITLE 11.—Title 11, United
15 States Code, is amended—

16 (1) in section 101(6), by inserting "digital com-
17 modity platform, as defined in section 1a of the
18 Commodity Exchange Act (7 U.S.C. 1a)," after "le-
19 verage transaction merchant,"; and

20 (2) in section 761—

21 (A) in paragraph (4)(F)—

22 (i) in clause (i), by striking "and" at
23 the end;

24 (ii) in clause (ii), by inserting "and"
25 after the semicolon; and

65

1         (iii) by adding at the end the fol-

2   lowing:

3         "(iii) with respect to a digital commodity

4   platform, a contract for a digital commodity

5   trade—

6         "(I) held at a digital commodity plat-

7     form; or

8         "(II) executed by or through a digital

9     commodity platform;";

10     (B) in paragraph (9)—

11         (i) in subparagraph (D), by striking

12     "or" at the end;

13         (ii) in subparagraph (E)(ii)(II), by

14     adding "or" after the semicolon at the end;

15     and

16         (iii) by adding at the end the fol-

17     lowing:

18     "(F) with respect to a digital commodity

19   platform—

20         "(i) entity for or with whom the dig-

21     ital commodity platform deals and that

22     holds a claim against the digital com-

23     modity platform on account of a com-

24     modity contract made, received, acquired,

25     or held by or through the digital com-

66

1 modity platform in the ordinary course of

2 the business of the digital commodity plat-

3 form as a digital commodity platform from

4 or for a commodity contract account of the

5 entity; or

6  ''(ii) entity that holds a claim against

7 the digital commodity platform arising out

8 of—

9  ''(I) the making, liquidation, or

10 change in the value of a commodity

11 contract of a kind specified in clause

12 (i) of this subparagraph;

13  ''(II) a deposit or payment of

14 cash, a security, digital commodity, or

15 other property with the digital com-

16 modity platform for the purpose of—

17  ''(aa) making or margining

18 the commodity contract; or

19  ''(bb) holding in custody, or

20 accepting a deposit, of property

21 related to the making or mar-

22 gining of the commodity contract;

23 or

24  ''(III) the making or taking of

25 delivery on the commodity contract.'';

67

1          (C) by redesignating paragraphs (11)
2      through (17) as paragraphs (12) through (18),
3      respectively; and
4          (D) by inserting after paragraph (10) the
5      following:
6          "(11) the terms 'digital commodity', 'digital
7      commodity platform', and 'digital commodity trade'
8      have the meanings given those terms in section 1a
9      of the Commodity Exchange Act (7 U.S.C. 1a);".

10  **SEC. 6. APPLICABILITY.**

11      The amendments made by this Act shall not apply
12  to any person regulated under the Commodity Exchange
13  Act (7 U.S.C. 1 et seq.), as amended by this Act, until
14  the date of effectiveness of the final rule of the Commodity
15  Futures Trading Commission requiring registration of
16  digital commodity platforms under section 5i of that Act.

17  **SEC. 7. REPORT ON HISTORICALLY UNDERSERVED CUS-**
18  **TOMERS PARTICIPATING IN DIGITAL COM-**
19  **MODITY MARKETS.**

20      Not later than 180 days after the date of enactment
21  of this Act, the Commodity Futures Trading Commission
22  (referred to in this section as the "Commission") shall—
23          (1) examine the racial, ethnic, and gender de-
24      mographics of customers participating in digital
25      commodity markets; and

68

1    (2) submit to the Committee on Agriculture,

2 Nutrition, and Forestry of the Senate and the Com-

3 mittee on Agriculture of the House of Representa-

4 tives a report—

5    (A) describing how those demographics will

6 inform the rules and regulations of the Com-

7 mission relating to customer protection;

8    (B) proposing ways in which the Commis-

9 sion can provide outreach to historically under-

10 served customers participating in digital com-

11 modity markets; and

12    (C) containing recommendations relating

13 to any other activities the Commission deter-

14 mines to be necessary to provide appropriate

15 protection, outreach, or other similar activities

16 relating to historically underserved customers

17 participating in digital commodity markets.

○