# EXHIBIT Q

I

116TH CONGRESS
2D SESSION     **H. R. 6154**

To clarify which Federal agencies regulate digital assets, to require those agencies to notify the public of any Federal licences, certifications, or registrations required to create or trade in such assets, and for other purposes.

---

# IN THE HOUSE OF REPRESENTATIVES

MARCH 9, 2020

Mr. GOSAR introduced the following bill; which was referred to the Committee on Financial Services, and in addition to the Committee on Agriculture, for a period to be subsequently determined by the Speaker, in each case for consideration of such provisions as fall within the jurisdiction of the committee concerned

---

# A BILL

To clarify which Federal agencies regulate digital assets, to require those agencies to notify the public of any Federal licences, certifications, or registrations required to create or trade in such assets, and for other purposes.

1  *Be it enacted by the Senate and House of Representa-*
2  *tives of the United States of America in Congress assembled,*
3  **SECTION 1. SHORT TITLE.**
4  This Act may be cited as the "Crypto-Currency Act
5  of 2020".

2

**SEC. 2. DEFINITIONS.**

In this Act:

(1) CRYPTO-COMMODITY.—The term "crypto-commodity" means economic goods or services, including derivatives, that—

(A) have full or substantial fungibility;

(B) the markets treat with no regard as to who produced the goods or services; and

(C) rest on a blockchain or decentralized cryptographic ledger.

(2) CRYPTO-CURRENCY.—The term "crypto-currency" means representations of United States currency or synthetic derivatives resting on a blockchain or decentralized cryptographic ledger, including—

(A) such representations or synthetic derivatives that are reserve-backed digital assets that are fully collateralized in a correspondent banking account, such as stablecoins; and

(B) synthetic derivatives that are—

(i) determined by decentralized oracles or smart contracts; and

(ii) collateralized by crypto-commodities, other crypto-currencies, or crypto-securities.

(3) CRYPTO-SECURITY.—

(A) IN GENERAL.—The term "crypto-security" means all debt and equity that rest on a blockchain or decentralized cryptographic ledger.

(B) EXCEPTION.—The term "crypto-security" does not include a synthetic derivative that—

(i) is operated as, and is registered with the Department of the Treasury as, a money services business (as defined under section 1010.100 of title 31, Code of Federal Regulations); and

(ii) is operated in compliance with all applicable requirements of subchapter II of chapter 53 of title 31, United States Code (commonly referred to as the "Bank Secrecy Act") and all other Federal anti-money laundering, anti-terrorism, and screening requirements of the Office of Foreign Assets Control and the Financial Crimes Enforcement Network.

(4) DECENTRALIZED CRYPTOGRAPHIC LEDGER.—The term "decentralized cryptographic ledger" means a ledger that—

  (A) runs as a stand-alone blockchain that is secured through a minting mechanism such as proof-of-work, proof-of-stake, or otherwise;

  (B) runs as a cryptographic asset or smart-contract on an existing stand-alone blockchain and is secured through the issuing blockchain minting mechanism;

  (C) is immutable and can not be overwritten without controlling a majority stake of the associated network;

  (D) requires a cryptographic link between blocks of transactional data;

  (E) is permissionless, requiring no third party to transact, only a connection to the internet;

  (F) is an irreversible bearer commodity, with all transactions being final;

  (G) is not controllable by any one single entity (defined as having less than half of all nodes controlled by one single entity); and

  (H) is not directly issued by a nation-state or private entity.

 (5) DECENTRALIZED ORACLE.—The term "decentralized oracle" means a service that sends and verifies real world data from external sources outside

1 of a blockchain and submits such information to
2 smart contracts that rest on the blockchain, thus
3 triggering the execution of predefined functions of
4 the smart contract.
5     (6) DIGITAL ASSET.—The term "digital asset"
6 means a crypto-commodity, crypto-currency, or
7 crypto-security.
8     (7) INSURED DEPOSITORY INSTITUTION.—The
9 term "insured depository institution" has the mean-
10 ing given such term under section 3 of the Federal
11 Deposit Insurance Act.
12     (8) PRIMARY FEDERAL DIGITAL ASSET REGU-
13 LATOR.—The term "primary Federal digital asset
14 regulator" means—
15         (A) the Commodity Futures Trading Com-
16     mission, with respect to crypto-commodities;
17         (B) the Secretary of the Treasury, acting
18     through the Financial Crimes Enforcement
19     Network, and the Comptroller of the Currency
20     with respect to crypto-currencies; and
21         (C) the Securities and Exchange Commis-
22     sion, with respect to crypto-securities.
23     (9) RESERVE-BACKED STABLECOIN.—The term
24 "reserve-backed stablecoin" means a digital asset
25 that—

    (A) is a representation of currency issued by the United States or a foreign government;

    (B) rests on a blockchain or decentralized cryptographic ledger; and

    (C) is collateralized on a one-to-one basis by such currency, and such currency is deposited in an insured depository institution.

  (10) SMART CONTRACT.—The term "smart contract" means a computer protocol intended—

    (A) to digitally facilitate, verify, or enforce the negotiation or performance of a contract; and

    (B) to allow the performance of credible transactions without third parties.

  (11) SYNTHETIC STABLECOIN.—The term "synthetic stablecoin" means a digital asset, other than a reserve-backed stablecoin, that—

    (A) is stabilized against the value of a currency or other asset; and

    (B) rests on a blockchain or decentralized cryptographic ledger.

**SEC. 3. ESTABLISHING AREAS OF PRIMARY REGULATORY OVERSIGHT FOR DIGITAL ASSETS.**

  (a) CRYPTO-COMMODITIES.—The Commodity Futures Trading Commission shall be the primary Govern-

ment agency with the authority to regulate crypto-commodities.

(b) CRYPTO-CURRENCIES.—The Secretary of the Treasury, acting through the Financial Crimes Enforcement Network, and the Comptroller of the Currency shall be the primary Government agencies with the authority to regulate crypto-currencies (other than synthetic stablecoins).

(c) CRYPTO-SECURITIES.—The Securities and Exchange Commission shall be the primary Government agency with the authority to regulate crypto-securities and synthetic stablecoins.

## SEC. 4. REGISTRATION AND PUBLIC LISTS OF DIGITAL ASSET EXCHANGES.

(a) CRYPTO-COMMODITIES.—The Commodity Futures Trading Commission shall require any exchange trading in crypto-commodities to register with the Commission, and shall maintain a public list of all such exchanges.

(b) CRYPTO-CURRENCIES.—The Secretary of the Treasury, acting through the Financial Crimes Enforcement Network, shall require any exchange trading in crypto-currencies (other than synthetic stablecoins) to register with the Secretary, and shall maintain a public list of all such exchanges.

8

1 (c) CRYPTO-SECURITIES.—The Securities and Ex-
2 change Commission shall maintain a public list of all reg-
3 istered national securities exchanges trading in crypto-se-
4 curities or synthetic stablecoins.

5 **SEC. 5. AVAILABILITY OF INFORMATION TO THE PUBLIC**
6 **ON REQUIREMENTS TO CREATE OR TRADE IN**
7 **DIGITAL ASSETS.**

8 Each primary Federal digital asset regulator shall,
9 with respect to digital assets over which it is the primary
10 Federal digital asset regulator, make available to the pub-
11 lic (and keep current) a list of all Federal licenses, certifi-
12 cations, or registrations required to create or trade in dig-
13 ital assets.

14 **SEC. 6. REQUIREMENTS RELATED TO CRYPTO-CUR-**
15 **RENCIES.**

16 (a) TRACING OF TRANSACTIONS.—Notwithstanding
17 section 3(c), the Secretary of the Treasury, acting through
18 the Financial Crimes Enforcement Network, shall issue
19 rules to require each crypto-currency (including synthetic
20 stablecoins) to allow for the tracing of transactions in the
21 crypto-currency and persons engaging in such transactions
22 in a manner similar to that required of financial institu-
23 tions with respect to currency transactions under sub-
24 chapter II of chapter 53 of title 31, United States Code.

9

(b) RESERVE-BACKED STABLECOIN AUDITS.—The Secretary of the Treasury, acting through the Financial Crimes Enforcement Network, shall carry out audits of each reserve-backed stablecoin to ensure that such stablecoin is fully backed by currency issued by the United States or a foreign government.

(c) TRANSITION RULE FOR STABLECOINS.—If an event (including a dilution event, technical hack, or concerted choice) causes a reserve-backed stablecoin to become a synthetic stablecoin or for a synthetic stable to become a reserve-backed stablecoin, the primary Federal digital asset regulator of the stablecoin shall notify the issuer of the stablecoin and the public of such transition.

◯