**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

WASHINGTON, D.C.

**VIA ECF**  July 10, 2024

The Honorable William H. Orrick
United States District Judge

Re: *SEC v. Payward, Inc., et al.,* 23-cv-06003-WHO (N.D. Cal.)

Dear Judge Orrick:

Defendants Payward, Inc. and Payward Ventures, Inc. ("Kraken") respectfully submit this letter brief per ECF No. 86 to address the recent decision in *SEC v. Binance Holdings Ltd.*, 23-cv-01599 (ABJ), 2024 WL 3225974 (D.D.C. June 28, 2024), granting in part and denying in part defendants' motions to dismiss. The *Binance* decision rejected the same arguments the SEC makes here, further supporting dismissal.

In *Binance*, the SEC alleged that the defendants operated secondary market trading platforms as unregistered securities exchanges, broker-dealers, and clearing agents, just like the SEC has alleged Kraken did here.[1] Binance moved to dismiss on the grounds that secondary market transactions were not investment contracts under *Howey*, just like Kraken did here.[2] The *Binance* court agreed with defendants, holding that secondary sales of Binance's native token (BNB) were not investment contracts. *Id.* at *19-22. This Court should dismiss the SEC's claims here for the same reasons.[3]

The *Binance* court applied the *Howey* test separately to primary offerings and secondary market sales. *Id.* at *19-20. The Ninth Circuit precedent cited in Kraken's motion to dismiss requires the same. *See* ECF No. 25 at 22-23 (citing *Hocking v. Dubois*, 885 F.2d 1449, 1462 (9th Cir. 1989)). Under this transaction-specific analysis, the *Binance* court found the SEC plausibly alleged that Binance's *primary* offerings of BNB were investment contracts. 2024 WL 3225974, at *15-17. But the court rejected the SEC's argument that token sales remain investment contracts during *secondary* transactions on Binance. *Id.* at *19-22. The SEC makes the same argument for secondary transactions on Kraken, and it should be rejected for the same reasons.[4]

*Binance* rejected the SEC's argument that tokens sold in the secondary market "embody" investment contracts formed during primary offerings. *Id.* at *11. Instead, following Judge Torres's decision in *Ripple* and rejecting *Terraform*, the court evaluated the "manner of sale" and

---

[1] *Compare id.* at *1, *with* ECF No. 1 ¶ 1.

[2] *Compare* 2024 WL 3225974, at *19, *with* ECF No. 25 at 15-17, 19-23.

[3] The SEC's Complaint alleges that 11 digital assets were investment contracts when sold on Kraken. ECF No. 1 ¶¶ 228-445. The *Binance* complaint named seven of the same digital assets, with substantially similar allegations. *Compare, e.g.*, ECF No. 1 ¶¶ 282-312, *with Binance*, 23-cv-01599 (ABJ), ECF No. 1 ¶¶ 399-426.

[4] *See* ECF No. 60 at 12-18, 25-27.

"economic reality of the particular" secondary market transactions. *Id.* at *19-20.[5] "[O]ngoing representations" by the issuer were "not enough" to collapse primary and secondary sales or to "bring secondary sales of BNB under the investment contract rubric." *Id*. at *20, *22. The court therefore held the SEC had not met its burden to plead the "expectation of profits" element of *Howey*, and doubted the sufficiency of the SEC's "investment of money" theory. *Id.* at *22.

*Binance* did not address secondary sales of third-party tokens, explaining that the primary sales of Binance's tokens were sufficient for the registration claims to proceed because "[t]he registration requirements are triggered by transactions involving just one security." *Id*. at *28.[6] But the SEC cannot rely on that crutch here. Unlike Binance, Kraken never issued a digital token or engaged in primary sales. The SEC bases its Complaint against Kraken solely on secondary market transactions of third-party tokens. In contrast, Binance issued and sold its own token (BNB) on its own platform, and the court *still* did not find that secondary purchasers expected profits based on Binance's efforts or that they made an investment of money in any enterprise. The *Binance* court therefore explicitly dismissed the SEC's secondary-sales allegations as to BNB. *Id*. at *44. *Binance*'s reasoning with respect to secondary sales of BNB applies with even more force here—the only secondary sales on Kraken's platform are for tokens issued by third parties with no connection to Kraken. *See* ECF No. 25 at 16-17, 19-22.

The *Binance* court held that an investment contract does not require an *enforceable* contract. 2024 WL 3225974, at *8. Kraken, however, did not argue that it did. *See* ECF No. 25 at 12-13; ECF No. 69 at 6-7. And, the *Binance* court did not have to engage with Kraken's additional arguments under Ninth Circuit precedent that investment contracts must be interpreted in light of the blue sky laws and must involve post-sale obligations. *See* ECF No. 25 at 12-16. These arguments provide additional and independent bases for dismissal here. *See id.*

While the *Binance* court did not accept defendants' major questions doctrine argument, it pointedly criticized the SEC's "decision to oversee this billion dollar industry through litigation – case by case, coin by coin." 2024 WL 3225974, at *11. The court also criticized the SEC for "speaking out of both sides of its mouth" and seeking to depart "from the *Howey* framework that leaves the [c]ourt, the industry, and future buyers and sellers with no clear differentiating principle between tokens in the marketplace that are securities and tokens that aren't." *Id.* at *22 & n.15.

At bottom, the *Binance* court held that the SEC could not simply lump together primary and secondary sales to survive dismissal. *Id.* at *19-20. The SEC's entire Complaint here rests on this same legally flawed premise—directly contrary to Ninth Circuit law. Allegations of primary issuances and ongoing representations in *Binance* were not enough, without more, to allege that secondary market transactions of BNB were investment contracts. So too here for the third-party tokens. *Binance* supports dismissal with prejudice of the SEC's claims.

---

[5] The *Binance* court did not follow the approach taken by *SEC v. Coinbase*, 2024 WL 1304037, at *23 (S.D.N.Y. Mar. 27, 2024), and distinguished *In re Ripple Labs, Inc. Litigation*, 2024 WL 3074379, at *7 (N.D. Cal. June 20, 2024) as limited to its facts. 2024 WL 3225974, at *22 n.16.

[6] In a discovery conference on July 9, 2024, Judge Jackson indicated that she may issue a further decision addressing secondary sales of third-party tokens.

Respectfully submitted,

*/s/ Matthew C. Solomon*
Matthew C. Solomon
msolomon@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Brian E. Klein
bklein@waymakerlaw.com
WAYMAKER LLP

*Attorneys for Kraken*