DANIEL O. BLAU (Cal. Bar No. 305008)
Email: blaud@sec.gov
ALEC JOHNSON (Cal. Bar No. 270960)
Email: johnsonstu@sec.gov
PETER BRYAN MOORES (Mass. Bar No. 658033)
Email: mooresp@sec.gov
ELIZABETH GOODY (N.Y. Bar No. 4687463)
Email: goodye@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission

Jorge Tenreiro, Deputy Chief (Crypto Assets and Cyber Unit)
100 Pearl Street, Suite 20-100
New York, New York

Katharine E. Zoladz, Regional Director
Douglas M. Miller, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**San Francisco Division**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>PAYWARD, INC. and PAYWARD VENTURES, INC.,<br><br>Defendants. | Case No. 3:23-cv-06003-WHO<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)**<br><br>Date:    December 4, 2024<br>Time:    2:00 p.m.<br>Ctrm:    2, 17th Floor<br>Judge:   The Hon. William H. Orrick |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

LEGAL STANDARD...................................................................................................................... 3

ARGUMENT… ............................................................................................................................... 3

    I.     THERE ARE NO SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION AS TO THE ISSUES ADDRESSED IN THE ORDER. ..................... 4

        A.     No Court has Required that an "Investment Contract" Include a Contract or "Post-Sale Obligations." ......................................................... 5

        B.     No Court has Required Money from a Buyer Be Routed to the Issuer of an Investment Contract. ......................................................... 8

    II.     KRAKEN'S PROPOSED QUESTIONS OF LAW DIFFER FROM THE LEGAL QUESTIONS RESOLVED IN THE ORDER. ............................... 9

    III.     KRAKEN'S APPEAL WILL NOT MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION. ................................................ 11

CONCLUSION.............................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Atkinson v. Aaron's LLC*,
    2024 WL 3199860 (W.D. Wash. June 26, 2024) .................................................................. 3

*Brady v. Otton*,
    2015 WL 1906204 (N.D. Cal. April 27, 2015) .................................................................... 3

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ..................................................................................... passim

*De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.*,
    608 F.2d 1297 (9th Cir. 1979) ............................................................................................ 7

*Fedance v. Harris*,
    1 F.4th 1278 (11th Cir. 2021) ............................................................................................. 5

*Heaton v. Social Finance, Inc.*,
    2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ....................................................................... 6

*Hocking v. Dubois*,
    885 F.2d 1449 (9th Cir. 1989) ........................................................................................ 7, 9

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ..................................................................................... passim

*In re Biomarin Pharm. Inc. Sec. Litig.*,
    2022 WL 597037 (N.D. Cal. Feb. 28, 2022) .................................................................... 11

*In re Flor*,
    79 F.3d 281 (2d Cir. 1996) ................................................................................................. 7

*In Ripple Labs, Inc. Litig.*,
    2024 WL 3074379 (N.D. Cal. June 20, 2024) ................................................................ 6, 9

*John Doe v. Meta Platforms, Inc.*,
    2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) ...................................................................... 3

*Patterson v. Jump Trading, LLC*,
    710 F. Supp. 3d 692 (N.D. Cal. 2024) ............................................................................... 9

*Reves v. Ernst & Young*,
    494 U.S. 56 (1990) ............................................................................................................. 5

*SA Music LLC v. Apple, Inc.*,
    2022 WL 1814148 (N.D. Cal. June 2, 2022) .................................................................. 6, 8

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ........................................................................................... 7

*SEC v. Binance Holdings Ltd.*,
    -- F. Supp. 3d --, 2024 WL 3225974 (D.D.C. June 28, 2024) ........................................... 6

*SEC v. Coinbase, Inc.*,
    -- F.Supp.3d --, 2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024) .............................................. 6

*SEC v. Grybniak*,
    2024 WL 4287222 (E.D.N.Y. Sept. 24, 2024) ........................................................................ 6

*SEC v. Kik Interactive, Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020) ..................................................................................... 6

*SEC v. Ripple Labs, Inc.*,
    682 F. Supp. 3d 308 (S.D.N.Y. 2023) ..................................................................................... 6

*SEC v. Terraform Labs PTE, Ltd.*,
    684 F. Supp. 3d 170 (S.D.N.Y. 2023) ..................................................................................... 6

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ............................................................................................................ passim

*Siegler v. Sorrento Therapeutics, Inc.*,
    2019 WL 2549248 (S.D. Cal. June 20, 2019) ........................................................................ 3

*Swint v. Chambers Cnty. Comm'n*,
    514 U.S. 35 (1995) ................................................................................................................... 8

*Warfield v. Alaniz*,
    569 F.3d 1015 (9th Cir. 2009) ................................................................................................. 7

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) ..................................................................................................................... passim

On August 23, 2024, this Court entered an order denying the motion to dismiss ("Order") filed by Defendants Payward, Inc. and Payward Ventures, Inc. (collectively, "Kraken") (Dkt. 90). Kraken subsequently filed a motion to certify the Court's Order for interlocutory appeal under 28 U.S.C. § 1292(b) (Dkt. 92, "Motion"). Plaintiff Securities and Exchange Commission ("SEC") submits this brief in opposition.

## INTRODUCTION

Kraken's request for an interlocutory appeal fails to present the kind of "exceptional circumstances" necessary to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (cleaned up). First, there are no substantial grounds for a difference of opinion about the issues presented in Kraken's Motion as required under 28 U.S.C. § 1292(b) because the various reinterpretations of the *Howey* test proposed by Kraken has been rejected by every court to consider those issues, including by this Court in denying Kraken's motion to dismiss. (Dkt. 90.)

Second, the issues presented by Kraken do not represent controlling questions of law under Section 1292(b) because at least two of the three issues Kraken seeks to appeal are materially different from the legal holdings reached by this Court in its Order. Specifically, in its motion to dismiss Kraken argued that the term "investment contract" requires contracts with "'post-sale obligations' from the issuer to the receiver." (Dkt. 90 at 13.) In the Motion, by contrast, Kraken appears to limit the reach of its arguments to *secondary market* claims under the Exchange Act, seeking certification of the question of whether a *subset* of investment contracts, specifically those "without a contract" or those "without post-sale obligations by the issuer to the purchaser" can form the basis of a violation of the Exchange Act. (Dkt. 92 at 1.)

Third, an interlocutory appeal in this instance would not materially advance the termination of this case because the Complaint alleges direct sales between issuers and investors on the Kraken Trading Platform and through Kraken Services that would satisfy the privity requirements Kraken seeks to add and thus these claims would still need to be litigated even if Kraken were to succeed in its proposed appeal. In sum, Kraken's Motion fails to meet any of the three statutory requirements

1  under 28 U.S.C. § 1292(b)—all of which are necessary for an interlocutory appeal—and it should
2  therefore be denied.

## BACKGROUND

In its motion to dismiss (Dkt. 25), Kraken argued that: (1) an "investment contract" requires a contract; (2) an "'investment contract' must impose post-sale obligations on the issuer"; and (3) an issuer must receive a buyer's investment of money for the transaction to satisfy the first prong of the test from *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). (Dkt. 25 at 10-13, 14, 16-17).

After careful analysis of Kraken's arguments and relevant precedent, the Order rejected each of Kraken's arguments. Specifically, the Court found the law was "well-settled" that investment contracts are not limited to actual contracts and that investment contracts do not require "post-sale obligations." (Dkt. 90 at 13-14.) The Court also found that to satisfy *Howey*'s first prong a buyer's investment of money does not have to go to the issuer; "it can go to a third-party." (*Id.* at 20-21.)

Discovery is well underway. Six days after the Court denied Kraken's motion to dismiss, Kraken, on August 29, 2024, served its first set of requests for production on the SEC containing 91 separate requests. On September 12, 2024, Kraken filed its answer, and the next day the SEC served on Kraken its first set of requests for production. On September 23, 2024, Kraken served its first set of requests for admission on the SEC. On September 30, 2024, the SEC served its written responses to Kraken's requests for production and made its first production to Kraken on October 4, 2024. On October 14, 2024, Kraken served its responses to the SEC's document requests.

On September 23, 2024, the same day it served 323 requests for admission, Kraken filed its Motion to Certify Order on Motion to Dismiss for Interlocutory Appeal under 28 U.S.C. § 1292(b). (Dkt. 92.) Rather than seeking to appeal the arguments addressed in the Order—whether investment contracts *can exist* without contracts or post-sale obligations—in its Motion, Kraken seeks interlocutory appeal on the issue of whether an investment contract *that exists* without contracts or post-sale obligations can form the basis of a violation of the Securities Exchange Act of 1934 (the "Exchange Act"); and Kraken also seek interlocutory appeal on whether *Howey* requires an investment of money in the alleged enterprise. (*Id.* at 1.)

**LEGAL STANDARD**

"Under 28 U.S.C. § 1292(b) parties may take an interlocutory appeal when exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *ICTSI Or.*, 22 F.4th at 1130.  Section 1292(b) sets forth three requirements to certify an order for interlocutory appeal, that: (1) the order involves a controlling question of law; (2) there are substantial grounds for difference of opinion as to that question; and (3) an immediate appeal from the order may materially advance the termination of the litigation.  28 U.S.C. § 1292(b).  The requirements of Section 1292(b) are jurisdictional, and all must be satisfied for certification.  *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

The party seeking certification bears the burden of establishing that all three requirements have been met. *John Doe v. Meta Platforms, Inc.*, 2024 WL 4375776, at *1 (N.D. Cal. Oct. 2, 2024).  And caselaw makes clear that this burden is a heavy one.  *See Atkinson v. Aaron's LLC*, 2024 WL 3199860, at *2 (W.D. Wash. June 26, 2024) ("party seeking interlocutory appeal bears the heavy burden of demonstrating that the case is an exceptional one") (cleaned up).  Section 1292(b) provides a "narrow exception to the final judgment rule." *Couch*, 611 F.3d at 633.  Interlocutory appeals are disfavored and "should only be granted where extraordinary circumstances exist." *Brady v. Otton*, 2015 WL 1906204, at *2 (N.D. Cal. April 27, 2015) (citation and quotation omitted).  Section 1292(b) was not intended to "open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Siegler v. Sorrento Therapeutics, Inc.*, 2019 WL 2549248, at *2 (S.D. Cal. June 20, 2019).

Moreover, interlocutory appeal under Section 1292(b) is discretionary.  "Even where the party seeking to certify an issue for interlocutory review meets its burden to show that each of the three requirements are satisfied, a district court's decision to grant or deny certification is entirely discretionary." *Meta Platforms*, 2024 WL 3199860, at *1 (cleaned up).

**ARGUMENT**

In seeking interlocutory review of its failed motion to dismiss, Kraken cannot satisfy the requirements of Section 1292(b), nor can it show that exceptional circumstances warrant a departure from the final judgment rule.  The most obvious shortcoming of Kraken's Motion lies with the

second requirement of Section 1292(b) and Kraken's claim that "substantial grounds for difference of opinion" exist for the three issues decided by the Order. Every court that has addressed these issues has uniformly sided with this Court. Kraken's arguments with respect to the first and third requirements are also flawed because, by switching its arguments Kraken has failed to identify "controlling questions of law," and because Kraken ignores allegations that would sustain all of the SEC's alleged violations even if Kraken's proposed appeal were successful.

### I. THERE ARE NO SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION AS TO THE ISSUES ADDRESSED IN THE ORDER.

The Court should deny Kraken's motion because it fails to meet its heavy burden and establish that substantial grounds for a difference of opinion exist as to any of three arguments addressed in the Order.[1] To determine if a "substantial ground for difference of opinion" exists under § 1292(b), courts must examine to what extent the controlling law is unclear. *Couch*, 611 F.3d at 633. "Courts traditionally will find that a substantial ground for difference of opinion exists whe[n] the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *ICTSI Or.*, 22 F.4th at 1132 (cleaned up). Here, as the Order recognized, "the Court in *Howey*, the Ninth Circuit in *Hocking*, and numerous courts since have made clear that contractual formalities" are not required (Dkt. 90 at 15), and the Ninth Circuit has also provided "guidance on how to determine whether a secondary market transaction is an

---

[1] As further discussed below in the analysis of Section 1292(b)'s first requirement, *infra* § II, at least two of the three "issues" or questions of law Kraken's sets forth in its Motion differ materially from the arguments it made in support of its motion to dismiss and, thus, from the issues decided in the Order. In its Motion to dismiss Kraken argued no investment contracts can exist without contracts or post-sale obligations. Now, Kraken seeks to certify a significantly different question—whether investment contracts that exist but supposedly lack contracts or post-sale obligations can form the basis of Exchange Act claims. For the purpose of analyzing whether Kraken has satisfied Section 1292(b)'s second and third requirements, the SEC addresses the arguments advanced for dismissal and rejected in the Order, namely that: (1) an investment contract cannot exist without a contract; (2) that contract must contain post-sale obligations; and (3) to satisfy the first prong of *Howey* the money from a buyer must flow to the original seller or issuer of the investment contract. Nevertheless, these new questions Kraken now proposes to certify fail to satisfy Section 1292(b)'s second and third requirements because Kraken's Motion does not cite a single case that suggests—let alone holds—that Exchange Act liability cannot be premised on investment contracts without contracts or without post-sale obligations. (*See* Motion at 6-9.)

investment contract." (*Id.* at 16.)[2]

Moreover, the possibility "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633. Actual disagreements among courts are the most significant evidence of substantial grounds. *See id.* ("Significantly, defendants have not provided a single case that conflicts with the district court's construction or application of California Penal Code § 319."). Here, there are no disagreements among the many courts that have addressed the Order's three issues. Thus, Kraken has identified no court that has adopted its positions or any judicial opinion that conflicts with this Court's Order. Nor has Kraken identified how the Court erred in its reasoning. As this Court noted in its Order, the law is "well-settled" against Kraken's positions. (Dkt. 90 at 13-14.) At its core, Kraken set forth in its motion to dismiss a new legal definition of "investment contract"—one without legal support—which was correctly rejected by this Court for conflicting with *Howey* and its progeny. Classifying Kraken's attempt to overturn *Howey* as an "exceptional circumstance" would undermine the basic tenet of federal law to postpone appellate review until after the entry of a final judgment and would require early appellate review each time a litigate devised a rewriting of a well-settled legal test.

### A. No Court has Required that an "Investment Contract" Include a Contract or "Post-Sale Obligations."

No substantial grounds exist for a difference of opinion as to the first or second issues addressed in the Order: whether investment contracts are "limited to actual contracts" or require "post-sale obligations." (*See* Dkt. 90 at 14.) "One of the best indicators that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed." *Heaton*

---

[2] The Order correctly explained that the Ninth Circuit has not specifically ruled on the applicability of the federal securities laws to secondary transactions in crypto assets (Order at 16), but the lack of this level of granular guidance cannot justify interlocutory review in this context. *Howey* "recognized the virtually limitless scope of human ingenuity, especially in the creation of 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'" *Reves v. Ernst & Young*, 494 U.S. 56, 60-61 (1990) (citing *Howey*, 328 U.S. at 299). It has accordingly been applied to many new factual scenarios, including to schemes involving various types of assets. *See generally Fedance v. Harris*, 1 F.4th 1278, 1288-89 (11th Cir. 2021) (collecting cases). If each scheme resulting from the "virtually limitless scope of human ingenuity" warranted interlocutory review, the narrow scope of § 1292(b) could become virtually non-existent in the context of *Howey*.

*v. Social Finance, Inc.*, 2016 WL 232433, at *4 (N.D. Cal. Jan. 20, 2016) (citations omitted).

Kraken's Motion fails to cite *even one case* contradicting this Court's Order or its reasoning. (Dkt. 92 at 6-9.) It does not because it cannot. Despite nearly a decade of the SEC, Department of Justice, and private parties litigating the application of *Howey* to transactions in crypto assets, despite dozens of enforcement actions by the SEC in this space, and despite countless judicial opinions addressing the "contracts" or "post-sale obligations" questions across the country and Circuits, not a single such case exists. *See, e.g., SEC v. Grybniak*, 2024 WL 4287222, at *7 (E.D.N.Y. Sept. 24, 2024) (rejecting requirement of post-sale obligations for common enterprise); *SEC v. Binance Holdings Ltd.*, -- F. Supp. 3d --, 2024 WL 3225974, at *9 (D.D.C. June 28, 2024) ("the notion that a contractual relationship is required has been consistently rejected by other district courts faced with crypto currency cases in recent years."); *In Ripple Labs, Inc. Litig.*, 2024 WL 3074379, at *8 (N.D. Cal. June 20, 2024) (adopting court's rejection of post-sale obligation requirement from *SEC v. Ripple Labs, Inc.*); *SEC v. Coinbase, Inc.*, -- F.Supp.3d --, 2024 WL 1304037, at *25 (S.D.N.Y. Mar. 27, 2024) ("Ultimately, since *Howey*, no court has adopted a contractual undertaking requirement. And, as previously noted, courts in this Circuit have repeatedly rejected efforts by defendants in the cryptocurrency industry to insert such a requirement into their *Howey* analysis."); *SEC v. Terraform Labs PTE, Ltd.*, 684 F. Supp. 3d 170, 193 (S.D.N.Y. 2023) ("[T]here need not be – contrary to defendants' assertions – a formal common-law contract between transacting parties for an 'investment contract' to exist."); *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 323 (S.D.N.Y. 2023) ("the Court rejects Defendants' argument that all investment contracts must include post-sale obligations of the promoter"); *SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169, 178 (S.D.N.Y. 2020) ("[A]n ongoing contractual obligation is not a necessary requirement for a finding of a common enterprise .... The contractual language is important to, but not dispositive of, the common enterprise inquiry, and courts regularly consider representations and behavior outside the contract."). On these issues, Kraken stands alone, and even a party's "strong disagreement" with a Court's ruling does not constitute a "substantial ground for difference of opinion." *Couch*, 611 F.3d at 633; *see also SA Music LLC v. Apple, Inc.*, 2022 WL 1814148, at *6 (N.D. Cal. June 2, 2022) (finding no substantial grounds where moving party had not identified any

binding or "non-binding decision that conflicts with [the Court's]").

Without any actual disagreement between this Court and other courts on these issues, Kraken suggests "reasonable" jurists would think differently and side with it. To suggest a substantial ground for difference of opinion, it reargues its motion to dismiss and claims its position is "consistent" with *Hocking v. Dubois*, 885 F.2d 1449 (9th Cir. 1989). (Dkt. 92 at 7-8.) But "consistency" is not the applicable standard. Just because a party's argument has not been expressly *foreclosed* by a circuit court opinion does not create *substantial* grounds for a difference of opinion. Otherwise, every time a clever litigant offered a new theory or tried to reargue or retrofit a well-settled legal test, any order rejecting these arguments would be subject to interlocutory appeal, even though the Ninth Circuit has expressly rejected that approach: "[I]t is well settled that 'the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion.'" *Couch*, 611 F.3d at 634 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

Worse, Kraken's position **is inconsistent** with *Hocking*. *Hocking* "contradicts" Kraken's argument that an "investment contract" requires a contract. (Dkt. 90 at 14.) *Hocking* expressly follows *Howey's* statement that an investment contract can be a "contract, transaction, or scheme." 885 F.2d at 1457. As the Court wrote in its Order:

> The Ninth Circuit has explained that in defining the term "investment contract," *Howey* "uses the terms 'contract, transition, or scheme,' … leaving open the possibility that the security is not formed of one near, tidy certificate, but a general 'scheme' of profit seeking activities." *Hocking*, 885 F.2d at 1457 (internal citations omitted). That principle is well-settled: Investment contracts are not limited to actual contracts.

(Dkt. 90 at 14.) (finding that other 9th Circuit case law Kraken cited, including *Warfield v. Alaniz*, 569 F.3d 1015 (9th Cir. 2009) and *Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013), undermined Kraken's arguments). The only real difference of opinion here is between *Hocking* and Kraken.

Kraken fares no better with its reinvocation of Ninth Circuit cases the Order already reasoned support or are consistent with the Court's holding, like *De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.* 608 F.2d 1297, 1301 (9th Cir. 1979) (Dkt. 92 at 9.) In its Order, the Court

SEC'S OPPOSITION TO MOTION FOR INTERLOCUTORY APPEAL     7     Case No. 3:23-cv-06003-WHO

carefully analyzed *De Luz* and concluded that not only does *De Luz* not state what Kraken claims, but the opinion is "inapposite because the promotional statements that the court considered were vaguer than those the SEC alleges here." (Dkt. 90 at 26). An "inapposite" opinion, like *De Luz*, does not create substantial grounds for a difference of opinion. No tension exists between this Court's Order and Ninth Circuit case law. *See SA Music*, 2022 WL 1814148, at *6 (finding no substantial grounds where the Court had explained "that none of the Ninth Circuit's decisions is in tension with mine—indeed, I continue to conclude that the opposite is true.").

In sum, Kraken seeks to appeal "well-settled" legal issues where the "weight of authority, both recent and well-established" disfavors its positions. (Dkt. 90 at 13-14.) And even if the application of *Howey*'s settled legal standard to the facts here were difficult, that is insufficient to create substantial grounds for a difference of opinion. Section 1292(b) "was not intended merely to provide review of difficult rulings in hard cases." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995). The Court should deny Kraken's motion as to these two issues.

### B. No Court has Required Money from a Buyer Be Routed to the Issuer of an Investment Contract.

Kraken's third issue suffers from the same fatal defect: there is no substantial grounds for a difference of opinion, as evidenced most clearly by the lack of any cases adopting Kraken's invented requirements. In its motion to dismiss, Kraken argued that the investment of money prong of *Howey* requires privity between a buyer and the original issuer of an investment contract such that the money from the buyer flows directly to the original issuer. (Dkt. 25 at 16-17) In rejecting Kraken's position, this Court observed that "Kraken has failed to point to any case that would support its position on the first *Howey* prong." (Dkt. 90 at 21.) In its Motion, Kraken concedes this holding and does not disagree. (Dkt. 92 at 9). Instead, it claims that the absence of authority provides the substantial grounds for a difference of opinion. (*Id.*) The absence of authority, however, is not sufficient to satisfy the standard either. The standard is not whether there are <u>any</u> grounds for a difference of opinion, but whether <u>substantial</u> grounds exist. "Just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will

support an interlocutory appeal." *Couch*, 611 F.3d at 633 (cleaned up).  In *Couch*, the Ninth Circuit found there was not substantial grounds for a difference of opinion where "[s]ignificantly, defendants have not provided a single case that conflicts with the district court's construction or application of [the applicable statute]." 611 F.3d at 633.  The same is true here.

Since there is no actual difference of opinion here Kraken resorts to rearguing its motion to dismiss, trying to distinguish *Hocking* by claiming the relevant language in that case is mere dicta. (Dkt. 92 at 9-10.)  Kraken, however, misreads *Hocking* and does not even cite to the section in *Hocking* discussing the investment of money prong.  Moreover, Kraken makes no attempt to establish why this Court's ruling is erroneous.  In its Order, this Court found that "*Howey* said nothing about an investment of money requiring privity between the issuer and the investor, nor has Congress ever drawn such boundaries around what constitutes an investment contract." (Dkt. 90 at 20.)  Again, Kraken points to nothing explaining why another court would likely discard this Court's reasoning, and notably omits any reference to Judge Hamilton's ruling from *In re Ripple Labs, Inc. Litig.*, 2024 WL 3074379, at *7, which likewise rejects Kraken's position.  This Court stated further that it "defies common sense to suggest that when someone purchases crypto assets from a reseller or another investor, that person or entity does not understand themselves to be investing money in the asset." (Dkt. 90 at 20.)  Other courts in this district have similarly had no trouble concluding that investors that purchased crypto assets on secondary market platforms, including on Kraken's, "invested money." *Patterson v. Jump Trading, LLC*, 710 F. Supp. 3d 692, 710 (N.D. Cal. 2024).  It is again not hard to see why: Kraken's approach would erase "investment contracts" from the definition of "security" in the Exchange Act, which is concerned with secondary market transactions in which there is likely no privity between the issuer and the investor.  Kraken has thus failed to carry its burden and establish that substantial grounds for a difference of opinion exist for its third issue as well.

**II.   KRAKEN'S PROPOSED QUESTIONS OF LAW DIFFER FROM THE LEGAL QUESTIONS RESOLVED IN THE ORDER.**

An interlocutory appeal is also unwarranted because the questions of law Kraken proposes in its Motion differ from the arguments it made in its motion to dismiss and thus differ from the

questions of law resolved by the Order. As a result, Kraken's Motion does not present controlling questions of law for interlocutory appeal. "A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *ICTSI Or*, 22 F.4th at 1130 (quotation omitted). Here, two of the three issues that Kraken seeks to appeal are materially different from the rulings contained in the Order. Because they are different, they are not controlling, even though they may be questions of law.

First, Kraken seeks to appeal "whether an 'investment contract' without a contract can form the basis of a violation of the Securities Exchange Act of 1934." (Dkt. 92 at 1.) This is different from Kraken's argument in its motion to dismiss, where it argued that an "investment contract" cannot exist without a contract. Kraken appears to argue on appeal that a transaction or scheme that qualifies as an "investment contract" may nevertheless not be subject to the Exchange Act if it does not include a contract. In its motion to certify, Kraken explains, "[w]ithout a contract to trade hands, the SEC's allegations under the Exchange Act do not make sense—abstract ideas and statements are not traded, brokered, or cleared on Kraken." (Dkt. 92 at 8.) In other words, Kraken is shifting its argument and making a distinction between types of "investment contract"—those that have contracts and those that do not—for purposes of Exchange Act liability. But Kraken did not ask the Court to address the liability of subsets of investment contracts in its original motion to dismiss. Kraken cannot appeal an issue that was not squarely presented.

Kraken's second proposed question has the same structural problem. Kraken seeks to appeal "whether an 'investment contract' without post-sale obligations running from issuer to purchaser can form the basis of a violation of the Exchange Act." (Dkt. 92 at 1.) Again, Kraken is asking whether a contract, transaction, or scheme that qualifies as an "investment contract"—but that supposedly does not include post-sale obligations—could form the basis of a violation of the Exchange Act. In its motion to dismiss, Kraken challenged whether there could be an "investment contract" without specific post-sale obligations, which is a different argument than it advances now. Accordingly, this question was not ruled on by this Court and cannot be a controlling question of law.

### III. KRAKEN'S APPEAL WILL NOT MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION.

Kraken's proposed appeal of the three issues will not materially advance the termination of this litigation because, even if successful, the exact same three Exchange Act registration claims still would remain to be litigated. This is so because the Complaint alleges offers and sales by issuers or promoters to buyers on the Kraken Trading Platform and through Kraken Services, and not just the resales that form the basis of Kraken's arguments. (Dkt. 1 at 25-27.) Thus, in these instances, the buyer's investment of money flows directly to the issuer or promoter, for example. Accordingly, all three registration claims in the Complaint would still be litigated irrespective of a privity requirement because the Complaint alleges the privity Kraken seeks to require under the Exchange Act. *See In re Biomarin Pharm. Inc. Sec. Litig.*, 2022 WL 597037, at *6 (N.D. Cal. Feb. 28, 2022) (finding interlocutory appeal would not advance the termination of the case because the case would still proceed even with a diminished number of possible violations). Nor would this new requirement significantly limit discovery concerning liability (including as to the sales of the crypto assets in the Complaint by their issuers on the platforms), which is already intensely underway. *Id.* (finding discovery would not be impacted).

Similarly, if the Ninth Circuit re-writes *Howey* to require a contract, then the case still goes forward. As the Court noted in its Order, Kraken is not arguing "investment contracts" require a written contract. (Dkt. 90 at 13 n.5.) In fact, Kraken has conceded that an unenforceable implied oral agreement—whatever that is—would suffice if merely *offered* by an issuer. (Dkt. 69 at 3, 6.) Thus, the SEC would still be able to prevail on its claims by arguing that an implied contract existed on the platforms. In this regard, with respect to these direct sales by the issuer on the Kraken Trading Platform and through Kraken Services, there is an agreement offered by the issuer to the buyer (at minimum a purchase and sale agreement), even if that agreement is not in writing and is merely implicit (since Kraken has not argued that something in writing is required).

Finally, if the Ninth Circuit imposed "post-sale obligations," the case, again, would still proceed. As Kraken acknowledges, "post-sale obligations" need not be enforceable or in some written agreement. (Dkt. 69 at 3, 6.) As alleged in the Complaint, the issuer is making inducements

and promises to perform post-sale tasks (*i.e.*, build and develop the network) that it is claimed would cause buyers to profit from the rise in the value of the crypto asset.  Whether the inducements and promises would qualify as a "post-sale obligation" under a theoretical Ninth Circuit opinion would then be a question of fact that would require further factual development and discovery.

Therefore, certification of an appeal would not materially advance the termination of this litigation, rather it would unnecessarily expend resources and delay the case.

## CONCLUSION

For the reasons set forth above, the SEC respectfully requests that the Court deny Kraken's Motion to Certify Order on Motion to Dismiss for Interlocutory Appeal.

Dated:  October 21, 2024                                         Respectfully submitted,

/s/ *Peter Bryan Moores*
Daniel O. Blau
Alec Johnson
Peter Bryan Moores
Elizabeth Goody

Counsel for Plaintiff
Securities and Exchange Commission

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

    U.S. SECURITIES AND EXCHANGE COMMISSION,
    33 Arch Street, 24th Floor, Boston, MA 02110
    Telephone No. 617-573-8900.

On October 21, 2024, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 21, 2024                 */s/ Peter Bryan Moores*
                                           Peter Bryan Moores

*SEC v. Payward, Inc.; Payward Ventures, Inc.*
**United States District Court—Northern District of California**
**Case No. 3:23-cv-06003-WHO**

**SERVICE LIST**

Matthew C. Solomon, Esq.
Rahul Mukhi, Esq.
Jennifer K. Park, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Email:  msolomon@cgsh.com
Email:  rmukhi@cgsh.com
Email:  jkpark@cgsh.com
*Attorney for Defendants Payward, Inc. and Payward Ventures, Inc.*

Brian Klein, Esq.
Ashley Martabano, Esq.
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Email;  bklein@waymakerlaw.com
Email:  amartabano@waymakerlaw.com
*Counsel for Defendants Payward, Inc. and Payward Ventures, Inc.*