1  DANIEL BLAU (Cal. Bar No. 305008)
   Email: blaud@sec.gov
2  ALEC JOHNSON (Cal. Bar No. 270960)
   Email: johnsonstu@sec.gov
3  PETER BRYAN MOORES (Mass. Bar No. 658033)
   Email: mooresp@sec.gov
4  ELIZABETH GOODY (N.Y. Bar No. 4687463)
   Email: goodye@sec.gov
5  JORGE G. TENREIRO (N.Y. Bar No. 4466991)
   Email: tenreiroj@sec.gov
6
   Attorneys for Plaintiff
7  Securities and Exchange Commission

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               San Francisco Division

11

12

13  SECURITIES AND EXCHANGE              Case No. 3:23-cv-06003-WHO
    COMMISSION,
14                                       **PLAINTIFF SECURITIES AND
              Plaintiff,                 EXCHANGE COMMISSION'S MOTION
15                                       FOR JUDGMENT ON THE PLEADINGS ON
         vs.                             DEFENDANTS' EIGHTH, NINTH, AND
16                                       TENTH AFFIRMATIVE DEFENSES**
    PAYWARD, INC. and PAYWARD
17  VENTURES, INC.,                      Date:      December 18, 2024
                                         Time:      2:00 p.m.
18            Defendants.                Ctrm:      2, 17th Floor
                                         Judge:     The Hon. William H. Orrick
19

20       **NOTICE OF MOTION: PLEASE TAKE NOTICE** that on December 18, 2024, at 2:00

21  pm, or at such other date and time as may be agreed upon or ordered, at the Courtroom of the

22  Honorable William H. Orrick, Plaintiff Securities and Exchange Commission ("Commission" or

23  "SEC") will move the Court, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings on

24  defendants Payward, Inc.'s and Payward Ventures, Inc.'s (collectively Kraken's) Eighth, Ninth, and

25  Tenth Defenses.

26       **REQUESTED RELIEF:**  The Commission requests that the Court grant its Motion and

27  dismiss Kraken's Eighth, Ninth, and Tenth Defenses.

28

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 2

ALLEGED FACTS AND KRAKEN'S AFFIRMATIVE DEFENSES ...................... 2

    I.     Kraken's Operations ................................................................................. 2

    II.    Kraken's Eighth, Ninth, and Tenth Affirmative Defenses ..................... 3

         A.     Eighth Defense: Major Questions Doctrine ................................. 3

         B.     Ninth Defense: Lack of Due Process and Fair Notice ................. 3

         C.     Tenth Defense: Lack of Due Process and Void for Vagueness
              as Applied .................................................................................... 4

LEGAL STANDARD ................................................................................................ 4

ARGUMENT… ......................................................................................................... 4

    I.     Kraken's Eighth Affirmative Defense Should Be Dismissed Because
        This Case Does Not Present a Major Question ....................................... 5

    II.    The Due Process Affirmative Defenses Should Be Dismissed. ............. 7

         A.     The Ninth and Tenth Defenses Are Redundant and Without
              Merit Based Upon the Court's Prior Ruling. ............................... 7

         B.     The Exchange Act Provides Fair Notice and Is Not
              Unconstitutionally Vague. ........................................................... 8

         C.     A Person of Ordinary Intelligence Had Fair Notice as Multiple
              Courts Have Held. ..................................................................... 10

         D.     The Securities Act Does Not Invite Arbitrary Enforcement.................... 13

         E.     As Applied, Kraken Had Fair Notice......................................... 15

         F.     Kraken's Affirmative Defenses Contradict Its Prior Position. ................ 17

CONCLUSION .......................................................................................................... 18

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ................................................................................ 4

4

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
    271 F.3d 1141 (9th Cir. 2001) ................................................................................ 9

5

6

*CFPB v. Ocwen Fin. Corp.*,
    2019 WL 13203853 (S.D. Fla. Sept. 5, 2019) ...................................................... 15

7

*CFTC v. Monex Credit Co.*,
    2021 WL 6102524 (C.D. Cal. Oct. 28, 2021) ...................................................... 16

8

9

*Coates v. City of Cincinnati*,
    402 U.S. 611 (1971) .............................................................................................. 12

10

11

*Dworkin v. Hustler Mag., Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ................................................................................ 4

12

*Engquist v. Oregon Dept. of Agr.*,
    553 U.S. 591 (2008) .............................................................................................. 14

13

14

*Fang Lin Ai v. United States*,
    809 F.3d 503 (9th Cir. 2015) .......................................................................... 14, 17

15

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) .................................................................................. 4

16

17

*FOX Factory, Inc. v. SRAM, LLC*,
    2017 WL 4551486 (N.D. Cal. Oct. 11, 2017) ..................................................... 5, 8

18

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) ................................................................................. 16

19

20

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) ................................................................................ 4

21

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................................................................ 9

22

23

*Hocking v. Dubois*,
    885 F.2d 1449 (9th Cir. 1989) .............................................................................. 10

24

*Hodges v. Monkey Capital, LLC*,
    2018 WL 9686569 (S.D. Fla. Aug. 14, 2018) ...................................................... 16

25

26

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................................................. 8, 9

27

*In the Black Res., LLC v. Blitz Design, Inc.*,
    2022 WL 17082372 (N.D. Cal. Nov. 17, 2022) ..................................................... 5

28

*Johnson v. United States*,
    576 U.S. 591 (2015)...............................................................................................17

*Kashem v. Barr*,
    941 F.3d 358 (9th Cir. 2019) .............................................................................9, 14

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ................................................................................................14

*Miller v. Cent. Cinchilla Grp., Inc.*,
    494 F.2d 414 (8th Cir. 1974) .................................................................................10

*Musacchio v. United States*,
    577 U.S. 237 (2016)..................................................................................................5

*Nelson v. City of Irvine*,
    143 F.3d 1196 (9th Cir. 1998) .................................................................................4

*Parker v. Levy*,
    417 U.S. 733 (1974)..................................................................................................9

*SEC v. Binance Holdings Ltd.*,
    -- F. Supp. 3d --, 2024 WL 3225974 (D.D.C. June 28, 2024) ..............................13

*SEC v. Brigadoon Scotch*,
    480 F.2d 1047 (2d Cir. 1973) .................................................................................11

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ................................................................................................15

*SEC v. Coinbase, Inc.*,
    -- F. Supp. 3d --, 2024 WL 1304037 (S.D.N.Y. March 27, 2024)........................13

*SEC v. Edwards*,
    540 U.S. 389 (2004) ................................................................................................10

*SEC v. Feng*,
    935 F.3d 721 (9th Cir. 2019) ..............................................................7, 9, 10, 11

*SEC v. Keener*,
    2022 WL 196283 (S.D. Fla. Jan. 21, 2022) ..........................................................16

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020)..........................................................9, 12, 16

*SEC v. Koscot Interplanetary, Inc.*,
    497 F.2d 473 (5th Cir. 1974) .................................................................................10

*SEC v. LBRY, Inc.*,
    639 F. Supp. 3d 211 (D.N.H. 2022) .......................................................................13

*SEC v. Ripple Labs, Inc.*,
    682 F. Supp. 3d 308 (S.D.N.Y. 2023)....................................................................12

*SEC v. Scoville*,
    913 F.3d 1204 (10th Cir. 2019) .............................................................................10

*SEC v. SG Ltd.*,
   265 F.3d 42 (1st Cir. 2001) ........................................................................................ 10

*SEC v. Terraform Labs Pte. Ltd.*,
   684 F. Supp. 3d 170 (S.D.N.Y. 2023) ....................................................................... 12

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946) ........................................................................................... passim

*Shagoofa v. Eshaqzi*,
   2024 WL 1600657 (C.D. Cal. Feb. 26, 2024) .............................................................. 4

*Smith v. Gross*,
   604 F.2d 639 (9th Cir. 1979) ...................................................................................... 10

*Solis v. Latium Network, Inc.*,
   2018 WL 6445543 (D.N.J. Dec. 10, 2018) ................................................................ 16

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ....................................................................................... 7

*Tucson v. City of Seattle*,
   91 F.4th 1318 (9th Cir. 2024) ................................................................................ 8, 14

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ........................................................................................ 6

*United States v. Bowdoin*,
   770 F. Supp. 2d 142 (D.D.C. 2011) ........................................................................... 11

*United States v. Coscia*,
   866 F.3d 782 (7th Cir. 2017) ...................................................................................... 15

*United States v. Farris*,
   614 F.2d 634 (9th Cir. 1979) ...................................................................................... 11

*United States v. Lanier*,
   520 U.S. 259 (1997) ...................................................................................................... 9

*United States v. Leonard*,
   529 F.3d 83 (2d Cir. 2008) ......................................................................................... 10

*United States v. Lusby*,
   2022 WL 16570816 (9th Cir. Nov. 1, 2022) ................................................................ 9

*United States v. Mazurie*,
   419 U.S. 544 (1975) ...................................................................................................... 9

*United States v. Smith*,
   389 F.3d 944 (9th Cir. 2004) ........................................................................................ 5

*United States v. Sun & Sand Imports, Ltd.*,
   725 F.2d 184 (2d Cir. 1984) ....................................................................................... 12

*United States v. Williams*,
   553 U.S. 285 (2008) ............................................................................................ 7, 9, 11

*United States v. Zaslavsky,*
    2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) ........................................................ 12, 14, 16

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982)................................................................................................... 9

*Zeyen v. Bonneville Joint Dist.,*
    114 F.4th 1129 (9th Cir. 2024) .................................................................................. 5

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(c) ........................................................................................................... 4

1    The SEC respectfully submits this Motion for Judgment on the Pleadings on Kraken's

2    Eighth (Major Questions Doctrine), Ninth (Lack of Due Process and Fair Notice), and Tenth (Lack

3    of Due Process and Void for Vagueness As Applied) affirmative defenses.

4    **<u>INTRODUCTION</u>**

5    When denying Kraken's motion to dismiss, this Court rejected Kraken's assertion that the

6    major questions doctrine foreclosed this action and also determined that the definition of

7    "investment contract" under the Securities Exchange Act of 1934 is well-settled law.  ("Order" cited

8    as "Dkt. 90").  Nonetheless, Kraken's Answer restated their major questions argument as an

9    affirmative defense, along with a pair of due process defenses suggesting that the term "investment

10   contract" lacks sufficient clarity to have given Kraken fair notice of the law.  Worse, Kraken has

11   now propounded numerous discovery requests seeking voluminous sets of documents and sprawling

12   admissions related to these legally unsupportable defenses.

13   In light of the Court's Order—which represents the law of the case—Kraken's Eighth,

14   Ninth, and Tenth affirmative defenses fail as a matter of law, and judgment on the pleadings and

15   dismissal of these affirmative defenses is warranted.  The Eighth defense is foreclosed because, as

16   Kraken acknowledges, the Order concluded that this case does not present a "major question."  The

17   Ninth and Tenth Defenses are foreclosed because, as this Court recognized in its Order, *Howey* and

18   its progeny set forth a clear test for determining what constitutes an investment contract under U.S.

19   securities law.  Indeed, every federal court to consider this issue of fair notice has found that *Howey*

20   and its progeny are constitutionally sufficient to satisfy due process.  In fact, Kraken itself argued

21   repeatedly in its motion to dismiss that the statute and *Howey* were "clear" and unequivocal.

22   Kraken cannot now flip its position and claim the statute is unconstitutionally vague, any more than

23   it can deny the weight of caselaw against its new position.

24   Judgment on the pleadings and dismissal of these affirmative defenses is warranted to avoid

25   extensive and time-consuming discovery and motion practice unrelated to any actual issue to be

26   tried.  The Court should dismiss these defenses to help maintain the proper scope of discovery,

27   narrow summary judgment, save judicial and party resources, and prevent Kraken from trying to re-

28   litigate the same issues repeatedly at every possible stage of this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF ISSUES TO BE DECIDED

Whether Kraken's Eighth, Ninth, and Tenth Affirmative Defenses about the major questions doctrine and due process fail as a matter of law, including because the term "investment contract" from the Securities Act of 1933 and the Securities Exchange Act of 1934 is not unconstitutionally vague and provides fair notice.

## ALLEGED FACTS AND KRAKEN'S AFFIRMATIVE DEFENSES

The following are uncontroverted alleged facts from the Complaint, allegations in the Answer that are taken as true for the purpose of this Motion, and a summary of Kraken's relevant defenses.

### I.    Kraken's Operations

Kraken has been driven by the global demand for an alternative to the traditional finance and currency systems.  (Ans., Prelim. Stmt. at 1.)  The "Kraken Trading Platform" allows customers to buy and sell crypto assets through an online market.  (Compl. ¶¶ 1, 39.)  On its website, Kraken describes the Kraken Trading Platform as "one of the world's largest digital asset exchanges" and advertises that it has more than nine million retail and institutional customers located in over 190 countries.  (*Id*. ¶ 39.)  With the launch of the Kraken Trading Platform, Kraken began providing services for customers to open accounts, deposit funds, enter orders, and trade crypto assets ("Kraken Services").  (*Id*. ¶ 40.)  Kraken has employed thousands of workers to develop and operate its Kraken Trading Platform and Kraken Services.  (Ans., Prelim. Stmt. at 1.)  Kraken received more than $43 billion in revenue in 2020 and 2021 from trading-based transactions, including fees charged to customers, sales of crypto assets to customers, and its own proprietary trading.  (Compl. ¶¶ 42-43.)

Two hundred and twenty crypto assets are available on the Kraken Trading Platform and through the Kraken Services, including ADA starting in September 2018; ALGO in January 2020; ATOM in April 2019; FIL in October 2020; FLOW in January 2021; ICP in March 2022; MANA in December 2020; MATIC in May 2021; NEAR in June 2022; OMG in October 2019; and SOL in June 2021.  (Compl. ¶¶ 234, 248, 275, 293, 321, 343, 358, 378, 396, 409, 433).  The Complaint alleges these 11 crypto assets were offered and sold as investment contracts on the Kraken Trading

Platform and through Kraken Services, and these investments contracts are labeled in the Complaint as the "Kraken-Traded Securities." Before the Complaint was filed in this case, all 11 of the assets were alleged to be offered and sold as securities in one or more actions previously filed by the SEC against other unregistered intermediaries: *SEC v. Bittrex*, No. 2:23-cv-580 (W.D. Wash. filed Apr. 17, 2023); *SEC v. Binance Holdings Ltd*., Civ. No. 23-1599 (D.D.C. filed June 5, 2023); *SEC v. Coinbase, Inc*., No. 23-cv-4738 (S.D.N.Y. filed June 6, 2023). (Compl. ¶¶ 58)

Kraken has tried to work with the SEC to, in its view, make registration with the SEC as a securities intermediary feasible. (Ans., Prelim. Stmt. at 1.) Kraken has worked to comply with the SEC's approach to crypto assets that are in the SEC's view offered and sold as investment contracts. (Ans., Prelim. Stmt. at 1.) Despite its attempt to comply and its understanding that registration with the SEC was required, Kraken chose not to register.

## II. Kraken's Eighth, Ninth, and Tenth Affirmative Defenses

In the Complaint, the SEC alleged Kraken acted as an exchange, a broker, a dealer, and a clearing agency without registration in violation of Sections 5, 15(a), and 17A(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78e, 78o(a), and 78q-1(b)]. In its Answer, Kraken asserted multiple affirmative defenses, including the Eighth, Ninth, and Tenth Defenses relating to the major questions doctrine and due process.

### A.    Eighth Defense: Major Questions Doctrine

In its Eighth Defense, Kraken asserts that if there were ambiguity regarding the SEC's authority to enforce Sections 5, 15(a), or 17A of the Exchange Act, the application of the major questions doctrine would require resolving the ambiguity against the SEC's authority. (Ans. at 70-71.) While asserting the defense, Kraken acknowledges that the Court already rejected the same argument in the Order. Nevertheless, it continues to assert the defense in order to re-argue the identical issue at summary judgment. (*Id.* at n.2.)

### B.    Ninth Defense: Lack of Due Process and Fair Notice

In its Ninth Defense, Kraken generically claims it did not have, and the SEC failed to provide "fair notice that [its] conduct was in violation of the law, in contravention of its due process rights." (Ans. at 70.) In its pleading, Kraken does not identify a statute or statutory provision that

1  lacked "clarity and fair notice."  Kraken pleads no specific facts in support of its Ninth Defense.

2  ### C.    Tenth Defense: Lack of Due Process and Void for Vagueness as Applied

3      In its Tenth Defense, Kraken claims that "[a]s applied to the transactions alleged by the

4  [SEC], the securities laws and the test formulated by the Supreme Court in *SEC v. W.J. Howey Co.*,

5  328 U.S. 293 (1946) are impermissibly vague."  (Ans. at 71.)  In this defense, Kraken does

6  specifically refer to the definition of "security" and the term "investment contract" located in both

7  the Securities and the Exchange Acts.  Kraken claims that under its circumstances a "person of

8  ordinary intelligence would not have had a reasonable opportunity to know" that any of the crypto

9  assets trading on its platform could be offered and sold as an investment contract or security.  (*Id.*)

10  ### LEGAL STANDARD

11      A plaintiff may move for judgment on an affirmative defense under Fed. R. Civ. P. 12(c).

12  *See, e.g.*, *Shagoofa v. Eshaqzi*, 2024 WL 1600657, at *1 (C.D. Cal. Feb. 26, 2024) (granting

13  plaintiff's 12(c) motion for judgment on defendants' affirmative defenses).  A Rule 12(c) motion for

14  judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a

15  claim under Rule 12(b)(6).  *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

16  The same judicial standard applies to motions brought under either rule.  *Cafasso v. Gen. Dynamics

17  C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  When considering a motion for judgment on

18  the pleadings, a court "must accept all factual allegations in the complaint as true and construe them

19  in the light most favorable to the non-moving party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th

20  Cir. 2009).  A motion for judgment on the pleadings is "properly granted when, taking all the

21  allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."

22  *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998).  A Rule 12(c) motion may be based

23  on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to allege a cognizable

24  claim.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).

25  ### ARGUMENT

26      The Court should dismiss Kraken's Eighth, Ninth, and Tenth affirmative defenses because:

27  (1) as this Court has already held, this case does not present a major question and (2) the Exchange

28  Act is not unconstitutionally vague but provides fair notice due in part, as the Court has already

ruled, that the definition of "investment contract" is well-settled law.

## I.    Kraken's Eighth Affirmative Defense Should Be Dismissed Because This Case Does Not Present a Major Question.

The Court has already resolved whether the major questions doctrine applies to this case.  It held that it does not.  (Dkt. 90 at 28-29.)  But despite the Court's ruling, Kraken has pled its Eighth Defense asserting once again that the major question doctrine precludes the SEC's lawsuit.  The Court should exercise its discretion and apply the law of the case doctrine—or repeat its prior ruling on the merits—to deny Kraken's attempts to relitigate the same issue over and over again.  "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016).  It is not a complete bar to reconsideration of matters decided.  *FOX Factory, Inc. v. SRAM, LLC*, 2017 WL 4551486, at *6 (N.D. Cal. Oct. 11, 2017).  "The doctrine expresses the practice of courts generally to refuse to reopen what has been decided, but it does not limit courts' power."  *Musacchio*, 577 U.S. at 245 (cleaned up).  The doctrine "serves many purposes including 'aid[ing] in the efficient operation of court affairs' and 'advanc[ing] the principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided.'" *Zeyen v. Bonneville Joint Dist.*, 114 F.4th 1129, 1137 (9th Cir. 2024) (quoting *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004)); *see also In the Black Res., LLC v. Blitz Design, Inc.*, 2022 WL 17082372, at *4 n.4-5 (N.D. Cal. Nov. 17, 2022) (Orrick, J.) (applying law of the case doctrine).

In moving to dismiss, Kraken argued that "the major questions doctrine" applies and precludes the SEC from bringing this case.  (Dkt. 25 at 28-30; Dkt. 69 at 15.)  In its Order, the Court squarely rejected Kraken's argument that the major questions doctrine applies and that it requires the Court dismiss the SEC's Complaint.  (Dkt. 90 at 28-29 ("This is not such a case.")) The Court held that the "SEC is not asserting a 'transformative expansion in its regulatory authority' or a highly consequential power beyond what Congress could reasonably be understood to have granted it. While cryptocurrency itself is a relatively novel financial instrument, the

principles driving the SEC's attempt to assert regulatory authority over it are not new." (*Id.* at 29 (citations omitted.))

Nevertheless, in its Answer, Kraken reasserts the exact same defense claiming the major questions doctrine strips the SEC of the authority to enforce the Exchange Act. (Ans. at 71.) Notably, Kraken concedes that its defense has no merit in light of the Court's Order. (*Id.* at n.2.) And Kraken further reveals its true purpose: to ask the court at summary judgment to reconsider its prior holding. (*Id.*)

But Kraken's suggestion that it will raise the exact same major questions doctrine argument again at summary judgment is insufficient to permit the defense to stand in the Answer. (*Id.*)  The law of the case doctrine bars Kraken from burdening the Court and the SEC by re-litigating the purely legal question of the major questions doctrine without justification. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (listing five limited situations warranting a departure from the law of the case doctrine).  Dismissal is particularly appropriate and necessary now to preclude Kraken from seeking burdensome and irrelevant discovery under the guise that it somehow relates to the major questions doctrine and its Eighth Defense, which Kraken seems even now attempting to do.  Given that the Court has already ruled that the major questions doctrine does not apply here, dismissal of this defense is necessary.  Rather than requiring the parties to engage in the time-consuming process of meeting and conferring on expansive discovery requests based on the major questions doctrine and then relitigating the merits of that defense in motions to compel and for summary judgment, the Court should narrow the issues before it based on its prior ruling.  The law of the case doctrine was designed to prevent such inefficient waste of judicial and party resources, and the Eighth Defense should be dismissed.

Alternatively, if the Court does not strictly apply the law of the case doctrine, the Court should grant judgment on the pleadings because Kraken's Eighth affirmative defense fails as a matter of law for the exact same reasons the Order held the defense meritless on Kraken's motion to dismiss.

///

///

1

2

**II.    The Due Process Affirmative Defenses Should Be Dismissed.**

   **A.  The Ninth and Tenth Defenses Are Redundant and Without Merit Based Upon the Court's Prior Ruling.**

Kraken's Ninth and Tenth Defenses alleging a lack of due process are redundant and should be dismissed.[1]  The Ninth refers to a lack of fair notice whereas the Tenth refers to unconstitutional vagueness.  But the legal theories are the same, relying on the identical legal standard: "due process requires that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited."  Dkt. 91 at 71.  In other words, both defenses rise and fall together, and here they both fall if the law or statutory term at issue has a "statutory definition, narrowing context, or a settled legal meaning."  *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022) (rejecting vagueness/fair notice defense).  A "word is not vague when it has a 'settled legal meaning.'"  *SEC v. Feng*, 935 F.3d 721, 734 n.8 (9th Cir. 2019) (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). That is precisely what the Court ruled in its Order denying Kraken's motion to dismiss.

Indeed, Kraken's due process affirmative defenses mostly rehash its flawed arguments made in its unsuccessful motion to dismiss.  In its Tenth Defense, Kraken claims "nothing in *Howey* suggests that there can be an investment contract *when no contract exists*."  (Ans. at 72.)  In its Order, the Court thoroughly rejected that same exact argument:

> Indeed, Kraken's authority contradicts its argument. The Ninth Circuit has explained that in defining the term "investment contract," *Howey* "uses the terms 'contract, transition, or scheme,' … leaving open the possibility that the security is not formed of one neat, tidy certificate, but a general 'scheme' of profit seeking activities." *Hocking*, 885 F.2d at 1457 (internal citations omitted). *That principle is well-settled: Investment contracts are not limited to actual contracts.*

(Dkt. 90 at 14 (emphasis added.))  The Court went further to state that *Howey* itself made clear that contractual formalities are *not* required:

> In short, the blue sky laws from which *Howey* drew inspiration may have involved more formal contracts, but the Court in *Howey*, the Ninth Circuit in *Hocking*, and numerous courts since have made clear that contractual formalities are not required for something to qualify as an investment contract, and therefore a security. What counts is the totality of the circumstances surrounding a sale, trade, or exchange, and the expectations of the investor. Kraken's argument would improperly constrain *Howey*.

---

[1] The Ninth Defense is devoid of substance.  It does not refer to any specific "law" or assert any factual allegations.  It should be dismissed on those grounds alone.

(*Id.* at 15.)  In its analysis, the Court repeatedly denied Kraken's contention that *Howey* required a contract: (a) "Second, Kraken contends that promotional statements alone are insufficient without a 'reference in the contracts to an obligation,' which the SEC concedes is absent here.  Again, the caselaw does not support its position."  (*Id.* at 26 (citations omitted.)); and (b) "Kraken insists that the fact that it republished the promotional statements made by the issuers of the cryptocurrency available for transactions on its platform 'does not rescue the Complaint,' because none of the statements create 'a contractual obligation by the issuer.'  They did not have to."  (*Id.* at 27 (citations omitted.))

Because the Court's ruling unequivocally establishes that "investment contract" has a well-settled meaning and *Howey* and its progeny make "clear" that the investment contract does not require a "contract," the Court's ruling precludes as a matter of law Kraken's two redundant due process defenses.  Based on the Court's prior Order, dismissal of these defenses is warranted to narrow the case and prevent repeated attempts to re-litigate these issues either in discovery or at summary judgment and trial.  *See, e.g.*, *FOX Factory*, 2017 WL 4551486, at *7 (applying law of the case doctrine where there was "no reason to revisit" prior order).

**B.      The Exchange Act Provides Fair Notice and Is Not Unconstitutionally Vague.**

Kraken's Ninth and Tenth Affirmative Defenses also fail as a matter of law.  As has been uniformly recognized by other courts, the definition of "security"—specifically the term "investment contract"—has a well-settled meaning, provides a defendant with fair notice, and does not authorize arbitrary enforcement.

A statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010).  As for arbitrary enforcement, "a law is void for vagueness if it lacks any ascertainable standard for inclusion and exclusion, thereby authorizing or encouraging the authorities to arbitrarily prosecute one class of persons instead of another."  *Tucson v. City of Seattle*, 91 F.4th 1318, 1329 (9th Cir. 2024) (cleaned up).  Statutes are not vague if they have "statutory definitions, narrowing context, or settled legal meanings."  *Humanitarian Law Project*, 561 U.S. at 20 (cleaned up).

When analyzing vagueness, acts of Congress are presumed to be constitutional. *Parker v. Levy*, 417 U.S. 733, 757 (1974). And every concept in a statute need not be precisely defined. *United States v. Mazurie*, 419 U.S. 544, 552 (1975). Indeed, "perfect clarity is not required." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). Nor is precise guidance required even when regulations restrict express activity. *Humanitarian Law Project*, 561 U.S. at 20. "Condemned to the use of words, [courts] can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). "Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness." *Cal. Teachers*, 271 F.3d at 1151.

Applied to facts like those here, due process tolerates even more statutory vagueness. Statutes regulating businesses are subject to a less strict vagueness test. An "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses . . . can be expected to consult relevant legislation in advance of each action." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

Vagueness challenges may arise as either facial or as-applied objections. *United States v. Lusby*, 2022 WL 16570816, at *1 (9th Cir. Nov. 1, 2022). A facial challenge asserts the law is invalid *in toto* and in all applications. *Id.* An as-applied challenge argues that the law is impermissibly vague under the "facts of the case at hand." *Id.* (citing *Vill. of Hoffman Ests.*, 455 U.S. at 494-95).

"Whether a provision is vague for lack of fair notice is an objective inquiry." *Id.* at 371. The inquiry hinges on the statute's text and judicial decisions construing it. *United States v. Lanier*, 520 U.S. 259, 266 (1997) ("Clarity . . . may be supplied by judicial gloss on an otherwise uncertain statute."). A "word is not vague when it has a 'settled legal meaning.'" *Feng*, 935 F.3d at 734 n.8 (quoting *Williams*, 553 U.S. at 306). Subjective information about the defendant's mindset (or the enforcers of the statute) is irrelevant. *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019). Nor does a vagueness inquiry "call for a factual investigation into whether a statute has led to arbitrary enforcement . . . ." *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020).

### C.    A Person of Ordinary Intelligence Had Fair Notice as Multiple Courts Have Held.

Even if this Court had not already confirmed that "investment contract" has a "well-settled"

legal meaning, a person of ordinary intelligence had fair notice of what is prohibited.  Like others,

Kraken could readily review the last eighty years of judicial precedent construing the meaning and

application of "investment contract."  As this Court has recognized, "[t]he Supreme Court has

defined an investment contract . . . [in *Howey*].  This definition has remained largely *unchanged*

*since 1946.*" (Dkt. 90 at 10-11 (emphasis added.))  Eighty years of precedent has characterized

"investment contract" as a flexible, inclusive term.  As this Court stated in its Order:

> The term "investment contract" must be read broadly to address the multitude of
> money-making schemes that Congress could never have anticipated in 1934 when
> the Securities Act was passed. As the Court explained in *Howey*, "investment
> contract" "embodies a flexible rather than static principle, one that is capable of
> adaptation to meet the countless and variable schemes devised by those who seek to
> use the money of others on the promise of profits." *Howey*, 238 U.S. at 299, 66 S. Ct.
> 1100. In 1967, the Court added that when courts analyze whether a contract,
> transaction, or scheme is an investment contract, "form should be disregarded for
> substance and the emphasis should be on economic reality [and the] totality of
> circumstances." *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S. Ct. 548, 19 L.Ed.2d
> 564 (1967).

(Dkt. 90 at 12.)

Indeed, since 1946, courts have applied *Howey*, which itself dealt with orange groves, to

evaluate and classify as investment contracts many novel financial schemes, unconventional

investments, and a wide-range of transactions, including:  payphone leases, *see SEC v. Edwards*,

540 U.S. 389 (2004); investment packages to secure EB-5 visas, *see Feng*, 935 F.3d at 730-31;

online ad services, *see SEC v. Scoville*, 913 F.3d 1204, 1219-22 (10th Cir. 2019); films, *see United

States v. Leonard*, 529 F.3d 83, 87-91 (2d Cir. 2008); virtual shares in an enterprise existing only in

cyberspace, *see SEC v. SG Ltd.*, 265 F.3d 42, 47 (1st Cir. 2001); condominiums, *see Hocking v.

Dubois*, 885 F.2d 1449, 1451 (9th Cir. 1989) earthworms, *see Smith v. Gross*, 604 F.2d 639 (9th

Cir. 1979); multi-level marketing, *see SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 478-79 (5th

Cir. 1974); and chinchillas, *see Miller v. Cent. Cinchilla Grp., Inc.*, 494 F.2d 414, 416-18 (8th Cir.

1974).  Indeed, as this Court found, the flexible *Howey* test applies "wherever a court seeks to

determine whether a transaction involves an investment contract, regardless of whether that

transaction is on a primary or secondary market."  (Dkt. 90 at 16.)

For these reasons, *Howey*'s clear test and extensive progeny has been and remains enough to satisfy the Constitution's demands for due process. Unsurprisingly, every court that has dealt with the vagueness/due process defenses as to the term "security" or "investment contract" has rejected it. *Forty-five years ago*, in 1979, the Ninth Circuit rejected a defendant's similar claim that the term "security" was impermissibly vague. *United States v. Farris*, 614 F.2d 634 (9th Cir. 1979). The court reasoned that there were "numerous authorities on the definition of 'security,' enough to give him, in our opinion, 'a reasonable opportunity to know' the bounds of the federal offense." *Id.* at 642. The court explained that it was by then already "too late in the day more than 32 years after the Supreme Court's decision in [*Howey*] to say that the term 'security' is impermissibly vague." *Id.* The Ninth Circuit reached the same conclusion five years ago in *Feng*, 935 F.3d 721. In *Feng*, the Ninth Circuit rejected Feng's appeal of the denial of his Rule 12(c) motion in which he argued that the term "security" from the Exchange Act was unconstitutionally vague. *Id.* at n.8. The Ninth Circuit upheld the denial noting that a "word is not vague when it has a 'settled legal meaning.'" *Id.* (quoting *Williams*, 553 U.S. at 306). The court found that the applicable provision of the Exchange Act "was enacted 80 years ago, and it has been applied countless times by the courts" thereby giving the term a settled legal meaning. *Id.*

Courts have similarly rejected fair notice challenges to the term "investment contract." Almost 50 years ago, the Second Circuit held it was "untenable" to claim the term "investment contract" was void for vagueness "in light of the many Supreme Court decisions defining and applying the term." *SEC v. Brigadoon Scotch*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973) *cited by Farris*, 614 F.2d at 642. *Brigadoon* reached that conclusion despite the defendant making three arguments similar to Kraken's: that it was selling interests in a usable commodity, *id.* at 1051, that the SEC had "made no determination yet as to coverage under the federal securities laws," *id.*, and that the SEC had issued confusing guidance. *Id.* at 1052 n.3; *see also United States v. Bowdoin*, 770 F. Supp. 2d 142, 148 (D.D.C. 2011) ("The lineage of the term [investment contract] is too long and well-recognized for [defendant's] claim of unconstitutional vagueness to stand.").

Kraken may complain that none of the prior decisions applying *Howey* involved its specific facts of crypto assets being re-sold in a public secondary market, but that is not the type of notice

the law requires.  A statute need not provide an exact blueprint of what it permits and prohibits.  *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (statute is not unconstitutionally vague because it "requires a person to conform his conduct to an imprecise but normative standard").  The law only requires a term have a definition, narrowing context, or well-settled meaning sufficient for a person of ordinary intelligence to apply the normative standard to their own facts.  "Statutes and regulations . . . are not impermissibly vague simply because it may be difficult to determine whether marginal cases fall within their scope."  *United States v. Sun & Sand Imports, Ltd.*, 725 F.2d 184, 187 (2d Cir. 1984).

Accordingly, even within the context of crypto-related securities, courts have uniformly rejected for years defendants' assertions of vagueness and lack of fair notice because *Howey* and its progeny provide an objective well-settled standard.  Six years ago, in *United States v. Zaslavsky*, the district court rejected defendant's vagueness challenge as-applied to the offer and sale of crypto assets as investment contracts.  The court wrote, "the test expounded in *Howey* has – for over 70 years – provided clear guidance to courts and litigants as to the definition of 'investment contract.'" 2018 WL 4346339, at *8-9 (E.D.N.Y. Sept. 11, 2018).  In *Kik*, the court dismissed a similar as-applied challenge because *Howey* and cases applying it "give[] a reasonable opportunity to understand what conduct and devices" the term investment contract covers.  *Kik*, 492 F. Supp. 3d at 182-83 ("*Howey* provides a clearly expressed test for determining what constitutes an investment contract, and an extensive body of case law provides guidance on how to apply that test . . . .").  In *Ripple Labs*, the court rejected defendants' fair notice defense because "*Howey* sets forth a clear test for determining what constitutes an investment contract, and *Howey*'s progeny provides guidance on how to apply that test to a variety of factual scenarios.  That is constitutionally sufficient to satisfy due process."  *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 332 (S.D.N.Y. 2023); *see also SEC v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 190-91 (S.D.N.Y. 2023) (rejecting defendants' fair notice defense).

Courts have even rejected fair notice defenses involving supposedly novel crypto factual situations and secondary market trading because the law as enumerated in *Howey* is so well-settled. For example, in *LBRY*, the court granted summary judgment on LBRY's fair notice defense ruling that:

1
2
3

the SEC has based its claim on a straightforward application of a venerable Supreme Court precedent that has been applied by hundreds of federal courts across the country over more than 70 years. While this may be the first time it has been used against an issuer of digital tokens that did not conduct an ICO, LBRY is in no position to claim that it did not receive fair notice that its conduct was unlawful.

4    *SEC v. LBRY, Inc.*, 639 F. Supp. 3d 211, 221-22 (D.N.H. 2022).  In *SEC v. Coinbase*, defendants,

5    like Kraken here, argued that the SEC's approach to crypto assets had shifted and that it lacked fair

6    notice.  The court denied the argument concluding that "[w]hile Coinbase may have come to a

7    different conclusion [applying *Howey*] than the SEC, it can hardly claim to have lacked notice that

8    (i) the legal framework potentially applied and (ii) the SEC could bring an action under it."  *SEC v.*

9    *Coinbase, Inc.*, -- F. Supp. 3d --, 2024 WL 1304037, at *17 (S.D.N.Y. March 27, 2024) ("Here, the

10   SEC is not announcing a new regulatory policy, but rather is simply engaging in a fact-intensive

11   application of an existing standard—an application that Coinbase also conducted—to determine

12   whether certain transactions involving crypto-assets meet the characteristics of an "investment

13   contract.").

14         Similarly, the court in *SEC v. Binance* held that "defendants have had fair notice of the

15   SEC's position on digital tokens," and determined that the lawsuit against defendants did not come

16   as a "surprise."  The *Binance* court looked back in time even further than *Howey* to *SEC v. CM*

17   *Joiner Leasing Corp.* to conclude that the case against the crypto trading platform merely

18   represented the agency's enforcement of "a decades-old securities statute and 1943 Supreme Court

19   precedent interpreting it."  *SEC v. Binance Holdings Ltd.*, -- F. Supp. 3d --, 2024 WL 3225974, at

20   *42-43 (D.D.C. June 28, 2024).

21         Thus, *every* federal court that has considered arguments over whether the term "investment

22   contract" is unconstitutionally vague or does not provide fair notice have rejected them.  There is no

23   reason to permit this defense to form the basis of additional litigation in this case.

24         **D.    The Securities Act Does Not Invite Arbitrary Enforcement.**

25         For the second part of the test, a statute does not authorize or encourage arbitrary

26   enforcement if it either: (1) provides an "ascertainable standard for inclusion and exclusion" or (2)

27   contains some guidelines, such that authorities cannot "arbitrarily prosecute one class of persons

28

instead of another." *Kashem*, 941 F.3d at 374.  Kraken's challenge fails for both reasons.

First, as articulated above, *Howey* and its progeny provide "investment contract" with a well-settled meaning and an objective standard to apply to various factual circumstances.  *Howey* "set[s] forth the standards needed to cabin enforcement relative to investment contracts." *Zaslavsky*, 2018 WL 4346339, at *9; *see also Kolender v. Lawson*, 461 U.S. 352, 360-61 (1983) (finding reasonable suspicion standard ensured existence of "neutral limitations on the conduct of individual law enforcement officers.") (cleaned up).

Second, *Howey* and its progeny provide sufficient guidance on who is subject to enforcement for trading investment contracts to eliminate arbitrary applications of the law.  The objective *Howey* test does not turn on a law enforcement officer's unguided and subjective judgment.  The subjective judgment of a law enforcement officer is irrelevant to this Court's determination whether the *Howey* test has been met.  Even "whether the government applied or interpreted [the statute] consistently" does not bear on the question whether the statute was unconstitutionally vague.  *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015) (denying statute was unconstitutionally vague even where federal agency was alleged to have failed to explain consistently the statute's application).

Nor does due process eliminate an agency's discretion in bringing enforcement actions.  The SEC's mere selection of a few subjects for enforcement from a larger group of potential violators does not suggest that the statute invites arbitrary enforcement.  *See Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 603 (2008) (selecting targets of enforcement "by its nature" requires discretionary decision making); *Tucson v. City of Seattle*, 91 F.4th at 1330 ("The mere fact that the City and its officers have discretion to enforce the Local Ordinance in some circumstances and not others is not a sufficient basis for concluding that the Local Ordinance is wholly vague such that it can never be enforced.")  Prosecutorial discretion "to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law is a fundamental requirement of the separation of powers." *Id.* (cleaned up).

Relatedly, Kraken complains that any perceived inaction by the SEC renders a statute vague.  However, "the choice made between proceeding by general rule or by individual, ad hoc litigation is

1  one that lies primarily in the informed discretion of the administrative agency." *SEC v. Chenery*

2  *Corp.*, 332 U.S. 194, 203 (1947).  When Congress has provided the necessary definition, "agency

3  inaction . . . is irrelevant." *United States v. Coscia*, 866 F.3d 782, 792-93 (7th Cir. 2017)

4  (distinguishing between statute and regulation, and highlighting that in *Upton* "defendant had

5  technically complied with the requirements of a rule"); *see also CFPB v. Ocwen Fin. Corp.*, 2019

6  WL 13203853, at *16-19 (S.D. Fla. Sept. 5, 2019) (rejecting fair notice defense based on

7  "regulation through enforcement," and noting "[f]ederal courts have rejected this argument.").

8         In sum, the standard against which the SEC seeks to measure Kraken's conduct is the statute

9  itself, the language and judicial interpretation of which Kraken had notice.  The objective test set

10 forth by the Supreme Court in *Howey* provides a standard that federal courts have applied often for

11 nearly 80 years.  The test does not enable the SEC or any other federal agency to arbitrarily enforce

12 the Exchange Act.  It is to the Court that the parties look to determine whether Kraken's conduct

13 falls within the scope of the statute.

14        **E.      As Applied, Kraken Had Fair Notice.**

15        Kraken's own factual circumstances buttress the conclusion that it had fair notice.  Kraken is

16 a large business with "thousands" of employees generating billions of dollars in annual revenue.

17 (Ans., Prelim. Stmt. at 1.)  Kraken claims it built its exchange and business in response to a global

18 demand for an "alternative to the traditional finance and currency systems."  (*Id.*)  Kraken claims

19 that is has worked to comply with the SEC's approach to crypto asset regulation.  (*Id.*)  Kraken even

20 claims that it is has tried to work with the SEC to make registration of its public financial

21 marketplace "feasible."  (*Id.*)  In sum, Kraken has alleged that it is a large, sophisticated corporation

22 that has intentionally and voluntarily entered the highly regulated finance industry to construct a

23 trading platform, and in doing so, it has educated itself on the applicable law and attempted to work

24 with the SEC about how the law would apply to itself.  In this context, the vagueness test is less

25 strict.  Thus, given its alleged sophistication and involvement, Kraken cannot reasonably claim that

26 it did not know the objective standard set forth in *Howey* controlled the analysis of whether

27 registration was required.

28        Despite Kraken's protests to the contrary, fair notice of what a statute may prohibit does not

require anything from the SEC.  A defendant "is only entitled to notice of the meaning of the statute and not to the agency's interpretation of the statute."  *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255 (3d Cir. 2015).  Due process does not "require the Government to reach out and warn all potential violators on an individual or industry level."  *Kik*, 492 F. Supp. 3d at 183; *see also SEC v. Keener*, 2022 WL 196283, at *14 (S.D. Fla. Jan. 21, 2022) ("[T]he Court is unaware of, and Defendant has failed to cite to, any authority requiring [the SEC] to issue precise guidance on the regulations it enforces.") (citations omitted); *CFTC v. Monex Credit Co.*, 2021 WL 6102524, at *20 (C.D. Cal. Oct. 28, 2021) (granting summary judgment on fair notice defense, noting "[a]gencies are not required to anticipate problems, promulgate general rules before performing their statutory duties, and announce why they may proceed in one enforcement action but not in another").

Moreover, Kraken first listed the Kraken-Traded Securities *after* a court had concluded that "investment contract" in the Exchange Act provided a crypto-related criminal defendant with sufficient clarity and due process.  *Compare Zaslavsky*, 2018 WL 4346339, at *8-9 (defendant "fails to demonstrate that a person of ordinary intelligence would not have sufficient notice that the charged conduct was proscribed.") *with* (Compl. ¶¶ 234, 248, 275, 293, 321, 343, 358, 378, 396, 409, 433) (listing when Kraken made Kraken Traded Securities available on its Trading Platform and through Kraken Services).  Likewise, Kraken listed the Kraken-Traded Securities after multiple actions by private plaintiffs in the crypto asset space and multiple enforcement actions against defendants in the crypto asset space.  *See, e.g., Hodges v. Monkey Capital, LLC*, 2018 WL 9686569, at *6 (S.D. Fla. Aug. 14, 2018) ("Coeval and Monkey Coins constitute investment contracts . . . ."); *Solis v. Latium Network, Inc.*, 2018 WL 6445543, at *3 (D.N.J. Dec. 10, 2018) (complaint sufficiently alleged "LATX tokens are investment contracts under the *Howey* test."); SEC, Crypto Assets and Cyber Actions, available at *https://www.sec.gov/spotlight/ cybersecurity-enforcement-actions*.

Kraken cannot claim surprise or a lack of fair notice when it starts to list the Kraken-Traded Securities beginning decades after *Howey*, after various court decisions applying *Howey* within the context of crypto assets, and even after at least one court has rejected the same due process defense within the context of crypto assets.

1

### F.    Kraken's Affirmative Defenses Contradict Its Prior Position.

2    Kraken's due process affirmative defenses rely on the assertion that no "person of ordinary

3    intelligence" could have predicted this Court's application of *Howey*.  Essentially, in Kraken's

4    view, the Court's read of *Howey* and its progeny is so bizarre and illogical that no reasonable person

5    similarly situated to Kraken could have predicted it and that *Howey* is too ambiguous to be

6    reasonably applied to crypto assets.  But this view represents a 180-degree turn from what it argued

7    in its motion to dismiss.  There Kraken argued that the Exchange Act and *Howey* are unambiguous

8    when applied to crypto assets and secondary market trading.  Kraken argued the "statute's plain

9    language" was "clear" and *Howey* required dismissal.  Dkt. 25 at 1, 11, *passim*.  Kraken wrote:

10    "[t]he statutory text of the Exchange Act, *Howey*, and over 75 years of precedent applying *Howey*

11    establish that investment contracts require one or more contracts."  Dkt. 25 at 10.  Not once in its

12    briefing or during oral argument did Kraken claim that the Exchange Act was "*unclear*" or "*vague*"

13    or that *Howey* was equivocal.  Kraken cannot have it both ways.  It cannot assert in one breath that

14    the Exchange Act is literally "clear" and in the next that it is so vague as to be unconstitutional.

15    Moreover, Kraken's concession in its Answer that the Supreme Court's construction of

16    "investment contract" in *Howey* governs the analysis means that it had fair notice.  (Dkt. 91 at 72.)

17    The application of facts to a defined objective standard does not give rise to a fair notice problem.

18    *Johnson v. United States*, 576 U.S. 591, 603-04 (2015) ("As a general matter, we do not doubt the

19    constitutionality of laws that call for the application of a qualitative standard such as 'substantial

20    risk' to real-world conduct . . . .").  Just because Kraken's own biased application of *Howey* was

21    incorrect, does not give rise to a fair notice claim.  *Fang Lin Ai*, 809 F.3d at 515 ("having a

22    colorable argument that [the statute] do not apply does not render the statute unconstitutionally

23    vague.").  Otherwise, most defendants could claim a lack of fair notice when the law cuts against

24    them.

25    Accordingly, Kraken's due process affirmative defenses fail as a matter of law.  The Court

26    should dismiss them now.  If not, Kraken will pursue irrelevant and burdensome discovery under

27    the pretense that the discovery somehow relates to its due process defenses.  The presence of these

28    defenses would not render their discovery relevant, but their absence would preclude Kraken from

making that argument and avoid the Court having to resolve the dispute.

## **CONCLUSION**

For the reasons set forth above, the SEC asks the Court to grant its Motion and dismiss Kraken's Eighth, Ninth, and Tenth affirmative defenses.

Dated:  November 5, 2024                                  Respectfully submitted,

                                                         */s/ Peter Bryan Moores*
                                                         Daniel O. Blau
                                                         Alec Johnson
                                                         Peter Bryan Moores
                                                         Elizabeth Goody

                                                         Counsel for Plaintiff
                                                         Securities and Exchange Commission

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
33 Arch Street, 24th Floor, Boston, MA 02110
Telephone No. 617-573-8900.

On November 5, 2024, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR JUDGMENT ON THE PLEADINGS ON DEFENDANTS' EIGHTH, NINTH, AND TENTH AFFIRMATIVE DEFENSES** on all the parties to this action addressed as stated on the attached service list:

☐     **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐     **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐     **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐     **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐     **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐     **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒     **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐     **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.


Date:  November 5, 2024                    _/s/ Peter Bryan Moores_
                                          Peter Bryan Moores

*SEC v. Payward, Inc.; Payward Ventures, Inc.*
**United States District Court—Northern District of California**
**Case No. 3:23-cv-06003-WHO**

## SERVICE LIST

Matthew C. Solomon, Esq.
Rahul Mukhi, Esq.
Jennifer K. Park, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Email:  msolomon@cgsh.com
Email:  rmukhi@cgsh.com
Email:  jkpark@cgsh.com
*Attorney for Defendants Payward, Inc. and Payward Ventures, Inc.*


Brian Klein, Esq.
Ashley Martabano, Esq.
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Email;  bklein@waymakerlaw.com
Email:  amartabano@waymakerlaw.com
*Counsel for Defendants Payward, Inc. and Payward Ventures, Inc.*