**Via ECF**

Hon. William H. Orrick
United States Senior District Judge
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

        Re:    *Securities and Exchange Commission v. Payward, Inc. and Payward Ventures, Inc.*, Case No. 3:23-cv-06003-WHO

Hon. Judge Orrick:

        Pursuant to this Court's Civil Standing Order, the parties present this joint statement regarding an unresolved discovery dispute concerning Plaintiff's objections to Defendants' requests for three categories of documents: (1) those concerning Bitcoin and Ether, (2) those concerning Plaintiff's public statements and testimony regarding digital assets, and (3) Plaintiff's internal trading policies on digital assets. Defendants served their requests for production ("RFPs") on Plaintiff on August 24, 2024. Plaintiff submitted its responses and objections to the RFPs on September 30, 2024 (attached as Exhibit A). In response, Defendants submitted two letters to Plaintiff regarding these issues, on October 8, 2024 and on October 24, 2024. The parties have met and conferred by Zoom twice—on October 16, 2024 and again on October 31, 2024—and have subsequently reached impasse. The positions of the parties are attached to this cover letter.

        The parties are generally available for a telephonic oral argument at the Court's convenience.

Respectfully submitted,

/s/ *Peter Bryan Moores*
Daniel O. Blau (SBN 305008)
Alec Johnson (SBN 270960)
Peter Bryan Moores
Elizabeth Goody
SECURITIES AND
EXCHANGE COMMISSION
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
(323) 965-3998 (phone)
(213) 443-1904 (Facsimile)
blaud@sec.gov
johnsonstu@sec.gov
mooresp@sec.gov
goodye@sec.gov

*Counsel for Plaintiff*

/s/ *Matthew C. Solomon*
Matthew C. Solomon (pro hac vice)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Ave., NW
Washington, DC 20037
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
msolomon@cgsh.com

Rahul Mukhi (SBN 350718)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000 (Phone)
(212) 225-3999 (Facsimile)
rmukhi@cgsh.com

Brian Klein (SBN 258486)
Ashley Martabano (SBN 236357)
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, CA 90071
(424) 652-7814 (Phone)
(415) 772-7400  (Facsimile)
bklein@waymakerlaw.com
amartabano@waymakerlaw.com

*Counsel for Defendants*
*Payward, Inc. and*
*Payward Ventures, Inc.*

The Hon. William H. Orrick
November 19, 2024
Page 1

## I. DEFENDANTS' POSITION

Kraken seeks to compel the production of information that is highly relevant to defending the claims brought by the SEC. Specifically, the Court should order the SEC to search for and produce: (i) documents concerning Bitcoin and Ether; (ii) the SEC's internal trading policies on digital assets; and (iii) documents concerning the SEC's statements to third parties and testimony regarding digital assets. "Relevancy, for purposes of discovery, is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Rubke v. ServiceNow, Inc.*, 2024 WL 4540756, at \*2 (N.D. Cal. 2024). And, "[l]ike any ordinary litigant, the [SEC] must abide by the Federal Rules of Civil Procedure [and] is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009). While this Court will ultimately determine admissibility, the documents requested by Kraken easily clear the low bar for relevance during discovery.

***Bitcoin and Ether:*** Documents related to Bitcoin and Ether (RFPs 7, 9, 11, 12, 31, and 32) are relevant. Bitcoin and Ether are the two largest digital assets by market cap. They trade on Kraken's platform just like the 11 digital assets named in the complaint and have many of the same characteristics the SEC has alleged and argued make sales in the 11 named digital assets "investment contracts." For example, the SEC relies on the alleged "initial" fundraising by the "issuers" of the named 11 digital assets to support its "investment contract" theory. *See, e.g.*, Compl. ¶ 243. Ether involved initial "fundraising" too.[1] The SEC also claims that the alleged issuers touted their tokens' "ecosystems" and the steps they would take to grow them. *See, e.g.*, Compl. ¶ 252. The Ethereum Foundation has done the same with Ether. *See Jacobo v. Doe*, 2022 WL 2052637, at \*1 (E.D. Cal. 2022) (Ethereum Foundation is "a well-known organization that supports the Ethereum cryptocurrency platform and related technologies"). And the creator of Bitcoin publicly promoted the token. *See* ECF No. 25 at 25.

Despite all of this, the SEC has declared that transactions in Bitcoin and Ether are *not* securities transactions. Setting aside their ultimate admissibility, documents related to these assets could tend to contradict the SEC's allegations by showing why transactions in assets with very similar characteristics are not securities under *Howey*, and the circumstances the SEC has determined to be insufficient to deem transactions investment contracts. For example, they would be relevant to the "reasonable expectations of the individual initiating the transaction" on Kraken. ECF No. 90 at 11. If members of the public were "led to expect" by the SEC that transactions in Bitcoin and Ether were not investment contracts, then a reasonable purchaser may have been "led to expect" that transactions in the 11 named digital assets were likewise not investment contracts thereby failing the third *Howey* prong. *See Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009). The SEC says that Kraken "misrepresents the third prong of *Howey*," but if a purchaser had no reasonable expectation of profits from the efforts of others, that necessarily means she had no reasonable expectation she was purchasing an investment contract.

The SEC says Bitcoin and Ether are "unrelated" to the named digital assets, but this is disputed by Kraken. The requested discovery could demonstrate that the digital assets *are* related—either because the SEC itself acknowledged they have similar characteristics or because SEC documents reflect such market perceptions. The SEC posits that internal documents about

---

[1] William Hinman, Dir., SEC Div. of Corp. Fin., Digital Asset Transactions: When Howey Met Gary (Plastic) (June 14, 2018), https://tinyurl.com/9k6hbh3m.

The Hon. William H. Orrick
November 19, 2024
Page 2

Bitcoin and Ether "cannot inform" the application of *Howey* to the named digital assets. But this ignores that, as a central player in the market's understanding of digital assets, the SEC's views, analyses, and statements regarding these tokens inform the "character . . . in commerce" given to other tokens with similar characteristics, including the tokens named in the complaint. *Marine Bank v. Weaver*, 455 U.S. 551, 556, 559 (1982) (analyzing *Howey* based on whether instruments would "ordinarily and commonly [be] considered . . . securities in the commercial world" and "what character the instrument is given in commerce").[2]

The SEC's communications regarding Bitcoin and Ether are also relevant to Kraken's fair notice defense, including whether the SEC's actions and statements have sown "substantial uncertainty" regarding the application of the securities laws to digital asset transactions. *See Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996). The SEC accuses Kraken of incorrectly describing its own defense, arguing fair notice only involves "review of the underlying statute" and not the SEC's actions. Yet the cases relied upon by the SEC in its Rule 12(c) motion demonstrate that the SEC's "regulations, written guidance, litigation, [and] other actions" can be relevant to fair notice. *See SEC v. Terraform Labs*, 684 F. Supp. 3d 170, 192 (S.D.N.Y. 2023); *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 332 (S.D.N.Y. 2023) (similar); *United States v. Zaslavskiy*, 2018 WL 4346339, at *9 (E.D.N.Y. 2018) (similar).

The court in *Ripple* rejected the SEC's arguments and held that "discovery related to Bitcoin and Ether is relevant" "with respect to the *Howey* factors" and "to the fair notice defense." *SEC v. Ripple Labs Inc.*, 20-cv-10832 (AT) (S.D.N.Y.), ECF No. 112, Tr. 51:9-52:13. Likewise, the *Coinbase* court found that Coinbase was entitled to broad discovery of the SEC's internal documents related to *Howey* and its application to digital assets. ECF No. 161, Tr. 5:16-6:25. The SEC has not attempted to explain why this case is distinguishable from *Ripple* or *Coinbase*.[3] Instead, despite previously telling this Court that *Coinbase* is a "recent similar enforcement action" involving some "nearly identical allegations," it now tries to have it both ways by rehashing a similar discovery dispute it lost in that case two months ago. ECF No. 60 at 2, 24. The SEC's cited cases are inapposite. *LBRY* involved a deposition subpoena of a former director, not requests for documents from the SEC's files. *Kik* involved primary sales, not secondary sales on a platform involving multiple assets, and the order and related briefing did not discuss Bitcoin or Ether. *Terraform* involved primary sales, only addressed (with no analysis) speeches, and did not find those documents irrelevant. And since these cases, the SEC has advanced new and shifting theories—including that a digital asset "embodies" an investment contract—which Kraken is entitled to rebut through discovery about Bitcoin and Ether.

*SEC Policies and Guidelines:* Documents related to the SEC's policies and guidance governing its employees' ownership and trading of digital assets (RFPs 49 and 51) are also relevant to Kraken's *Howey* and fair notice defenses. If the SEC allowed trading in digital assets by its employees as consistent with the securities laws during the very time that it asserts Kraken had "fair notice," then how could it have been reasonable for a purchaser to believe she was entering into an investment contract? *See Marine Bank*, 455 U.S. at 559. Citing nothing, the SEC says that its "internal policies, deliberations, or approaches" have no bearing on this inquiry. But

---

[2] The SEC says that Kraken "misreads" *Marine Bank*, but the SEC is wrong that the case held only "the specific facts of the transactions at issue" can be considered under *Howey*. *See* 455 U.S. at 559.

[3] The SEC says that the *Ripple* defendants did not cite any of the disputed documents in their summary judgment papers. That is demonstrably false. *See, e.g.*, *Ripple*, ECF No. 828 at 15. That the court's summary judgment order did not cite these documents, among the hundreds presented, does not reflect on their relevance for discovery.

The Hon. William H. Orrick
November 19, 2024
Page 3

the SEC tried to play a central role in market-wide understandings, so its views are relevant. And the SEC's adoption of contrary policies for its own staff and the general public could give rise to "substantial uncertainty" and a fair notice defense about the application of the securities laws to digital asset transactions. *See Upton*, 75 F.3d at 98. *Ripple* similarly found that defendants' requests for the SEC's internal trading policies cleared "the low bar for relevance" and ordered the SEC to produce these policies. *Ripple*, ECF 253. The same analysis applies here.

**Documents Concerning SEC Statements to Third Parties and SEC Testimony:** Evidence related to certain public statements by the SEC about digital asset regulation is relevant (RFPs 15 and 77-84). In 2021, Chair Gensler testified to Congress that "exchanges trading in these crypto assets *do not have a regulatory framework* [] at the SEC."[4] Discovery into the documents and communications underlying the Chair's testimony, and the basis for his assertion, is relevant to whether and how the Exchange Act applies to Kraken. Kraken also seeks documents concerning the June 14, 2018 speech by former SEC Director of the Division of Corporation Finance William Hinman—the same documents the SEC was ordered to produce in *Ripple* after protracted litigation. Former Director Hinman's speech addressed issues that are relevant (Bitcoin and Ether's status under the securities laws) and in serious dispute (how *Howey* applies to secondary trading). *See* ECF No. 25 at 4, 23. As in *Ripple*, discovery into the bases for his assertions is relevant to *Howey*. This discovery is also relevant to fair notice, as it may underscore the widespread uncertainty among market participants about the regulatory status of digital asset transactions and secondary trading on platforms.

**The Requested Discovery Is Proportional to the Needs of the Case.** Each category of requested documents also satisfies Rule 26's proportionality requirement. The SEC has not articulated any reason why these requests would impose a disproportionate burden other than its say-so. Given that each of these categories has already been reviewed and produced in other matters, the SEC's burden is low. Kraken has also expressed a willingness to work with the SEC to devise a search methodology that would decrease burden, and remains committed to doing so.

## II. PLAINTIFF'S POSITION

The SEC's claims turn on one question: whether the 11 crypto assets identified in the Complaint (the "Kraken-Traded Securities") were offered and sold as investment contracts under the Exchange Act and *Howey*. The discovery that Kraken seeks to compel has *expressly* no factual connection to any of the 11 Kraken-Traded Securities. Instead, Kraken seeks documents about other crypto assets unnamed in the Complaint (Bitcoin and Ether), SEC employee policies, and internal SEC documents about statements that do not mention the Kraken-Traded Securities. They are irrelevant, and gathering and producing them will be a tremendous waste of resources.

Discovery is limited to non-privileged documents relevant to this case's claims and defenses and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *Lineberry v. AddShoppers, Inc.*, 23-cv-01996, 2024 WL 4707986, at *2 (N.D. Cal. Nov. 6, 2024) ("discovery is not unlimited"). Kraken's arguments as to the relevance of the materials sought are misguided and disingenuous. First, the SEC's deliberations about other crypto assets will provide no evidence helpful to the fact-specific *Howey* analysis this Court will have to perform for each of the Kraken-Traded Securities. Even if the SEC's internal *Howey* analyses of Bitcoin and Ether

---

[4] *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III*, 117th Cong. 12 (May 6, 2021), http://tinyurl.com/3u2cynya (emphasis added).

The Hon. William H. Orrick
November 19, 2024
Page 4

were inconsistent as Kraken suggests, it is this Court's application of *Howey* to the "totality of circumstances" of the sales of the Kraken-Traded Securities that controls the claims at issue here, not the SEC's analyses of crypto assets unnamed in this litigation. Second, Kraken repeatedly misrepresents the third prong of *Howey* to support its requests: it is an investor's reasonable expectation of profits to be derived from the efforts of others that is relevant under *Howey*, not whether an investor had a reasonable expectation that she was purchasing an investment contract. Nor are the SEC's own actions relevant to that question—it is the action of the promoters, not how the SEC internally thought of the token, that gives them their character in commerce. Third, fair notice simply requires an objective review of the relevant statues, not internal SEC deliberations. Therefore, none of the documents Kraken seeks relate to Kraken's fair notice defense. *See* SEC's Mot. for Judgment on the Pleadings, ECF No. 103. Indeed, dismissing Kraken's meritless fair notice defense would render Kraken's relevancy argument moot. *Id.* This Court should decide that motion first. Finally, if the documents Kraken seeks were relevant at all, this relevance would only be marginal and tenuous, and the massive effort necessary to search across the Commission for these documents would be disproportionate to the needs of this case, especially because many, if not most, of the SEC's internal documents would be privileged.

***Kraken seeks documents unrelated to this Court's Howey analysis***. Kraken bears the burden to show how documents unrelated to the 11 Kraken-Traded Securities are relevant to the Court's application of *Howey* to those Kraken-Traded Securities. *Lineberry*, 2024 WL 4707986, at *2. Over Kraken's objections, this Court has already construed *Howey* and has described generally what facts matter under *Howey*: "[w]hat counts is the totality of the circumstances surrounding a sale, trade, or exchange, and the expectations of the investor." *SEC v. Payward, Inc.*, 2024 WL 4511499, at *9-10 (N.D. Cal. Aug. 23, 2024) (cleaned up). Internal SEC documents about Bitcoin and Ether cannot inform this analysis. Nor would the SEC's employee trading policies, deliberations unrelated to the Kraken-Traded Securities, or drafts of speeches.[5]

Nonetheless, Kraken vaguely suggests that the SEC might have used an inconsistent approach in analyzing other crypto assets, which might help it defend the action here. But the SEC's internal analyses of crypto assets outside of this litigation have no bearing on how this Court might apply *Howey* to the facts relevant to the Kraken-Traded Securities. *Cf. SEC v. Kik Interactive*, 19-cv-5244, ECF No. 36 (S.D.N.Y. Oct. 29, 2019) ("deliberations within an agency sheds no light on the application of the statute"). At summary judgment, this Court will apply *Howey*, as it has already construed it, to the evidence presented. The SEC's internal *Howey* analyses are not relevant. Otherwise, the SEC could prove its case by submitting internal memos opining that the Kraken-Traded Securities were sold, traded, or exchanged as securities.

Kraken is reduced to pointing to an out-of-circuit magistrate judge's ruling, urging this Court to apply that ruling to a larger set of documents despite the absence of a reasoned opinion articulating how documents unrelated to the crypto assets at issue could be used in a *Howey* analysis. Indeed, the parties' subsequent summary judgment filings in that case proved the weakness of that ruling. When the *Ripple* defendants presented their arguments and relevant evidence to the district court at summary judgment, they **did not** include in their application of

---

[5] As the SEC informed Kraken, some of these policies are now public. *See, e.g., Ripple*, ECF No. 831-66. Even with the documents in hand, Kraken has not articulated how these policies are relevant to *Howey* or even how the internal policies contradict the SEC's position that crypto assets can be offered and sold as investment contracts.

The Hon. William H. Orrick
November 19, 2024
Page 5

*Howey* any of the documents the magistrate judge ordered produced. *Ripple*, ECF Nos. 825, 828, 832. In support of their argument that sales of XRP did not satisfy *Howey*, the *Ripple* defendants did not cite to Bitcoin or Ether documents produced by the SEC, the SEC's internal trading policies, or documents concerning the William Hinman speech. Unsurprisingly, the court in *Ripple* in deciding the summary judgment motions likewise did not rely upon such documents when applying *Howey*. *See SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308 (S.D.N.Y. 2023).[6]

**Kraken incorrectly describes Howey's third prong to support its relevance claims**. Kraken argues that the materials sought are relevant to a purchaser's "reasonable expectations" that an investment does or does not constitute an "investment contract." However, the third prong of *Howey* is about a purchaser's "expectation of profits produced by the efforts of others." A purchaser's expectation as to whether an investment constitutes an investment contract is not part of *Howey* at all. Once again, Kraken is trying to add additional elements to burden and constrain *Howey*. Nor can the Commission create those expectations, as Kraken argues. It is the promoters that determine the nature of an asset in commerce, not the SEC's internal policies, deliberations, or approaches. Similarly, Kraken misreads *Marine Bank v. Weaver*, 455 U.S. 551 (1982). *Marine Bank* does not attempt to convert *Howey* into a subjective test proven by the private views of third parties as to unrelated offerings. The Court in *Marine Bank* applied *Howey* by *only* analyzing the specific facts of the transactions at issue and applying legal precedent. *Id.* at 559-60. This Court should take the same approach here.

**Kraken is incorrect about the scope of its flawed fair notice defense**. Fair notice is limited to a review of the underlying statute, not the SEC's interpretation of the statute. "Whether a provision is vague for lack of fair notice is an objective inquiry." *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019). The inquiry hinges on the "statute itself and the other pertinent law." *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5 (1964). Whether "investment contract" provides fair notice does not hinge on SEC staff members' internal analyses of Bitcoin, Ether, or the Exchange Act more broadly. *See Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015) (finding "whether the government applied or interpreted [the statute] consistently" does not bear on whether the statute was unconstitutionally vague); *United States v. Coscia*, 866 F.3d 782, 792-93 (7th Cir. 2017) ("agency inaction . . . is irrelevant.").

None of the courts that have considered whether "investment contract" provides fair notice have relied upon the types of internal SEC documents that Kraken has requested. Accordingly, courts have routinely rejected discovery requests like Kraken's. *See, e.g.*, *SEC v. LBRY, Inc.,* 21 Civ. 260, ECF No. 50 (D.N.H.), Tr. at 16, 28-29 (denying discovery concerning Hinman, in part, because what an SEC official "think[s] the law is," is not entitled to any deference, and thus there was no "potential relevance" to "what drove [the official] to make [a] speech … [or] what his internal thought process was."); *SEC v. Kik Interactive*, 19-cv-5244, ECF No. 30 (S.D.N.Y. Oct. 29, 2019) (denying discovery into SEC's internal analysis and communications with third-parties); *SEC v. Terraform*, 23-cv-1346 (S.D.N.Y. July 7, 2023) (minute order denying discovery related to SEC speeches). This Court should do the same here.

---

[6] Kraken also points to a transcript from *Coinbase* to support its argument that Bitcoin and Ether are relevant to this Court's application of *Howey*. That issue, however, was not before the Coinbase court. Coinbase did not seek and did not obtain documents about Bitcoin and Ether. *Coinbase*, ECF No. 161.

The Hon. William H. Orrick
November 19, 2024
Page 6

## **FILER'S ATTESTATION**

I, Matthew C. Solomon, am the ECF User whose ID and password are being used to file

this joint statement.  In compliance with Civil Local Rule 5-1(i), I hereby attest that concurrence

in the filing of this document has been obtained from each of the other signatories.


By: */s/ Matthew C. Solomon*
Matthew C. Solomon