UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PAYWARD, INC., *et al.*,<br><br>Defendants. | Case No. 23-cv-06003-WHO (RMI)<br><br>**ORDER RE: FIRST DISCOVERY DISPUTE LETTER BRIEF**<br><br>Re: Dkt. No. 108 |

Now pending before the court is a jointly-filed discovery dispute letter brief through which Defendants seek to compel the production of documents and information falling into the following categories: those concerning Bitcoin and Ether; those concerning Plaintiff's public statements and testimony regarding digital assets; and those concerning Plaintiff's internal trading policies on digital assets. *See* Ltr. Br. (dkt. 108) at 1. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. For the reasons stated below, Defendants' request to compel the information they seek is denied.

In this case, Plaintiff, the U.S. Securities and Exchange Commission (the "SEC"), brought an enforcement action pursuant to the provisions of Section 21(d) of the Exchange Act of 1934 (15 U.S.C. § 78u(d)) against Defendants (hereafter collectively referred to as "Kraken") – the owners and operators of an online trading platform through which customers can buy and sell crypto assets, many of which the SEC alleges to constitute the basis of investment contracts that are covered under U.S. securities law. *See* Compl. (dkt. 1) at 2, 4. The SEC alleges that Kraken, without registering with the SEC in any capacity, has simultaneously acted as a broker, dealer, exchange, and clearing agency with respect to certain crypto asset securities; and, by doing so, the

1  SEC contends that Kraken has created risk for investors and taken in billions of dollars in fees and
2  trading revenue from investors without adhering to or even recognizing the requirements of the
3  U.S. securities laws that are designed to protect those investors. *Id*. at 1, 5.

4  At the heart of this case is the SEC's contention that "[b]y operating a platform on which
5  crypto assets are offered and sold as investment contracts, Kraken's operations place it squarely
6  within the purview of U.S. securities laws." *Id*. at 3. As set forth in the Complaint, investment
7  contracts are instruments or vehicles through which someone invests money in a common
8  enterprise and reasonably expects profits or returns derived from the entrepreneurial or managerial
9  efforts of others. *Id*. at 5-6. As to what does, or does not, constitute an investment contract in this
10 context, the SEC submits that "courts have found novel or unique investment vehicles to be
11 investment contracts, including those involving orange groves, animal breeding programs, cattle
12 embryos, mobile phones, enterprises that exist only on the internet, and crypto assets." *Id*. at 6.

13 Further, the SEC adds that in order "[t]o protect investors and fulfill the purposes of the
14 Exchange Act, Congress imposed registration and disclosure obligations on certain defined
15 participants in the national securities markets, including but not limited to broker-dealers,
16 exchanges, and clearing agencies [and] [t]he Exchange Act empowers the SEC to write rules to,
17 among other things, protect investors who use the services of those participants and provide for
18 stability of the nation's securities markets." *Id*. At bottom, the SEC submits that its claims in this
19 action turn on a single question: whether the 11 crypto assets identified in the Complaint were
20 offered and sold as investment contracts under the Exchange Act and the Supreme Court's
21 decision in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). *See* Ltr. Br. (dkt. 108) at 5. The gist of
22 the currently-pending discovery dispute centers, in large part, on the fact that Kraken seeks to take
23 discovery as to Bitcoin and Ether (which are not included in the 11 Kraken-Traded Securities at
24 the heart of this action), as well as other documents, that the SEC contends are unrelated to the
25 court's analysis under *Howey*. *See id*. at 4-5, 6-7.

26 An application of the *Howey* standard was initially understood to mean that "an investment
27 contract for purposes of the Securities Act means a contract, transaction or scheme whereby a
28 person invests his [or her] money in a common enterprise and is led to expect profits *solely* from

1  the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise
2  are evidenced by formal certificates or by nominal interests in the physical assets employed in the
3  enterprise." *Howey*, 328 U.S. at 298-299 (emphasis added). Subsequently, however, in *Hocking v.*
4  *Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989) (*en banc*), *cert. denied*, 494 U.S. 1078 (1990), it was
5  stated that "[w]hile *Howey*'s third prong demanded an expectation of profits 'solely' from the
6  efforts of the promoter or a third party, we have dropped the term 'solely' and instead require that
7  the efforts made by those other than the investor are the undeniably significant ones, those
8  essential managerial efforts which affect the failure or success of the enterprise." *Id*. (quoting *SEC*
9  *v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir. 1973) (internal quotation marks
10 omitted) ("Strict interpretation of the requirement that profits to be earned must come 'solely'
11 from the efforts of others has been subject to criticism. [] Adherence to such an interpretation
12 could result in a mechanical, unduly restrictive view of what is and what is not an investment
13 contract. It would be easy to evade by adding a requirement that the buyer contribute a modicum
14 of effort.") (citations omitted). Accordingly, the "distilled" version of *Howey*'s three-part test
15 simply requires: (1) an investment of money (2) in a common enterprise (3) with an expectation of
16 profits produced by the efforts of others. *See e.g.*, *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th
17 Cir. 2009). The third element of this standard – the expectation of profits produced by the efforts
18 of others – obviously involves two distinct notions: (1) whether a transaction involves any
19 expectation of profit; and, (2) whether those expected profits would be the product of the efforts of
20 a person other than the investor. *Id*. For present purposes, it is also important to note that:

> The SEC alleges that Kraken is acting as an unregistered broker, dealer, and exchange by facilitating transactions in investment contracts without registering with the SEC. Its allegations concern crypto assets that are not issued by Kraken but by other cryptocurrency networks; the third party-issued tokens then form the basis of transactions on Kraken. As discussed, the fact that the transactions in question occurred on a secondary market does not by itself prevent those transactions from involving investment contracts, it simply means that the *Howey* test must be applied to the transactions <u>as they occurred on the secondary market</u>.

27 *See* Order Denying Motion to Dismiss (dkt. 90) at 19 (emphasis added).
28         When moving to compel discovery, the moving party has the burden of demonstrating

3

relevance. *See e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). As to relevance, the Federal Rules tether relevance "to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). Thus, in the context of a motion to compel, the moving party bears the burden of showing why the other party's discovery responses or objections are inadequate or unjustified. *See e.g.*, *AngioScore, Inc. v. TriReme Med., Inc.*, 2014 U.S. Dist. LEXIS 173700, *8 (N.D. Cal. Dec. 16, 2014). While it is true that the relevance standard is not very demanding (*see* Fed. R. Evid. 401, "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"), Rule 401 does require that such evidence must still "logically advance a material aspect of the party's case." *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (internal quotation marks and citation omitted).

Beyond that, in order to succeed on a motion to compel, a moving party also bears the burden to show that it has satisfied proportionality and other requirements of Rule 26. *See Rodriguez v. Barrita, Inc.*, No. 09-04057 RS-PSG, 2011 U.S. Dist. LEXIS 134079, at *4 (N.D. Cal. Nov. 21, 2011). In light of this, courts are required to limit discovery if its burden or expense outweighs its likely benefit – the balance between burden and benefit is the essence of the proportionality inquiry, an oft-ignored or overlooked discovery principle. *See*, *e.g.*, *Om Recs., LLC v. OM Developpement, SAS*, 2024 U.S. Dist. LEXIS 160866, *10 (N.D. Cal. Sept. 6, 2024); *see also Mediatek, Inc. v. Freescale Semiconductor, Inc.*, 2013 U.S. Dist. LEXIS 122911, *18-19 (N.D. Cal. Aug. 28, 2013).

Given that background, the court will turn to the three categories of discovery at issue here. As to the first, Kraken seeks an order compelling the SEC to produce "documents related to Bitcoin and Ether." *See* Ltr. Br. (dkt. 108) at 3. As mentioned above, the essence of the SEC's case against Kraken is that Kraken is allegedly acting as an unregistered broker, dealer, and exchange by facilitating transactions that have occurred on a secondary market as to 11 digital assets named in the Complaint – and, that these transactions meet the above-described test for investment contracts. Kraken does not dispute the fact that Bitcoin and Ether are not included in the 11 digital assets charged in the Complaint. *See id*. Instead, Kraken contends that it is entitled to receive

discovery as to Bitcoin and Ether (through RFPs 7, 9, 11, 12, 31, & 32) because "[t]hey trade on Kraken's platform just like the 11 digital assets named in the complaint and have *many* of the same characteristics the SEC has alleged and argued make sales in the 11 named digital assets 'investment contracts.'" *Id*. (emphasis added). First, it should be noted that Kraken does not really attempt to draw true equivalency between the unnamed assets (Bitcoin and Ether) and the 11 named digital assets when it vaguely states that they share *many* characteristics in common, because there is some daylight between "many" and "all." Second, Kraken's argument here mistakenly focuses on some fraction of the inherent characteristics that Bitcoin and Ether may have in common with the 11 digital assets named in the Complaint by overlooking the fact – as already noted by Judge Orrick – that there is an important distinction between the digital asset, itself, and the offers to sell them. *See* Order Denying Motion to Dismiss (dkt. 90) at 19. As Judge Orrick noted, "[t]he distinction is valuable . . . I do not understand the SEC to be alleging that the individual cryptocurrency tokens in which Kraken enables transactions are themselves securities. The meat of the SEC's pleadings alleges that during their initial offerings and throughout subsequent transactions on Kraken, those assets were offered as, or sold as, investment contracts." *Id*. (citing Compl. At ¶¶ 62-64). Thus, even if Bitcoin and Ether shared all (rather than *many*) inherent characteristics in common with the 11 digital assets named in the Complaint, it is not the crypto assets themselves that come within the definition of an investment contract, but rather the circumstances surrounding their sale; or, as Judge Orrick put it: "[o]range groves are no more securities than cryptocurrency tokens are. But the contracts and expectations surrounding the sale of both may form an investment contract, bringing them within the purview of the Act." *Id*. at 19-20.

Thus, Kraken's arguments that attempt to draw parallels between Bitcoin and Ether, on the one hand, and the 11 digital assets named in the Complaint, on the other hand, are unpersuasive. By way of example, Kraken notes that the SEC's case places some reliance on the alleged "initial" fundraising by the "issuers" of the named 11 digital assets to support its "investment contract" theory (citing Compl. at ¶ 243), while adding that "Ether involved initial 'fundraising' too." *See* Ltr. Br. (dkt. 108) at 3. Kraken adds that "[t]he SEC also claims that the alleged issuers touted

5

their tokens' 'ecosystems' and the steps they would take to grow them" (citing Compl. at ¶ 252), while adding that "[t]he Ethereum Foundation has done the same with Ether." *Id*. The upshot of these assertions, according to Kraken, is that "[t]he requested discovery [into Bitcoin and Ether] could demonstrate that the digital assets [themselves] are related—either because the SEC itself acknowledged they have similar characteristics or because SEC documents reflect such market perceptions." *Id*. But, even if one were to assume, *arguendo*, that discovery into Bitcoin and Ether transactions *by Kraken* were to show that they could have been, but were not, included in the list of the 11 digital assets at the heart of this case, it is far from clear how that might "logically advance a material aspect of the [Kraken's] case." *See Estate of Barabin*, 740 F.3d at 463. Even assuming a modicum of relevance, which is difficult under the circumstances, Kraken addresses the issue of proportionality simply by stating that the documents it seeks are proportional to the needs of the case, and by asserting that "[t]he SEC has not articulated any reason why these requests would impose a disproportionate burden other than its say-so." *See* Ltr. Br. (dkt. 108) at 5. As to this line of argument, the court finds that Kraken has failed to carry its burden of establishing the relevance of the discovery it seeks regarding Bitcoin and Ether – and, even if a thin logical connection could be drawn between this line of discovery and the advancement of a material aspect of Kraken's case (which, again, is not the case), the court finds that Kraken has failed to present any argument that would tip the proportionality balance in its favor because the court finds that any benefit Kraken could adduce in this case from receiving this discovery would be grossly outweighed by the SEC's burden in producing it.

Kraken also submits that, at least, discovery as to "[t]he SEC's communications regarding Bitcoin and Ether are also relevant to Kraken's fair notice defense, including whether the SEC's actions and statements have sown 'substantial uncertainty' regarding the application of the securities laws to digital asset transactions." *See* Ltr. Br. (dkt. 108) at 4. Here, Kraken expends little, if any, effort in explaining how its fair notice defense <u>as to the 11 named digital assets</u> might be aided or bolstered by discovery regarding the SEC's communications regarding Bitcoin and Ether. *See id*. In other words, instead of making a clear case as to *how* discovery into the SEC's communications regarding Bitcoin and Ether would bolster or otherwise aid Kraken's fair notice

1  defense, Kraken expends all of its ink on quibbling with the applicability of the cases cited by the
2  SEC in opposition to Kraken's effort to compel this discovery on this basis. This leaves the court
3  with only Kraken's declarative statement that this discovery is relevant to its fair notice defense
4  without any substantial explanation as to *how* or *why*. While citing the SEC's involvement in other
5  cases, Kraken states that ". . . since these cases, the SEC has advanced new and shifting theories –
6  including that a digital asset 'embodies' an investment contract – which Kraken is entitled to rebut
7  through discovery about Bitcoin and Ether." *Id*. However, this assertion is inconsistent with Judge
8  Orrick's description to the effect that "[t]he meat of the SEC's pleadings" in *this* case alleges that
9  during their initial offerings and throughout subsequent transactions on Kraken, the 11 digital
10 assets at issue "were offered as, or sold as, investment contracts." *See* Order Denying Motion to
11 Dismiss (dkt. 90) at 19. Kraken has not advanced a cogent argument as to how discovery into the
12 SEC's communications regarding Bitcoin and Ether could advance a fair notice defense in *this*
13 case.

14     To be clear, the undersigned is not suggesting that it would be impossible for Kraken to
15 ever put forth any argument that this sort of discovery could be relevant to a constitutional fair
16 notice defense; that is, a defense through which Kraken might plausibly assert that one or another
17 applicable regulation might be impermissibly vague – or, at least that it should be considered as
18 such in light of the lack of guidance issued by the SEC. Indeed, in the abstract, the undersigned
19 could conceive of various circumstances where discovery practice, along the lines suggest by
20 Kraken, may lead to the unveiling of admissible information relevant to a fair notice defense in
21 this context. *See*, *e.g.*, *Ohio Cast Prods., Inc. v. Occupational Safety & Health Rev. Comm'n*, 246
22 F.3d 791, 799 (6th Cir. 2001) (industry practice may be considered in ruling on fair notice
23 defense); *see also General Elec. Co. v. EPA*, 53 F.3d 1324, 1332, (D.C. Cir. 1995) (confusion and
24 inconsistent interpretations within an agency may support a fair notice defense). Instead, the court
25 only holds today that Kraken has failed to advance such an argument in the Letter Brief currently
26 before the court (dkt. 108) – to any degree of specificity – as to *how* exactly the discovery it seeks,
27 as phrased, would advance a fair notice defense in *this* case. If Kraken is later able to clearly
28 articulate such a basis, the court will entertain that argument at that time. Accordingly, for the

1  reasons stated above, Kraken's request to compel the SEC to produce the requested documents
2  and information regarding Bitcoin and Ether (RFPs 7, 9, 11, 12, 31, and 32) is **DENIED**.

3        The second category of disputed discovery sought by Kraken pertains to "[d[ocuments
4  related to the SEC's policies and guidance governing its employees' ownership and trading of
5  digital assets" (as set forth in RFPs 49 and 51), which Kraken suggests "are also relevant to
6  Kraken's *Howey* and fair notice defenses." *See id*. at 4. Kraken supports its entitlement to this line
7  of discovery by asking the following rhetorical question: "If the SEC allowed trading in digital
8  assets by its employees as consistent with the securities laws during the very time that it asserts
9  Kraken had 'fair notice,' then how could it have been reasonable for a purchaser to believe she
10 was entering into an investment contract?" *Id*. Through RFP 49, Kraken seeks "[a]ll SEC policies
11 governing SEC employees' ownership, trading in, or purchase or sale of, Digital Assets and/or
12 Virtual Currencies, including all changes and updates to those policies." *See* Ltr. Br., Exh. A (dkt.
13 108-1) at 40. Through RFP 51, Kraken seeks "[a]ll Documents or Communications Concerning
14 any policy, guidance, clearance or other permission or restriction given to current or former SEC
15 Commissioners, staff members, officers or employees Concerning ownership or trading in Digital
16 Assets, *including but not limited to* ADA, ALGO, ATOM, FIL, FLOW, ICP, MANA, MATIC,
17 NEAR, OMG, and/or SOL by such Person or their family members, including, but not limited to
18 general SEC policies and Communications with individuals." *Id*. at 42. As is relevant to the
19 analysis of RFP 49, nowhere in the definitions sections of its RFPs does Kraken limit the
20 definition of "Digital Assets" to the 11 digital assets involved in this case. As is relevant to the
21 analysis of RFP 51, Kraken's inclusion of the phrase, "included, but not limited to," renders RFP
22 51 impermissibly broad. In short, assuming *arguendo* that Kraken's rhetorical question establishes
23 the relevance of the discovery it seeks by logically tethering the discovery it seeks to its fair notice
24 defense[1], there remains the problem that Kraken's failure to limit its discovery request to the 11
25 digital assets at the heart of this case (that is, the 11 assets involved in this case, as handled by
26 Kraken on its platform) renders the request – as asserted by the SEC – irrelevant, overbroad, and
27
28

---

[1] To be clear, the court does not make that determination today because it is not necessary to do so.

1   not proportional to the needs of the case. Accordingly, Kraken's request to compel the production
2   of documents and information pursuant to RFPs 49 and 51 is **DENIED**.

3   The third, and final, category of disputed discovery currently sought by Kraken pertains to
4   certain evidence related to various public statements rendered by the SEC pertaining to digital
5   asset regulation (as set forth in RFPs 15 and 77-84). *Id*. at 5. Specifically, RFP 15 seeks all
6   documents concerning a June 14, 2018, statement made by a former SEC division director
7   regarding the status of Bitcoin and Ether under federal securities laws. *See* Ltr. Br., Exh. A (dkt.
8   108-1) at 17. Aside from its general arguments in favor of taking discovery as to Bitcoin and
9   Ether, Kraken does not expend any independent effort to justify its request to compel information
10  pursuant to RFP 15. *See* Ltr. Br. (dkt. 108) at 5. For the reasons stated herein, the court finds that
11  Kraken has failed to carry its burden in seeking discovery regarding Bitcoin and Ether in the
12  context of the claims and defenses involved in *this* case. Consequently, the request to compel
13  discovery pursuant to RFP 15 is **DENIED**.

14  As to the remainder of the RFPs encompassed in this final category of disputed discovery,
15  Kraken submits that "[i]n 2021, Chair Gensler testified to Congress that 'exchanges trading in
16  these crypto assets do not have a regulatory framework [] at the SEC.'" *Id*. (citation omitted). As
17  to this statement, without really specifying which crypto assets were being discussed in that
18  speech in its portion of the Letter Brief, Kraken submits that "[d]iscovery into the documents and
19  communications underlying the Chair's testimony, and the basis for his assertion, is relevant to
20  whether and how the Exchange Act applies to Kraken." *Id*. Kraken also seeks "documents
21  concerning the June 14, 2018[,] speech by former SEC Director of the Division of Corporation
22  Finance William Hinman" which it contends to bear on "issues that are relevant (Bitcoin and
23  Ether's status under the securities laws) and in serious dispute (how *Howey* applies to secondary
24  trading)." *Id*. In cursory fashion, and without any explanation as to the usefulness of the
25  information it seeks to *this* case, Kraken simply mentions that, "[a]s in *Ripple*, discovery into the
26  bases for this assertions is relevant to *Howey*. This discovery is also relevant to fair notice, as it
27  may underscore the widespread uncertainty among market participants about the regulatory status
28  of digital asset transactions and secondary trading on platforms." *Id*. Having carefully reviewed

9

RFPs 77-84 (*see* Ltr. Br., Exh. A (dkt. 108-1) at 58-62), the court finds them all to be phrased too broadly – such that they go too far beyond being logically limited or tethered to the claims and defenses involved in <u>this</u> case. *See e.g., id*. at 61 (RFP 82, seeking "<u>All</u> Documents and Communications Concerning meetings between any SEC Commissioner and <u>any</u> founders, CEOs, Board members, officers, or employees of <u>any</u> Digital Asset company, nonprofit, or foundation."). It is therefore not surprising that Kraken's argument in support of compelling the SEC to produce this broad swath of information – most of which would have no bearing on any claim or defense involved in this case – consists of little more than a few indeterminate, vague, and conclusory assertions as to the relevance of the vast constellation of information that would be captured by the requests. *See*, *e.g.*, Ltr. Br. (dkt. 108) at 5 ("This discovery is also relevant to fair notice, as it may underscore the widespread uncertainty among market participants about the regulatory status of digital asset transactions and secondary trading on platforms."). As the undersigned sees it, it is far from clear what use Kraken could make of discovery that might reveal "widespread uncertainty among market participants" pertaining to assets and transactions and platforms that are not at issue in this case. Such information would neither call into question any of the SEC's claims here, nor bolster Kraken's defenses thereto. In short, because the discovery sought here by Kraken is phrased so broadly as to capture broad swaths of irrelevant and useless information, and because Kraken has failed to meet its burdens as to relevance and proportionality, Kraken's request to compel information pursuant to this third category of disputed discovery (as set forth in RFPs 77-84) is likewise **DENIED**.

**IT IS SO ORDERED.**

Dated: December 16, 2024

_____
ROBERT M. ILLMAN
United States Magistrate Judge

10