```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN FRANCISCO DIVISION

 4

 5    SECURITIES AND EXCHANGE          )  C-23-06003 WHO
      COMMISSION,                      )
 6                                     )  SAN FRANCISCO, CALIFORNIA
                          PLAINTIFF,   )
 7                                     )  JANUARY 8, 2025
                  VS.                  )
 8                                     )  PAGES 1-27
      PAYWARD, INC., AND PAYWARD       )
 9    VENTURES, INC.,                  )
                                       )
10                        DEFENDANTS.  )
      _____  )
11

12

13                 TRANSCRIPT OF ZOOM PROCEEDINGS
              BEFORE THE HONORABLE WILLIAM H. ORRICK
14                 UNITED STATES DISTRICT JUDGE

15

16    A P P E A R A N C E S:

17    FOR THE PLAINTIFF:     U.S. SECURITIES AND EXCHANGE COMMISSION
                             BY:  PETER B. MOORES
18                           33 ARCH STREET, 24TH FLOOR
                             BOSTON, MASSACHUSETTS  02110
19
                             BY:  ALEC JOHNSON
20                           444 SOUTH FLOWER STREET, SUITE 900
                             LOS ANGELES, CALIFORNIA  90071
21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2       APPEARANCES (CONTINUED)

3


4       FOR THE DEFENDANTS:      CLEARY GOTTLIEB STEEN & HAMILTON
                                 BY:  SAMUEL LEVANDER
5                                ONE LIBERTY PLAZA
                                 NEW YORK, NEW YORK  10006
6
                                 BY:  MATTHEW C. SOLOMON
7                                2112 PENNSYLVANIA AVENUE
                                 WASHINGTON, D.C.  20037
8
                                 WAYMAKER LLP
9                                BY:  BRIAN KLEIN
                                 515 SOUTH FLOWER STREET, SUITE 3500
10                               LOS ANGELES, CALIFORNIA  90071

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      SAN FRANCISCO, CALIFORNIA               JANUARY 8, 2025

 2                     P R O C E E D I N G S

 3         (ZOOM PROCEEDINGS CONVENED AT 2:00 P.M.)

 4             THE CLERK:  ALL RIGHT.  WE WILL GET UNDERWAY IN CASE

 5      NUMBER 23-6003, SECURITIES AND EXCHANGE COMMISSION VERSUS

 6      PAYWARD, INCORPORATED.

 7             COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCE FOR THE

 8      RECORD.

 9             MR. MOORES:  THIS IS PETER MOORES ON BEHALF OF THE

10      SECURITIES AND EXCHANGE COMMISSION.

11             MR. JOHNSON:  THIS IS ALEC JOHNSON ON BEHALF OF THE

12      SECURITIES AND EXCHANGE COMMISSION.

13             MR. LEVANDER:  SAMUEL LEVANDER, CLEARLY GOTTLIEB

14      STEEN & HAMILTON FOR DEFENDANTS PAYWARD INC. AND

15      PAYWARD VENTURES, INC.

16             MR. SOLOMON:  AND MATTHEW SOLOMON FROM CLEARY

17      GOTTLIEB ON BEHALF OF DEFENDANTS PAYWARD INC. AND

18      PAYWARD VENTURES, INC.

19             MR. KLEIN:  AND BRIAN KLEIN ON BEHALF OF THE SAME

20      DEFENDANTS.

21             THE COURT:  ALL RIGHT.  GOOD AFTERNOON TO EVERYBODY.

22         SO LET ME TELL YOU WHAT I'M THINKING.  I THINK I DO HAVE

23      DISCRETION TO ADDRESS THE SEC'S MOTION FOR JUDGMENT ON THE

24      PLEADINGS ON THE AFFIRMATIVE DEFENSES.

25             AND THESE ARE UNUSUAL AFFIRMATIVE DEFENSES.  I THINK THESE
```

1    ISSUES ARE USUALLY BROUGHT AS PART OF BROADER ARGUMENTS.

2         BUT WITH RESPECT TO THE MAJOR QUESTION ISSUE, I THINK I

3    HAVE DEALT WITH THAT.  THAT DOESN'T MEAN THAT, TWO YEARS DOWN

4    THE ROAD, IF THE SITUATION WARRANTS IT BECAUSE THE CONTEXT HAS

5    CHANGED OR THERE'S SOME REAL REASON THAT I WOULD BE -- YOU

6    THINK I'D BE LIKELY TO CHANGE MY MIND, YOU CAN BRING IT UP

7    AGAIN AS A MOTION TO RECONSIDER.

8         BUT I THINK AT THIS POINT, THE AFFIRMATIVE DEFENSE IS OUT

9    AND DETERMINED.

10        WITH RESPECT TO THE NINTH AND TENTH AFFIRMATIVE DEFENSES,

11   I DON'T THINK THE JUDGMENT ON THE PLEADINGS MOTION IS THE RIGHT

12   VEHICLE FOR THIS.  I DO THINK THAT THE DEFENDANT IS ENTITLED TO

13   PRESENT THEIR BEST CASE ON THE ISSUES.

14        I'M NOT CONVINCED THAT THEY HAVEN'T ALREADY DONE THAT, AND

15   I'LL BE INTERESTED IN HEARING FROM THE DEFENDANTS ON THAT.

16        I'M NOT GOING TO ALLOW THE DEFENDANTS TO RUMMAGE AROUND IN

17   THE INTERNAL DELIBERATIONS OF THE SEC ON WHY IT'S DONE WHAT

18   IT'S DONE.

19        BUT YOU DO HAVE THE THINGS THAT ARE OUT IN THE PUBLIC,

20   YOU'VE SOUGHT JUDICIAL NOTICE, AND I THINK JUDICIAL NOTICE

21   WOULD WORK FOR THINGS IN THE PUBLIC.

22        AND SO THE QUESTION IS, HAVE -- IS THERE MORE THAT YOU

23   THINK IS OUT THERE, OR WOULD YOU LIKE TO PRESENT THE ISSUE IN A

24   DIFFERENT WAY THAT PRESERVES -- THAT DOES THE BEST JOB FOR YOU,

25   AND IN THE OFF CHANCE THAT IT'S NOT SUCCESSFUL, PRESERVE ANY

```
1      ISSUE FOR APPEAL?

2           SO THAT'S REALLY WHAT I'M THINKING.  NO DISCOVERY, BUT

3      ALLOWING THE AFFIRMATIVE DEFENSES TO REMAIN.

4           SO LET ME HEAR FROM THE DEFENDANTS FIRST.

5           MR. LEVANDER:  SURE.  THANK YOU, YOUR HONOR.  AGAIN,

6      SAM LEVANDER FROM CLEARY ON BEHALF OF THE DEFENDANTS.  I'LL

7      TAKE ON THE ISSUES IN THE ORDER THAT YOU RAISED THEM.

8           SO I GUESS FIRST, VERY QUICKLY, ON THE QUESTION OF

9      TIMELINESS, WE DON'T DISAGREE THAT YOUR HONOR HAS THE

10     DISCRETION UNDER 12(F).

11          HOWEVER, THE SEC HASN'T PRESENTED HERE ANY GOOD REASON

12     WHY, WHY THAT DISCRETION SHOULD BE AFFORDED TO IT,

13     UNDERSTANDING THAT OF COURSE THE COURT HAS DISCRETION AND

14     SHOULD EXERCISE THAT DISCRETION AS IT SEES FIT.

15          BUT THE SEC HASN'T EXCUSED WHY THIS MOTION WAS FILED AFTER

16     THE 21 DAY DEADLINE.

17          I'M HAPPY TO LEAVE THAT POINT THERE.

18          THE COURT:  I WOULD LEAVE THAT ALONE.  I USED TO

19     PRACTICE LAW, SO I REMEMBER FILING MOTIONS FOR JUDGMENT ON THE

20     PLEADINGS WELL AFTER THE TIME THAT MY LEARNED COLLEAGUES

21     THOUGHT WAS APPROPRIATE UNDER THE RULES.

22          BUT JUDGMENT ON THE PLEADINGS ALLOWS YOU TO DO IT, SO GO

23     ON TO THE NEXT ONE.

24          MR. LEVANDER:  SURE.

25          SO THEN I'LL TURN TO MAJOR QUESTIONS, AND I THINK THERE
```

1    THE KEY, THE KEY POINT IS THAT WE CERTAINLY ACKNOWLEDGE THAT

2    YOUR HONOR HAS ADDRESSED THE MAJOR QUESTIONS DOCTRINE IN THE

3    MOTION TO DISMISS ORDER.

4        BUT AT THE MOTION TO DISMISS STAGE, WHAT -- THE COURT DID,

5    OF COURSE, WHAT THE STANDARD THERE REQUIRED, WHICH IS TO ACCEPT

6    ALL THE SEC'S PLEADED FACTS AS TRUE AND MAKE ALL INFERENCES IN

7    THE SEC'S FAVOR.

8        AND THERE THE COURT, RIGHT, THE COURT HELD THAT THE ANSWER

9    WAS THAT THIS WAS NOT SOMETHING THAT WAS SUBJECT TO THE MAJOR

10   QUESTIONS DOCTRINE.

11       HOWEVER, AT SUMMARY JUDGMENT, RIGHT, KRAKEN CAN RELY ON

12   DOCUMENTS FROM THE SEC AND FROM THIRD PARTIES, TESTIMONY AND

13   EXPERT DISCOVERY THAT SHOWS THAT THE FACTS ARE NOT AS THE SEC

14   ALLEGED THEM IN THEIR COMPLAINT.

15       AND AT THIS STAGE IN THIS MOTION, THE COURT NEEDS TO

16   MAKE -- NEEDS TO ACCEPT ALL OF KRAKEN'S PLEADED FACTS AS TRUE

17   AND MAKE ALL INFERENCES IN KRAKEN'S FAVOR.

18       SO JUST TO GIVE, TO GIVE ONE EXAMPLE, IN THE SUPREME

19   COURT'S DECISION IN BIDEN V. NEBRASKA, THE SUPREME COURT RELIED

20   ON A REPORT THAT SAID THAT THE PROPOSED STUDENT LOAN

21   FORGIVENESS PROGRAM WOULD COST TAXPAYERS AROUND $500 BILLION,

22   AND IN RELYING ON THAT REPORT, THE COURT -- THE COURT HELD THAT

23   THE PROGRAM HAD STAGGERING ECONOMIC AND POLITICAL SIGNIFICANCE.

24       AND SO SIMILARLY HERE, KRAKEN SHOULD HAVE THE OPPORTUNITY

25   TO DEVELOP EXPERT AND FACT EVIDENCE THAT SHOWS THAT THE DIGITAL

```
1    ASSET INDUSTRY AND THE SEC'S REGULATION OF IT HAVE ECONOMIC AND
2    POLITICAL SIGNIFICANCE.
3         SO THAT'S SOMETHING -- WE THINK THAT THE -- EVEN THOUGH
4    ACKNOWLEDGING THE IMPORT OF THE MOTION TO DISMISS DECISION,
5    THAT THE PROCEDURAL POSTURE IS DIFFERENT HERE AND THAT WE
6    SHOULD HAVE AN OPPORTUNITY TO DEVELOP THE RECORD FOR SUMMARY
7    JUDGMENT AND THAT THERE IS SOME POSSIBILITY IN TERMS OF FACTS
8    THAT COULD BE DEVELOPED THAT COULD SAVE THIS DEFENSE GOING
9    FORWARD AND ULTIMATELY REQUIRE A DIFFERENT RESULT THAN WHAT WAS
10   REACHED AT THE MOTION TO DISMISS STAGE.
11        THE COURT:  SO CAN'T YOU DO THE SAME THING THROUGH A
12    MOTION FOR RECONSIDERATION?
13        MY RULING ON THIS -- MY THINKING WAS BROADER THAN JUST
14   WHAT'S IN THE COMPLAINT, AND I TRIED TO EXPRESS THAT, I THINK,
15   IN THE ORDER.  IT MAY BE THAT YOU'VE GOT A -- THAT -- IT MAY BE
16   THAT THE SITUATIONS WILL HAVE CHANGED, THE CONTEXT WILL HAVE
17   CHANGED.  I IMAGINE THAT WE'RE GOING TO SEE A WHOLE LOT OF
18   CHANGE IN THIS INDUSTRY DURING THE TIME OF THIS CASE, AND I'M
19   NOT FORECLOSING THE POSSIBILITY OF BRINGING IT BACK BECAUSE I
20   THINK THE MAJOR QUESTIONS DOCTRINE IS SOMETHING THAT YOU ALSO
21   CAN RAISE AT ANY TIME, AND I'M NOT SURE THAT I THINK -- I GUESS
22   IT'S NICE TO HAVE RAISED IT AS AN AFFIRMATIVE DEFENSE, BUT I'M
23   NOT SURE THAT IT'S EVEN REQUIRED AS AN AFFIRMATIVE DEFENSE.  I
24   THINK IT'S JUST ONE OF THOSE EQUITABLE PRINCIPLES THAT CAN BE
25   ADDRESSED -- CAN BE RAISED AND ADDRESSED AT ANY TIME IN A CASE.
```

1          MR. LEVANDER:  SO CERTAINLY WE AGREE WITH YOUR HONOR

2     THAT WE SHOULD BE ABLE TO BRING IT -- TRY TO BRING IT BACK

3     IF -- YOU KNOW, ALLEGING THAT THE CIRCUMSTANCES HAVE CHANGED.

4          BUT I THINK IN TERMS OF -- IN TERMS OF AT THE DISCOVERY

5     STAGE, WE THINK IT'S IMPORTANT TO BE ABLE TO DEVELOP THE

6     FACTUAL RECORD TO SUPPORT, TO SUPPORT OUR ARGUMENT ON THE MAJOR

7     QUESTIONS DOCTRINE, AND THAT IT SHOULD BE SORT OF LIVE FOR

8     PURPOSES OF DISCOVERY.

9          THE COURT:  OKAY.  GO ON TO THE NEXT ARGUMENT.

10          MR. LEVANDER:  OKAY.

11     SO THEN AS TO FAIR NOTICE, SO THE NINTH AND TENTH

12     DEFENSES, SO WE AGREE WITH YOU THAT THIS IS NOT APPROPRIATE FOR

13     RESOLUTION ON A 12(C) -- ON A 12(C) MOTION AND THAT -- YEAH, SO

14     WE AGREE WITH THAT SORT OF HIGH LEVEL PRINCIPLE.

15          AND I THINK THAT THE KEY QUESTION THAT YOUR HONOR ASKS --

16     AND TELL ME IF I'VE GOT THIS INCORRECT -- WAS SORT OF, IS THERE

17     MORE SORT OF BEYOND SORT OF WHAT'S OUT THERE IN THE PUBLIC

18     RECORD ALREADY THAT WE THINK IS RELEVANT TO THIS DEFENSE?

19          AND THE ANSWER TO THAT QUESTION IS DEFINITELY YES.

20          SO ON THE QUESTION OF FAIR NOTICE, THERE CERTAINLY IS A

21     LOT THAT WE'VE POINTED OUT THAT WE'VE SOUGHT JUDICIAL NOTICE OF

22     FOR PURPOSES OF THIS MOTION THAT DOES COME FROM THE PUBLIC

23     RECORD.

24          HOWEVER, THERE DEFINITELY ARE DOCUMENTS THAT GO BEYOND THE

25     PUBLIC RECORD THAT WE THINK WOULD BE RELEVANT HERE.

1          SO, FOR EXAMPLE, THERE ARE FACTUAL DISPUTES IN THIS CASE

2     AROUND, FOR EXAMPLE, WHETHER A PATH TO REGISTRATION WAS

3     POSSIBLE FOR A DIGITAL ASSET TRADING PLATFORM LIKE OUR CLIENT.

4          WE SAY THAT IT WAS NOT POSSIBLE.  THE SEC'S POSITION IS

5     THAT THERE WAS A PATH TO REGISTRATION AND KRAKEN FAILED TO DO

6     SO.

7          AND ANOTHER EXAMPLE OF A DISPUTED FACT IN THIS CASE IS THE

8     CHARACTERIZATION OF WHEN CHAIR GENSLER TOLD CONGRESS AND

9     SENATOR WARREN THAT THERE WAS NO REGULATORY FRAMEWORK AT THE

10    TIME FOR DIGITAL ASSET TRADING PLATFORMS.

11         SO JUST LOOKING AT THOSE TWO FACTUAL QUESTIONS, FOR

12    EXAMPLE, THERE ARE A NUMBER OF DIFFERENT AVENUES OF DISCOVERY

13    FOR DOCUMENTS SORT OF OUTSIDE OF WHAT'S ALREADY IN THE PUBLIC

14    RECORD THAT WOULD BE RELEVANT TO THOSE QUESTIONS.

15         THE FIRST CATEGORY WOULD BE THE SEC'S COMMUNICATIONS WITH

16    KRAKEN'S COMPETITORS AND OTHER THIRD PARTIES ABOUT THE

17    REGULATION AND REGISTRATION OF DIGITAL ASSET TRADING PLATFORMS.

18         SO THESE ARE NOT INTERNAL COMMUNICATIONS.  I UNDERSTAND,

19    TO YOUR HONOR'S POINT, ABOUT NOT RUMMAGING AROUND SORT OF IN

20    DOCUMENTS THAT RAISE DELIBERATIVE PROCESS PRIVILEGE CONCERNS.

21         BUT ANY COMMUNICATION THAT THE SEC WAS HAVING WITH, FOR

22    EXAMPLE, ONE OF KRAKEN'S COMPETITORS OR OTHER THIRD PARTIES,

23    THOSE WOULD NOT BE SUBJECT TO ANY DELIBERATIVE PROCESS

24    PRIVILEGE, AND WE THINK THOSE WOULD BE CLEARLY DISCOVERABLE

25    DOCUMENTS, AND ALSO GO SORT OF TO THE HEART OF THE FAIR NOTICE

1    QUESTIONS IN THIS CASE.

2         THE SECOND CATEGORY WOULD BE THE SEC'S COMMUNICATIONS WITH

3    OTHER REGULATORS AND WITH ELECTED OFFICIALS ON THESE TOPICS.

4    WE HAVE SEEN THE LETTER TO SENATOR WARREN, FOR EXAMPLE.  WE

5    THINK THERE IS REASON TO BELIEVE THAT THERE HAVE BEEN OTHER

6    COMMUNICATIONS BETWEEN THE SEC AND OTHER AGENCIES AND ELECTED

7    OFFICIALS.  AND, AGAIN, THOSE WOULD NOT BE SUBJECT TO THE SAME

8    DELIBERATIVE PROCESS PRIVILEGE QUESTIONS AS SOMETHING THAT

9    WOULD BE PURELY INTERNAL WITHIN THE SEC

10        AND THEN I THINK THE THIRD CATEGORY, YOU KNOW, ULTIMATELY

11   WE DO THINK THAT THERE MAY BE AT LEAST SOME SUBSET OF THE SEC'S

12   INTERNAL COMMUNICATIONS THAT COULD BE SUBJECT TO DISCOVERY AND

13   THAT COULD CORROBORATE KRAKEN'S ARGUMENTS.  THAT'S AN ISSUE

14   THAT I THINK WE'D LIKE TO HAVE AN OPPORTUNITY TO BRIEF LATER

15   DOWN THE LINE AND TO EXPLAIN SORT OF WHY -- WHETHER THERE IS AT

16   LEAST SOME CATEGORY OF DOCUMENTS THAT ARE OUTSIDE THE

17   DELIBERATIVE -- THE SORT OF ARC OF DELIBERATIVE PROCESS

18   PRIVILEGE THAT YOUR HONOR HAS EXPRESSED CONCERNS ABOUT.

19        SO THOSE ARE SORT OF A FEW -- THAT'S A PREVIEW OF SORT OF

20   WHAT THE MORE WOULD BE BEYOND -- OBVIOUSLY THERE IS ALREADY,

21   THERE IS A SOMEWHAT DEVELOPED RECORD AS TO WHAT THE SEC PUBLIC

22   STATEMENTS HAVE BEEN ON THESE TOPICS, BUT THERE ARE OTHER

23   DOCUMENTS THAT WOULD BE RELEVANT TO THESE QUESTIONS.

24        THE COURT:  SO ARE YOU HYPOTHESIZING THAT THE SEC

25   MADE DETERMINATIONS WITH RESPECT TO YOUR COMPETITORS, KRAKEN'S

1    COMPETITORS THAT ARE INCONSISTENT WITH WHAT IT HAS DONE WITH

2    YOU?

3            MR. LEVANDER:  THAT IS -- THAT IS POSSIBLE.

4        BUT, I MEAN -- BUT I THINK MAYBE A MORE -- AN EVEN MORE

5    SORT OF CORE QUESTION MIGHT BE, HAD THE SEC COMMUNICATED TO

6    KRAKEN'S COMPETITORS THAT THERE WAS NO PATH FOR REGISTRATION,

7    RIGHT?  OR THAT THERE WAS NO CLARITY ON THE QUESTIONS OF HOW

8    THE SECURITIES LAWS APPLIED TO SECONDARY MARKET DIGITAL ASSET

9    TRADING PLATFORMS.

10        THOSE WOULD BE VERY IMPORTANT STATEMENTS FOR PURPOSES OF

11    THIS CASE, FOR PURPOSES OF THE FAIR NOTICE DEFENSE, AND THERE'S

12    REASON TO BELIEVE THAT AT LEAST THE SEC WAS HAVING

13    CONVERSATIONS WITH, WITH FOLKS IN THIS -- IN THIS INDUSTRY SUCH

14    THAT THOSE SORTS OF DOCUMENTS MAY BE OUT THERE FOR DISCOVERY.

15            THE COURT:  SO WOULD YOU CONNECT THE DOTS FOR ME WITH

16    RESPECT TO COMMUNICATIONS THAT THE SEC HAD WITH YOUR CLIENT?

17    DID THEY -- DID IT HAVE NO COMMUNICATIONS ON THAT TOPIC?  DID

18    IT HAVE COMMUNICATIONS THAT ARE DIFFERENT?  WHAT'S THE -- WHY

19    DO I CARE ABOUT WHAT THE SEC MAY HAVE SAID TO OTHER PEOPLE?

20    WHY DON'T I CARE ABOUT WHAT IT HAS SAID TO YOU OR WHAT IT SAID

21    MORE BROADLY PUBLICLY?

22            MR. LEVANDER:  SURE.  SO THERE ARE A FEW DIFFERENT

23    PIECES UNDER, UNDER THE FAIR NOTICE ARGUMENTS THAT THIS COULD

24    BE RELEVANT TO.

25        SO ONE IS THE SECOND CIRCUIT'S DECISION IN UPTON.  THE

1    COURT THERE HELD THAT THERE WAS A MERITORIOUS FAIR NOTICE

2    DEFENSE AND THAT THERE HAD BEEN NO FAIR NOTICE WHEN A REGULATOR

3    MAKES A SUBSTANTIAL CHANGE IN ITS ENFORCEMENT POLICY THAT IS

4    NOT COMMUNICATED TO THE PUBLIC.

5        SO THOSE DOCUMENTS ARE RELEVANT TO SORT OF LIKE THE DELTA

6    THERE, RIGHT, FROM SAYING THERE IS A CHANGE IN ENFORCEMENT

7    POLICY, BUT IT IS NOT BEING COMMUNICATED TO, FOR EXAMPLE,

8    KRAKEN.  MAYBE IT IS BEING COMMUNICATED TO OTHERS, BUT IT'S NOT

9    BEING COMMUNICATED TO KRAKEN.

10        AND THEN THERE'S ALSO -- I THINK THERE MAY ALSO BE AN

11   ISSUE -- AND THIS IS FROM THE WESTERN INTERNATIONAL SECURITIES

12   CASE WHICH WE CITE THROUGHOUT OUR PAPERS.  THAT'S A RECENT

13   DECISION FROM THE CENTRAL DISTRICT OF CALIFORNIA WHERE THE

14   COURT DENIED THE SEC'S MOTION TO STRIKE A FAIR NOTICE DEFENSE,

15   AND THERE THE COURT SAID THAT THE FAIR NOTICE QUESTION MAY

16   DEPEND IN PART ON WHETHER THE REGULATOR HAS TAKEN INCONSISTENT

17   POSITIONS.

18        SO IF THE REGULATOR OF THE SEC -- THERE THE SEC, TOO -- IS

19   COMMUNICATING DIFFERENT THINGS TO DIFFERENT FOLKS SUCH THAT

20   THERE WAS NOT FAIR NOTICE PROVIDED TO THE MARKET, THAT WOULD BE

21   RELEVANT TO THE FAIR NOTICE QUESTIONS BEFORE YOUR HONOR.

22        THE COURT:  MR. MOORES, WHY DON'T YOU PICK IT UP FROM

23    THERE.

24        MR. MOORES:  THANK YOU VERY MUCH, YOUR HONOR.

25    I THINK WHAT YOU'RE SEEING FROM DEFENSE COUNSEL AT THIS

```
1    POINT IS A PREVIEW OF THE CONTINUOUS ARGUMENTS THAT YOU'RE

2    GOING TO SEE REPEATEDLY ABOUT DISCOVERY GOING FORWARD IF THESE

3    DEFENSES ARE ALLOWED IN.

4         AND THEY ARE -- I BELIEVE, AS YOU HAVE NOTED AT THE

5    BEGINNING, YOUR HONOR, I AGREE WITH YOU THAT, YOU KNOW,

6    INTERNAL INFORMATION AND ANY INFORMATION THAT IS NOT ALREADY IN

7    THE PUBLIC REALM IS DEFINITELY IRRELEVANT, AND EVEN TO THAT

8    INFORMATION IN THE PUBLIC REALM, I CAN GO INTO WHY THAT'S

9    IRRELEVANT AS WELL.

10        BUT MORE IMPORTANTLY, I THINK, YOUR HONOR, JUST TO SORT OF

11   ADDRESS -- I THINK WHAT YOU'RE SAYING IS THAT MOTION FOR

12   JUDGMENT ON THE PLEADINGS 12(C) IS NOT APPROPRIATE FOR A --

13   SORRY -- VOID FOR VAGUENESS OR A FAIR NOTICE DEFENSE, AND I

14   WOULD OFFER YOU, YOUR HONOR, THAT IS ACTUALLY QUITE APPROPRIATE

15   IN TERMS OF OTHER COURTS HAVE ACTUALLY, ON 12(C) MOTIONS,

16   DISMISSED AFFIRMATIVE DEFENSES, MOST RECENTLY IN THIS DISTRICT

17   IN CFTC VERSUS LENDING -- EXCUSE ME, SORRY -- LENDING CLUB

18   CORP. -- SORRY -- FTC VERSUS LENDING CORP. CLUB.

19        AND THE REASON FOR THAT, YOUR HONOR, IS ACTUALLY I THINK

20   IMPORTANT THAT THE NINTH CIRCUIT JUST SAID RECENTLY IN

21   MATSUMOTO VERSUS LABRADOR THAT THE FAIR NOTICE DEFENSE, IF

22   THERE'S AN IMPRECISE BUT COMPREHENSIVE -- COMPREHENSIBLE

23   NORMATIVE STANDARD, THAT'S ENOUGH FOR FAIR NOTICE.

24        AND WHAT WE HAVE HERE IS WE HAVE A CHALLENGE IN SAYING

25   THAT A STATUTE, YOU KNOW, THE SECURITIES LAWS, THE TERM
```

1    SECURITY AND INVESTMENT CONTRACTS ARE TOO VOID, THEY'RE

2    UNCONSTITUTIONALLY VOID, AND THE ANALYSIS, AS MATSUMOTO SAID,

3    IS IN DETERMINING VAGUENESS, WE LOOK TO THE WORDS OF THE

4    STATUTE.

5         SO ANY OF THE INFORMATION THAT MR. LEVANDER WAS PROPOSING

6    BE DISCOVERED IS NOT RELEVANT TO THE COURT'S ULTIMATE ANALYSIS

7    HERE.  THE COURT COULD CONDUCT THAT ANALYSIS TODAY JUST THE

8    SAME AS IT WOULD CONDUCT THE ANALYSIS IN THE FUTURE, EITHER AT

9    SUMMARY JUDGMENT OR EVEN LATER ON IN THE CASE.

10        WHAT THE COURT WOULD BE DOING IS LOOKING TO THE TERMS OF

11   THE STATUTE, DETERMINING WHETHER OR NOT, THROUGH THE JUDICIAL

12   GLOSS AND CONSTRUCTION, WHETHER OR NOT THEY ARE VAGUE OR NOT.

13        AND HERE THE HOWEY TEST IS THAT COMPREHENSIBLE, NORMATIVE

14   STANDARD.  AND AS DEFENDANT KRAKEN HAS ALREADY CONCEDED TO,

15   THAT IT HAS FAIR NOTICE THAT THE HOWEY TEST APPLIED.

16        AND IT SAID EARLIER IN ITS MOTION TO DISMISS THAT THE

17   HOWEY -- THE PLAIN LANGUAGE OF THE STATUTE WAS CLEAR, THAT

18   HOWEY WAS CLEAR, AND TODAY, UNFORTUNATELY, IT IS ARGUING THE

19   OPPOSITE.  IT IS SAYING THAT IT'S UNCONSTITUTIONALLY VAGUE.

20        AND I THINK THAT THE COURT CAN ANALYZE THAT TODAY JUST AS

21   WELL AS IT CAN ANALYZE IT LATER ON.

22        I KNOW DEFENDANTS MADE THE ARGUMENT IN TRYING TO

23   DISTINGUISH THE LONG LIST OF CASES THAT HAVE FOUND THAT THE

24   TERMS INVESTMENT CONTRACT AND SECURITIES ARE NOT

25   UNCONSTITUTIONALLY OR IMPERMISSIBLY VAGUE BY SAYING THOSE DID

1    NOT OCCUR SORT OF AT A 12(C) MOTION.

2         THAT MIGHT BE THE CASE WITH RESPECT TO A LOT OF THESE

3    DECISIONS.  THEY WERE EITHER ON A MOTION TO DISMISS, SUMMARY

4    JUDGMENT.

5         HOWEVER, IF YOU LOOK AT THE COURT'S ANALYSIS -- AND KRAKEN

6    DOES NOT ATTACK OR UNDERMINE THE ACTUAL ANALYSIS IN THOSE

7    DECISIONS.  BUT THEY DON'T RELY UPON ANY SORT OF FACTUAL

8    DEVELOPMENT.  IN LBRY, IN KIK, IN KEENER, THEY'RE ALL DONE

9    BASED UPON ANALYZING THE LAW AND DETERMINING WHETHER OR NOT THE

10   TERMS ARE UNCONSTITUTIONALLY VAGUE.

11        AND I BELIEVE THE COURT CAN DO THAT ANALYSIS NOW AND SAVE

12   ITSELF AND SAVE THE PARTIES FROM, AGAIN, THIS REPEATED REQUEST

13   FOR IRRELEVANT AND RUMMAGING AROUND IN THE SEC'S INTERNAL

14   FILES.

15        AS MR. LEVANDER SAID --

16        THE COURT:  I THINK MR. LEVANDER HAS DISAVOWED ANY

17    DESIRE TO RUMMAGE AROUND IN YOUR FILES.

18        MR. MOORES:  WELL, HE DID SAY THAT THEY WERE -- THERE

19    WAS AT LEAST ONE CATEGORY OF DOCUMENTS THAT WERE INTERNAL TO

20    THE SEC THAT THEY WANTED TO REQUEST SPECIFICALLY, EVEN DURING

21    HIS ORAL ARGUMENTS.

22        AND WITH RESPECT TO THEIR DOCUMENT REQUESTS AND THEIR

23   REQUESTS FOR ADMISSIONS, THEY'RE ALL STREWN ABOUT WITH REQUESTS

24   FOR INTERNAL SEC DOCUMENTATION AND INTERNAL SEC BELIEFS.

25        AND EVEN WHEN MR. LEVANDER IS ASKING THE COURT TO GRANT

1    DISCOVERY OF EXTERNAL COMMUNICATIONS WITH THIRD PARTIES, I

2    THINK THE COURT NEEDS TO TAKE COGNIZANCE OF THAT IT'S AN

3    OBJECTIVE TEST.  THE HOWEY TEST IS AN OBJECTIVE TEST.  AND THE

4    FAIR NOTICE TEST IS AGAIN AN OBJECTIVE TEST.

5         AND SO IT IS NOT WHAT WAS COMMUNICATED SPECIFICALLY

6    PRIVATELY TO ONE PARTY OR ANOTHER PARTY.  WHAT MATTERS IS, YOU

7    KNOW, THE OBJECTIVE ORDINARY PERSON, OR IN THIS CASE IF WE'RE

8    DOING AS APPLIED, THE ORDINARY CRYPTO ASSET TRADING PLATFORM

9    OPERATOR, NOT ANY PARTICULAR -- YOU KNOW, IT'S NOT TRYING TO

10   LOOK AT THE SUBJECTIVE UNDERSTANDING OF ANY PARTICULAR PERSON.

11        THOSE COMMUNICATIONS WITH EXTERNAL PARTIES ARE IRRELEVANT

12   TO WHETHER OR NOT AN ORDINARY PERSON HAD, YOU KNOW, AN

13   UNDERSTANDING OF WHAT CONDUCT IS PROHIBITED, WHICH IS THE ONLY

14   THING THAT'S REQUIRED UNDER FAIR NOTICE UNDER THE LAW.

15        SO I WOULD SUGGEST, YOUR HONOR, STRONGLY THAT TODAY IS THE

16   DAY IN WHICH THE COURT HAS ALL THE INFORMATION.

17        MR. LEVANDER HAD MENTIONED THAT THERE ARE SOME FACTUAL

18   DISPUTES.  THERE ARE NO REAL MATERIAL FACT DISPUTES IN THE

19   PLEADINGS.  HE POINTS TO A COUPLE OF ITEMS, YOU KNOW,

20   SPECIFICALLY ABOUT WHAT WAS OR WHAT WAS NOT COMMUNICATED BY

21   CHAIR GENSLER BACK IN 2021.

22        WHAT WAS COMMUNICATED IS NOT IN DISPUTE HERE IN THE

23   PLEADINGS.  I KNOW THAT KRAKEN HAS ASKED THAT JUDICIAL NOTICE

24   BE TAKEN OF THE TRANSCRIPT OF IT.  WE'RE NOT DISPUTING THE

25   TRANSCRIPT.

1    AND SO I THINK HE ALSO POINTED TO, AGAIN, SOME OTHER

2  COMMUNICATIONS THAT, AGAIN, DON'T GO TOWARD THE OBJECTIVE TEST.

3  BUT THERE ARE NO FACTUAL DISPUTES SITTING HERE TODAY.

4    AND I BELIEVE IT WAS OVER 700 PAGES OF DOCUMENTS THAT WERE

5  ATTACHED BY KRAKEN TO THE OPPOSITION TO THE 12(C) MOTION.  IN

6  THEIR MOTION TO DISMISS, THEY ATTACHED OVER 1700 PAGES OF

7  EXHIBITS.

8    ALL OF THE INFORMATION THAT IS PUBLICLY AVAILABLE, KRAKEN

9  HAS FOUND.

10    AND, IN FACT, WHAT KRAKEN IS SUGGESTING IS THAT AN

11  ORDINARY PERSON WHO'S OPERATING A CRYPTO ASSET TRADING PLATFORM

12  IS SCOURING THE INTERNET EVERY DAY IN ORDER TO EVALUATE WHETHER

13  OR NOT, YOU KNOW, IT'S LOOKING AT THE HOWEY TEST.

14    AND THAT IN AND OF ITSELF IS AN ADMISSION THAT THEY HAD

15  FAIR NOTICE THAT THE HOWEY TEST APPLIED, AND THAT IS REALLY THE

16  COMPREHENSIBLE, NORMATIVE STANDARD THAT IS ENOUGH FOR FAIR

17  NOTICE.  A SPECIFIC DESCRIPTION OF, YOU KNOW, OR WARNING IS NOT

18  REQUIRED UNDER FAIR NOTICE.

19    AND, IN FACT, YOU KNOW, I THINK ONE OF THE THINGS THAT WAS

20  ALSO IMPORTANT WAS THE SORT OF SHIFT IN THE FOCUS ON TO THE

21  STATEMENTS BY THE SEC, AND THE NINTH CIRCUIT HAS ALREADY SAID

22  THAT THAT'S NOT RELEVANT.  IN FANG LIN AI VERSUS UNITED STATES,

23  THE QUESTION IS NOT WHETHER THE GOVERNMENT APPLIED OR

24  INTERPRETED THE STATUTE CONSISTENTLY OR INCONSISTENTLY.  THAT

25  IS NOT RELEVANT TO WHETHER OR NOT THE STATUTE IS VOID FOR

1    VAGUENESS.

2         SO -- AND THAT WAS ALSO ADOPTED RECENTLY, OR IN 2016, IN

3    INTERIOR GLASS SYSTEMS, INC. VERSUS UNITED STATES.  YOU KNOW, A

4    STATUTE NEED NOT FIND EVERY FACTUAL SCENARIO THAT FALLS WITHIN

5    ITS PURVIEW IN ORDER TO WITHSTAND A VAGUENESS CHALLENGE.

6         SO I THINK THAT WHAT DEFENDANTS ARE TRYING TO DO IS THE

7    STATUTE ITSELF IS CLEAR, THEY SAID IT WAS CLEAR; THEY HAVE

8    CONCEDED THAT THEY KNEW THAT THE HOWEY TEST APPLIED; THEY ARE

9    NOT CHALLENGING THIS COURT'S INTERPRETATION THAT THE HOWEY TEST

10   APPLIES IN SECONDARY MARKET SALES, JUST AS IT DOES EQUALLY IN

11   PRIMARY MARKET SALES; AND THEY'RE NOT CONTESTING THAT THE HOWEY

12   TEST DOES NOT REQUIRE CONTRACTS OR POST-SALE OBLIGATIONS.

13        THEY ESSENTIALLY UNDERSTAND THAT THEY HAD FAIR NOTICE, AND

14   THERE'S NO FACTS THAT WILL UNDERMINE THAT CONCLUSION EITHER

15   TODAY OR SIX MONTHS FROM NOW AFTER WE HAVE NUMEROUS FACTUAL

16   DISPUTES AND MOTIONS TO COMPEL BROUGHT, LIKE WHAT HAPPENED

17   ALREADY TO THE MAGISTRATE ONCE.

18        YOU ALREADY --

19             THE COURT:  MR. MOORES --

20        MR. MOORES:  SORRY.  GO AHEAD, YOUR HONOR.

21             THE COURT:  HOW DO YOU DISTINGUISH THE CENTRAL

22   DISTRICT DECISION THAT MR. LEVANDER WAS TALKING ABOUT?

23             MR. MOORES:  SO, YOUR HONOR, ONE OF THE IMPORTANT

24   THINGS ON THAT VOID FOR VAGUENESS CHALLENGE WAS THAT THE COURT

25   FELT THAT IT DID -- THAT THERE WERE FACTUAL DISPUTES AND THAT

```
 1     IT DID NOT HAVE A SUFFICIENT RECORD IN FRONT OF IT.

 2     SPECIFICALLY, I BELIEVE THAT THE SEC -- FIRST OF ALL, IT WAS A

 3     RULE, IT WAS REGULATION BEST INTEREST, REGULATION BI, THAT HAD

 4     JUST BEEN PUT INTO EFFECT AND THAT THERE WAS GUIDANCE THAT WAS

 5     PROVIDED BY THE SEC.

 6          THE SEC, I BELIEVE IN ITS PAPERS, SAID THAT THE RULE

 7     ITSELF, ALONG WITH THE GUIDANCE, PROVIDED FAIR NOTICE TO

 8     DEFENDANTS.

 9          THE COURT DID NOT EVEN HAVE THE ENTIRETY OF THE GUIDANCE,

10     AND PERHAPS DIDN'T HAVE ALL OF THE INFORMATION IN THE RECORD AT

11     THAT TIME IN THE PLEADINGS, AND SO THE COURT DID NOT BELIEVE

12     THAT IT COULD RULE ON THAT BECAUSE THERE WERE FACTUAL DISPUTES.

13          HERE THERE ARE NOT MATERIAL RELEVANT FACTUAL DISPUTES.

14     THERE'S SUFFICIENT INFORMATION IN THE PLEADINGS.  THE

15     OPERATION -- AND SO THE FOCUS REALLY -- AND I KNOW KRAKEN HAD

16     MADE ISSUE OF THIS WITH ITS OPPOSITION.  THE FACTS AT HAND IN

17     THE ANALYSIS, WHAT'S IMPORTANT IS THE DEFENDANT'S CONDUCT, AND

18     THERE'S NO FACTUAL DISPUTE AT ALL.  WHEN MR. LEVANDER HAD

19     IDENTIFIED THE VARIOUS, QUOTE, FACTS IN DISPUTE, HE DIDN'T

20     MENTION A WORD ABOUT KRAKEN'S OPERATION, BECAUSE THOSE ARE

21     WHAT, A, ARE IMPORTANT AND RELEVANT TO THE AS APPLIED ANALYSIS;

22     AND, 2, THERE ARE NO FACTS IN DISPUTE.

23          IN OUR PAPERS, WE OUTLINE ALL OF THE FACTS ABOUT KRAKEN'S

24     OPERATIONS THAT ARE NOT IN DISPUTE.  KRAKEN DOES NOT DISPUTE

25     THOSE IN ITS PAPERS, THAT THEY ARE AGREED TO OR THAT THEY
```

1    CONCEDED TO IN THE ANSWER.

2        AND, IN FACT, YOU DON'T NEED A LOT OF SPECIFIC FACTS FOR

3    THE ANALYSIS.  THE FACT THAT KRAKEN IS A CRYPTO ASSET TRADING

4    PLATFORM OPERATOR AND IT HAS SORT OF MATCHING BIDS AND OFFERS

5    AND THE WAY IT OPERATES ITS PLATFORM, THAT'S ENOUGH FOR THE

6    ANALYSIS OF WHETHER OR NOT, YOU KNOW, A PERSON ESSENTIALLY

7    STANDING IN THEIR SHOES WOULD UNDERSTAND WHAT IS PROHIBITED, OR

8    WOULD UNDERSTAND, AS THE SUPREME COURT SAID, THAT ITS CONDUCT

9    IS AT RISK.

10        THE COURT:  MR. LEVANDER, WHY DON'T YOU REPLY AND

11    WRAP THIS UP?

12        MR. LEVANDER:  SURE.

13        SO JUST VERY QUICKLY ON THE WESTERN INTERNATIONAL, THE

14    REG BI CASE, SO THAT CASE DOES NOT TURN ON THE EXISTENCE OF

15    FACTUAL DISPUTES.

16        WHAT THE COURT SAID IN THAT CASE -- AND I'LL QUOTE IT --

17    IS THAT IN MOST CASES, INCLUDING THIS ONE, THE COURT LACKS

18    SUFFICIENT INFORMATION AT THE PLEADING STAGE TO CONCLUDE THAT

19    THIS INQUIRY ON FAIR NOTICE WILL IN ALL POSSIBLE SCENARIOS

20    RESOLVE IN FAVOR OF THE REGULATOR.

21        THAT'S A VERY BROAD DECISION, AND IT'S NOT AT ALL BASED ON

22    THE EXISTENCE OF FACT DISPUTES IN THAT CASE.

23        BUT MOREOVER, WHILE MR. MOORES TRIES TO PLAY DOWN THE FACT

24    DISPUTES IN THIS CASE, THERE ARE QUITE A NUMBER.  IT IS NOT AT

25    ALL ACCURATE TO SAY THAT KRAKEN JUST UNDERSTOOD THAT IT HAD

1    FAIR NOTICE AND THAT THERE ARE NO UNDERLYING FACTUAL DISPUTES

2    THAT REMAIN IN THIS CASE.

3        THE FIRST ONE -- THE FIRST ONE, TO HIGHLIGHT, IS WHETHER,

4    WHETHER KRAKEN AND OTHERS HAD THE ABILITY TO REGISTER AT ALL AS

5    DIGITAL ASSET TRADING PLATFORMS.  THAT IS A FUNDAMENTAL ISSUE

6    IN THIS CASE AND IT IS ONE THAT IS VERY MUCH IN DISPUTE.

7        AND THEN WHILE IT IS TRUE THAT CHAIR GENSLER -- THAT THE

8    SEC IS ACKNOWLEDGING THAT CHAIR GENSLER MADE THE STATEMENT, THE

9    ACTUAL CONTEXT AND THE IMPORT OF THAT STATEMENT IS VERY MUCH IN

10    DISPUTE IN THIS CASE.

11        I'D LIKE TO LIST A FEW MORE FACTUAL DISPUTES IF YOUR HONOR

12    HAS A MOMENT, AND THEN I THINK MR. SOLOMON HAS SOME VERY QUICK

13    CLOSING WORDS.

14            THE COURT:  OKAY.

15            MR. LEVANDER:  IS THAT OKAY IF WE PROCEED THAT WAY?

16            THE COURT:  SURE.

17            MR. LEVANDER:  SO, YEAH, JUST TO LIST A FEW OTHER

18    FACTUAL DISPUTES THAT STILL EXIST IN THIS CASE, ONE OTHER KEY

19    ASPECT OF THE FAIR NOTICE, OF THE FAIR NOTICE FACTS IS THE

20    SPEECH THAT WAS GIVEN BY THE THEN-HEAD OF CORPORATION FINANCE

21    AT THE SEC, BILL HINMAN, AND THERE WAS A REALLY IMPORTANT

22    FACTUAL QUESTION HERE ABOUT WHETHER THAT SPEECH WAS INTENDED TO

23    BE COMMISSION POLICY OR NOT.

24        THE SEC DISPUTES THAT THAT WAS -- THAT THAT WAS ACTUALLY

25    THE SEC'S POLICY ON THIS QUESTION, BUT OUR POSITION IS THAT

1    THAT SPEECH WAS ACTUALLY A CONCERTED EFFORT TO GIVE GUIDANCE TO

2    THE MARKETPLACE.

3         AND THEN THERE'S A QUESTION ABOUT WHETHER -- THIS IS

4    ASSERTED IN THE PAPERS ON THIS MOTION -- ABOUT WHETHER KRAKEN

5    DELIBERATELY FAILED TO REGISTER, SORT OF HAD THE INTENTION TO

6    AND THEN JUST CHOSE NOT TO.

7         OUR POSITION, AND THE SEC DISPUTES THIS, IS THAT KRAKEN

8    TRIED TO REGISTER, BUT THERE WAS NO REGIME AVAILABLE FOR US TO

9    DO SO, AND THAT'S ALLEGED -- THAT'S ALLEGED IN THE FIRST

10   PARAGRAPH OF OUR ANSWER WHICH, AGAIN, AT THIS STAGE AND ON THIS

11   MOTION, THE COURT NEEDS TO ACCEPT THOSE PLEADED FACTS AS TRUE,

12   AND THOSE ARE FACTS THAT THE SEC DISPUTES IN THIS CASE.

13        AND THEN FINALLY -- THIS IS JUST TO TIE INTO WHAT WE WERE

14   TALKING ABOUT BEFORE IN TERMS OF WHAT ADDITIONAL, WHAT

15   ADDITIONAL FACTS MIGHT BE RELEVANT BEYOND WHAT'S OUT IN THE

16   PUBLIC, THERE'S A FACTUAL QUESTION, WHICH I THINK THE SEC

17   DISPUTES, AROUND WHETHER ITS COMMUNICATIONS TO THIRD PARTIES

18   ACTUALLY DID PAINT A CLEAR PICTURE OF ITS REGULATORY APPROACH

19   OR ACTUALLY ADDED TO THE UNCERTAINTY WHICH COURTS ACROSS THE

20   COUNTRY HAVE OBSERVED THE SEC HAS CREATED IN THIS INDUSTRY.

21        SO WITH THOSE, I THINK THAT'S A -- I COULD GO ON AND LIST

22   A NUMBER OF OTHER DISPUTED FACTS IN THIS CASE, BUT THERE ARE

23   KEY DISPUTED FACTS THAT REMAIN HERE ON THESE QUESTIONS AND THAT

24   SHOULD -- AND THAT KRAKEN SHOULD HAVE AN OPPORTUNITY TO LOOK AT

25   IN DISCOVERY.

1    NOW I'LL LET MR. SOLOMON FINISH IF YOUR HONOR WILL ALLOW

2    IT.

3         THE COURT:  ALL RIGHT.

4    MR. SOLOMON, GO AHEAD.

5         MR. SOLOMON:  THANKS FOR YOUR INDULGENCE, YOUR HONOR.

6    THE SEC IS ASKING YOU TO DO SOMETHING EXTRAORDINARY HERE,

7    BASICALLY CUT OFF DISCOVERY AT THE KNEES AT THE PLEADING STAGE

8    FOR A FAIR NOTICE DEFENSE.  NO COURT HAS EVER DONE THAT AT THE

9    PLEADING STAGE, NONE, NOT IN THE DIGITAL ASSET CONTEXT OR ANY

10   OTHER CONTEXT, NOT AT THE PLEADING STAGE, AND FOR GOOD REASON.

11   WE SHOULD BE ABLE TO GO TO THE MAGISTRATE JUDGE, WHO YOUR

12   HONOR HAS ALREADY TURNED TO, TO MAKE ARGUMENTS ABOUT DISCOVERY

13   IN RELATION TO FAIR NOTICE AND, RESPECTFULLY, WE BELIEVE ALSO

14   IN RELATION TO MAJOR QUESTIONS.

15   IT IS AN OBJECTIVE STANDARD, AS THE SEC CONCEDES, AND THE

16   SEC'S CONDUCT IS RELEVANT.  AND COURTS ARE FAIRLY UNIFORM ON

17   THAT, INCLUDING SOME OF THE CASES THE SEC ITSELF CITES, SUCH AS

18   THE TERRAFORM CASE WHERE JUDGE RAKOFF SQUARELY SAID THE SEC'S

19   CONDUCT CAN BE RELEVANT TO FAIR NOTICE.

20   THIS IS NOT JUST A QUESTION OF LOOKING AT THE DOCUMENTS WE

21   HAVE CHOSEN TO PUT FORWARD AT THIS PLEADING STAGE AND MAKING A

22   FACTUAL DETERMINATION ON THAT.

23   THERE ARE MANY OTHER PUBLIC DOCUMENTS WE WILL PUT IN FRONT

24   OF YOUR HONOR AT THE SUMMARY JUDGMENT STAGE, OR PERHAPS AT

25   TRIAL, AND WE BELIEVE, AND WE HAVE GOOD REASON TO BELIEVE FROM

1    DISCOVERY IN OTHER CASES, THAT THERE IS INTERNAL DOCUMENTATION,

2    AND CERTAINLY DOCUMENTATION REFLECTING COMMUNICATIONS BETWEEN

3    THE SEC AND THIRD PARTIES THAT BEAR DIRECTLY ON WHETHER OR NOT

4    THE LAW WAS CLEAR WITH RESPECT TO THE APPLICATION OF HOWEY TO

5    SECONDARY MARKET PLATFORMS.

6        AND IN FACT, JUST YESTERDAY, AS WE CALLED YOUR HONOR'S

7    ATTENTION TO, JUDGE FAILLA, WHO HAD RULED FOR THE SEC ON A

8    MOTION TO DISMISS UNIFORMLY NOW HAS CERTIFIED FOR APPEAL THAT

9    ORDER BROADLY, AND SHE COMMENTED ON PAGE 33 THAT PART OF THE

10   REASON SHE DID THAT WAS BECAUSE, YES, THERE'S CASE LAW ON THE

11   APPLICATION OF HOWEY GENERALLY, BUT THERE'S ALMOST NOTHING ON

12   THE APPLICATION OF HOWEY TO DIGITAL ASSETS.

13       WE ARE ENTITLED TO AT LEAST SEEK DISCOVERY, ASK FOR

14   DISCOVERY, AND THE SEC CAN RESIST THAT, BUT TO -- BUT WE

15   BELIEVE THAT YOUR HONOR SHOULD NOT, AT THIS EARLY PLEADING

16   STAGE, AS NO COURT HAS EVER DONE, AGAIN, CUT OFF OUR ABILITY

17   EVEN TO REQUEST THOSE DOCUMENTS.

18       AND JUST, YOUR HONOR, ON RIPPLE, TO BE PERFECTLY CLEAR,

19   BECAUSE THE SEC SPENDS TIME TALKING ABOUT THIS CASE,

20   JUDGE TORRES DETERMINED THAT THE FAIR NOTICE DEFENSE WAS

21   UNAVAILABLE AFTER SUMMARY JUDGMENT, AFTER SUMMARY JUDGMENT,

22   ONLY FOR INSTITUTIONAL SALES THAT RIPPLE MADE TO OTHER PARTIES

23   WITH CONTRACTS.

24       WITH RESPECT TO RIPPLE'S SALES ON PLATFORMS, RIPPLE'S

25   SALES ON PLATFORMS LIKE KRAKEN, THE COURT EXPRESSLY SAID SHE IS

1   NOT RULING THAT DUE PROCESS CANNOT BE A DEFENSE IN THAT

2   CONTEXT, AND SHE NOTED THAT THE SEC'S CASES MAY NOT BE -- MAY

3   NOT HAVE GIVEN SUFFICIENT NOTICE TO A SECONDARY MARKET PLATFORM

4   THAT THE LAW APPLIED IN THAT FASHION.

5          AND, IN FACT, WHEN THE SEC MOVED FOR -- THE SEC MOVED FOR

6   INTERLOCUTORY APPEAL BECAUSE THEY SUBSTANTIALLY LOST THE RIPPLE

7   CASE, AND THE JUDGE, IN DENYING THE INTERLOCUTORY APPEAL, IN A

8   FOOTNOTE SAID, "IF THIS CASE COMES BACK TO ME AFTER DIRECT

9   APPEAL, I WILL CONSIDER THE FAIR USE DEFENSE AS TO PROTOMATIC

10  SALES."

11         SO THAT DEFENSE WAS PRESERVED IN RIPPLE FOR THE VERY

12  REASONS WE THINK YOUR HONOR AT THIS EARLIER STAGE SHOULD

13  PRESERVE THAT DEFENSE.

14         THE SAME WAS TRUE IN WESTERN INTERNATIONAL.

15         AND, AGAIN, NO COURT HAS EVER AT THE PLEADING STAGE

16  ELIMINATED THE AFFIRMATIVE DEFENSE.

17         YOUR HONOR ALREADY APPOINTED A MAGISTRATE JUDGE WHO IS

18  PERFECTLY CAPABLE OF HEARING THE SEC'S ARGUMENTS --

19              THE COURT:  YOU'RE NOW REPEATING YOURSELF.  THANK

20  YOU, MR. SOLOMON.

21         MR. MOORES, DO YOU WANT TO RESPOND?  I WILL GIVE YOU THE

22  LAST WORD INSTEAD.

23              MR. MOORES:  THANK YOU, YOUR HONOR.  I'D JUST LIKE TO

24  RESPOND TO A COUPLE THINGS THAT MR. SOLOMON SAID.

25         FIRST AND FOREMOST, WITH RESPECT TO THE COINBASE ORDER ON

1   THE INTERLOCUTORY APPEAL, WHAT JUDGE FAILLA DID SAY WAS THAT

2   HOWEY WAS CLEAR, THAT THERE SHOULD BE NO APPEAL OF WHETHER OR

3   NOT HOWEY INVOLVED CONTRACTS, FORMAL CONTRACTS, OR POST-SALE

4   OBLIGATIONS.

5       SO THE ACTUAL STATUTES IN HOWEY ARE NOT VAGUE.  THEY ARE

6   CRYSTAL CLEAR IN JUDGE FAILLA'S OPINION IN THAT, AND THAT

7   SHOULD NOT BE SOMETHING THAT GOES UP TO THE SECOND CIRCUIT.

8       NOW, ONE OTHER THING.  MR. LEVANDER BRINGS UP ALL OF

9   THESE, QUOTE, FACTUAL DISPUTES, BUT IT'S NOT SOMETHING THAT'S

10  IN THE PLEADINGS THAT WE DISPUTE ANY OF THESE THINGS THAT HE'S

11  MENTIONING.

12      BUT UNDERLYING ALL OF IT IS THAT WHEN HE TALKED ABOUT, YOU

13  KNOW, WHETHER OR NOT THERE'S A PATHWAY TO REGISTER AT ALL, THIS

14  IS INFORMATION THAT IS NOT RELEVANT TO WHETHER OR NOT THE

15  STATUTE ITSELF IS VAGUE.  IT'S ALL IRRELEVANT AND IMMATERIAL.

16      AND SO I WOULD ASK THE COURT TO LOOK AT THE ANALYSIS AND

17  WHETHER OR NOT IT CAN CONDUCT THAT TODAY, AND I BELIEVE IT

18  SHOULD ANSWER THE QUESTION YES.

19      AND THEN IF IT ANSWERS IT NO, THE COURT SHOULD, AS IT SAID

20  AT THE BEGINNING, NOT ALLOW DISCOVERY ON THE FAIR NOTICE AND

21  VOID FOR VAGUENESS.

22      WHAT KRAKEN HAS AVAILABLE TO ITSELF WAS THE SAME THING

23  THAT WOULD BE AVAILABLE TO THE OBJECTIVE CRYPTO ASSET TRADING

24  PLATFORM OPERATOR, WHICH IS THE INFORMATION IN THE PUBLIC

25  DOMAIN.

1          THANK YOU, YOUR HONOR.

2          AND I'M HAPPY TO ANSWER ANY QUESTIONS YOU HAVE, BUT THANK

3     YOU FOR LISTENING TO US AND HEARING OUR MOTION TODAY.

4              THE COURT:  ALL RIGHT.

5          WELL, THANK YOU ALL FOR YOUR ARGUMENT.  I WILL DIVE BACK

6     INTO ALL OF THIS AND GET AN ORDER OUT AS SOON AS I CAN.  THANKS

7     A LOT.

8              MR. MOORES:  THANK YOU, YOUR HONOR.

9              MR. LEVANDER:  THANK YOU, YOUR HONOR.

10             MR. SOLOMON:  THANK YOU, YOUR HONOR.

11             THE CLERK:  AND THAT CONCLUDES OUR CALENDAR THIS

12    AFTERNOON.  THANK YOU ALL.

13         (THE PROCEEDINGS WERE CONCLUDED AT 2:39 P.M.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____

     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18        DATED:  JANUARY 17, 2025

19

20

21

22

23

24

25