1
2
3
4                                UNITED STATES DISTRICT COURT
5                              NORTHERN DISTRICT OF CALIFORNIA
6
7    SECURITIES AND EXCHANGE                    Case No. 23-cv-06003-WHO
     COMMISSION,
8                                                ORDER GRANTING IN PART AND
                    Plaintiff,                   DENYING IN PART MOTION FOR
9                                                JUDGMENT ON THE PLEADINGS
           v.
10                                               Re: Dkt. Nos. 103, 122
     PAYWARD, INC., et al.,
11
                    Defendants.
12
13          The United States Securities and Exchange Commission (the "SEC" or the
14   "Commission"), is suing Payward, Inc. and Payward Ventures (d/b/a and hereafter, "Kraken")
15   under Sections 5, 15(a), and 17A(b) of the Exchange Act, 15 U.S.C. §§ 78e, 78o(a), 78q-1(b),
16   alleging that Kraken acts as an unregistered broker, dealer, exchange, and clearing agency with
17   respect to what the SEC refers to as "crypto asset securities."  Kraken admits that it never
18   registered with the SEC; it argues that it does not need to because the transactions that it enables
19   on its platform do not involve securities and do not fall within the SEC's regulatory purview.  It
20   has raised eighteen affirmative defenses in answer to the SEC's complaint.  The SEC moves for
21   judgment on three of them: the major questions doctrine and fair notice and due process defenses.
22   I have already determined that the major questions doctrine is not implicated in this case, at least
23   under the current facts, and GRANT the motion to dismiss it.  But Kraken is entitled to proceed
24   with the other two defenses, which are plausibly alleged.

25                                        **BACKGROUND**

26          I presume a general familiarity with cryptocurrency.  A background in cryptocurrencies
27   and tokens, their qualities, and how they might be bought, sold, traded, and exchanged can be
28   found in the last order. *See* Order Denying Motion to Dismiss and Setting Case Management

United States District Court
Northern District of California

Conference ("Prior Order") [Dkt. No. 90] 2-3.

Kraken is a United States cryptocurrency exchange. The "Kraken Trading Platform" allows customers to buy and sell crypto assets through an online market. Complaint ("Compl.") [Dkt. No. 1] ¶¶ 1, 39. Kraken advertises that the Kraken Trading Platform is "one of the world's largest digital asset exchanges," in that it has over nine million retail and institutional customers located across more than 190 countries. *Id.* ¶ 139. The Kraken Trading Platform enables Kraken to provide services for customers like opening accounts, depositing funds, entering orders, and trading crypto assets (the "Kraken Services"). *Id.* ¶ 40. Kraken is not and has never registered with the SEC as a securities intermediary. *See* Answer (Preliminary Statement) at 1.

Several hundred crypto assets are available on the Kraken Trading Platform for trade. In the Complaint, the SEC identifies eleven crypto assets that it argues were offered and sold as investment contracts on the Kraken Trading Platform and used the Kraken Services: ADA, ALGO, ATOM, FLOW, ICP, MANA, MATIC, NEAR, OMG, and SOL. *See* Compl. ¶¶ 234, 248, 275, 293, 321, 343, 358, 378, 396, 409, 433.[1], [2] This is not the first lawsuit to consider whether these assets are investment contracts subject to securities laws. The SEC has filed other cases across the country alleging that each of those eleven crypto assets are unlawfully transacted in by unregistered cryptocurrency networks. *See e.g.*, *SEC v. Bittrex*, No. 2:23-cv-580 (W.D. Wash. filed Apr. 17, 2023); *SEC v. Binance Holdings Ltd.*, Civ. No. 23-1599 (D.D.C. filed June 5, 2023); *SEC v. Coinbase, Inc.*, No. 23-cv-4738 (S.D.N.Y. filed June 6, 2023).

The SEC filed the underlying complaint in this case on November 11, 2023. In it, it asks this court to: (i) permanently enjoin the defendants from violating Sections 5, 15(a), and 17A of the Exchange Act; (ii) order the defendants to disgorge their "ill-gotten gains," on a joint and several basis, and pay prejudgment interest thereon; (iii) permanently enjoin the defendants from

---

[1] The SEC refers to these assets as the "Kraken-Traded Securities." As I made clear in my previous order, I will not entertain any theory of liability where the SEC asks this court to treat the crypto assets themselves as though they are securities. I am considering the theory that those crypto assets, once sold/traded/exchanged on the Kraken Trading Platform, are investment contracts that form the basis for securities.

[2] For more background on some of the crypto assets at issue in this case, *see* Prior Order at 4-5 (laying out factual allegations pertaining to ALGO and SOL).

United States District Court
Northern District of California

acting as an unregistered exchange, broker, dealer, or clearing agency, and (iv) impose civil monetary penalties. *See generally* Compl. Kraken moved to dismiss the action in its entirety for failure to state a claim. *See* Motion to Dismiss ("Motion") [Dkt. No. 25]. I denied its motion, finding that the SEC has plausibly alleged that the secondary market transactions in the cryptocurrencies named in the Complaint constitute "investment contracts," and as such, are subject to securities laws. *See generally* Prior Order.

Kraken filed a 74-page answer to the SEC's complaint. *See generally* Answer [Dkt. No. 91].[3] It asserts eighteen affirmative defenses. *See id.* at 69-74. The SEC moves for judgment on Kraken's Eighth, Ninth, and Tenth defenses. *See* SEC Motion for Judgment on the Pleadings ("Motion") [Dkt. No. 103]. Kraken's Eighth Defense concerns the major questions doctrine: it asserts that if there were an ambiguity with respect to the SEC's authority to enforce Sections 5, 15(a), or 17A of the Exchange Act, then I would be compelled to apply the major questions doctrine and resolve the ambiguity against the SEC's enforcement authority. *See* Answer 70-71. Its Ninth Defense asserts that it lacked "fair notice that Kraken's conduct was in violation of the law, in contravention of its due process rights." *Id.* Its Tenth Defense claims that "[a]s applied to the transactions alleged by the [SEC], the securities laws and the test formulated by the [United States Supreme Court] in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) are impermissibly vague." Answer 71.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The legal standard that governs a Rule 12(c) motion is the same as that which governs a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*,

---

[3] Shortly after filing its Answer, Kraken also asked that I certify my order denying its motion to dismiss for interlocutory appeal. *See* Dkt. No. 92. I denied its request. *See* Dkt. No. 106 (Order Denying Motion to Certify Order for Interlocutory Appeal).

521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A Rule 12(c) motion may be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to allege a cognizable claim. *Godecke v. Kinetic Concepts, Inc*., 937 F.3d 1201, 1208 (9th Cir. 2019). Judgment "may only be granted when the pleadings show that it is 'beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co*., 132 F.3d 526, 529 (9th Cir. 1997) (internal citations omitted).

A court has discretion to permit leave to amend in conjunction with a Rule 12(c) motion and may dismiss causes of action rather than grant judgment. *Id.* If a court grants a motion for judgment on the pleadings, leave to amend should be granted unless such amendment would be futile. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

### I.    TIMELINESS

The SEC has moved for judgment under Federal Rule of Civil Procedure Rule 12(c). Rule 12(c) motions may be filed at any time during litigation so long as they do not delay trial; this distinguishes them from Rule 12(f) motions to strike, which must be filed within 21 days of being served with the pleading. *See* Fed. R. Civ. P. Rules 12(c), 12(f).

Kraken argues that the SEC's motion is *styled* as a Rule 12(c) motion but is actually a late-

United States District Court
Northern District of California

United States District Court
Northern District of California

1    filed Rule 12(f) motion and should be dismissed accordingly.  In support, Kraken cites *San Diego*

2    *Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., No. 315CV01401BENMDD,

3    2018 WL 11423864, at *1 (S.D. Cal. Dec. 6, 2018).  There, the court construed what the plaintiff

4    styled as a Rule 12(c) motion as being, functionally, a Rule 12(f) motion to strike.  Two factors

5    render *San Diego* largely inapposite.  First, the motion in *San Diego* was brought on the eve of

6    trial, and the federal rules are clear that motions for judgment on the pleadings may not delay trial.

7    *See* Fed. R. Civ. P. Rule 12(c).  Here, trial is more than a year away.  Second, the court in *San*

8    *Diego* noted that there were "few cases" in the Ninth Circuit holding that a party can seek

9    judgment on affirmative defenses pursuant to Rule 12(c).  *San Diego*, at *1, n.2.  The law has

10   developed since 2016, and several cases within this circuit have considered Rule 12(c) motions

11   seeking judgment on affirmative defenses. *See e.g.*, *Vasquez v. Leprino Foods Co.*, No.

12   117CV00796AWIBAM, 2021 WL 1737480 (E.D. Cal. May 3, 2021) (granting a Rule 12(c)

13   motion for judgment on affirmative defenses); *Neo4j, Inc. v. PureThink, LLC*, No. 5:18-cv-07182-

14   EJD, 2020 WL 2614871, at *8 (N.D. Cal. May 21, 2020) (same).

15        *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sept. 22,

16   2016) does not support Kraken's position either.  There, the plaintiff, Jones, filed a Rule 12(f)

17   motion to strike; when he realized that he had missed the 21-day Rule 12(f) deadline, Jones asked

18   the court to construe his motion as a Rule 12(c) motion instead. *Jones*, at *12-13.  The Hon.

19   Haywood Gilliam declined to do so, stating that he would not allow Jones to "circumvent the

20   Federal Rules of Civil Procedure by construing [his] untimely motion to strike as a motion for

21   judgment on the pleadings." *Id.*  Here, of course, the SEC has not requested that I excuse it from a

22   filing error by construing its motion as one with a more forgiving timeline.  It filed the underlying

23   Rule 12(c) motion to challenge several of Kraken's affirmative defenses as failing to state facts

24   that would support its legal theories.[4]

25   _____

26   [4] Kraken also cites *Vann v. Inst. of Nuclear Power Operations, Inc*., 2010 WL 11601718, at *3–4
     (N.D. Ga. July 15, 2010), for the rule that Rule 12(f), not Rule 12(c), is the appropriate tool to

27   seek to dispose of affirmative defenses.  *Vann* is a non-final report and recommendation by an out-
     of-circuit magistrate judge ruling on the plaintiff's Rule 12(c) motion.  *Vann* is not controlling and

28   is out-of-step with Ninth Circuit cases where district courts have considered Rule 12(c) motions
     for judgment on affirmative defenses.

1    This case is more akin to *Vasquez* than *San Diego* or *Jones*.  In *Vasquez*, the court

2    considered the plaintiffs' Rule 12(c) motion for judgment on affirmative defenses.  The *Vasquez*

3    court observed that while Rule 12(c) did not provide the plaintiffs with a route toward judgment in

4    their favor on *negative* defenses, the same was not true for judgment on *affirmative* defenses. *See*

5    *Vasquez*, 2021 WL 1737480, at \*2-3.  The court held that pursuant to Rule 12(h), a plaintiff may

6    challenge a defendant's failure to state a viable legal defense through a Rule 12(c) motion.  *Id.* at

7    \*3 (citing Fed. R. Civ. P. 12(h)(2)(B)); *see also e.g.*, *Neo4j, Inc*, 2020 WL 2614871, at \*8; *Mag*

8    *Instrument, Inc. v. JS Prod., Inc*., 595 F. Supp. 2d 1102, 1109-11 (C.D. Cal. 2008).[5]

9    The SEC's motion is both in style and in substance a Rule 12(c) motion for judgment on

10   three of Kraken's affirmative defenses.  It is timely filed and ripe for consideration.

## II.    THE MOTION

12   "Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper when,

13   accepting all material allegations in the nonmoving party's pleadings as true, the moving party is

14   entitled to judgment as a matter of law." *Wildseed Mobile LLC v. Google LLC*, 676 F. Supp. 3d

15   766, 772 (N.D. Cal. 2023); *New York v. Micron Tech., Inc.*, No. C 06-6436 PJH, 2009 WL 29883

16   (N.D. Cal. Jan. 5, 2009) (to prevail on a Rule 12(c) motion, a plaintiff must "clearly establish on

17   the face of the pleadings that no material issue of fact remains to be resolved and that [it] is

18   entitled to judgment as a matter of law.") (cleaned up).  The SEC has made this showing with

19   respect to Kraken's major questions doctrine defense, but not its fair notice and due process

20   defenses.

### A.    Major Questions Doctrine Defense

22   The major questions doctrine originates from the notion that Congress does not delegate

---

[5] Kraken also argues that I cannot consider the SEC's motion because the SEC seeks only "partial" judgment on the pleadings, but courts in this circuit have entertained partial motions for judgment on the pleadings when "the motion resolves at least an entire cause of action or an affirmative defense." *See e.g.*, *Erhart v. Bofl Holding, Inc.*, 387 F. Supp 3d 1046, 1062-62 (S.D. Cal. 2019); *Senne v. Kansas City Royals Baseball Corp*., 591 F. Supp. 3d 453, 499-50 (N.D. Cal. March 15, 2022) ("Plaintiffs are entitled to judgment on the pleadings under Rule 12(c) that Defendants' SAP Act affirmative defense fails as to Plaintiff's claims under Florida law.").

United States District Court
Northern District of California

1    extraordinary powers that transform an agency's authority without making its intent clear. *See*

2    *West Virginia v. EPA*, 597 U.S. 697, 716, 142 S. Ct. 2587 (2022) (noting that under the major

3    questions doctrine, courts "expect Congress to speak clearly if it wishes to assign to an agency

4    decision of vast economic and political significance").  It requires that in the "extraordinary" case

5    where an agency claims the "power to regulate a significant portion of the American economy"

6    that has "vast economic and political significance," that agency must show it has "clear

7    congressional authorization." *Util. Air. Regul. Grp. v. EPA*, 573 U.S. 302, 324, 134 S.Ct. 2427,

8    189 L.Ed.2d 372 (2014) (citations omitted).

9         Kraken asserts that if there were ambiguity with respect to the SEC's authority to enforce

10   Section 5, 15(a), or 17A of the Exchange Act, the major questions doctrine would apply and

11   require resolving the ambiguity against the SEC's authority.  *See* Answer 70-71 (Eighth Defense).

12   I already held that the major questions doctrine did not apply to bar the SEC's claims. *See* Prior

13   Order 29.  Kraken concedes my ruling in its Answer but asserts the affirmative defense anyway.

14        The SEC is entitled to judgment on the major questions doctrine defense because this case

15   does not concern the kind of major question that the United States Supreme Court contemplated.

16   Those cases that do implicate the doctrine have the potential to impose massive influence over the

17   American economy. *See e.g.*, *West Virginia*, 597 U.S. at 724, 142 S.Ct. 2587 (Clean Power Plan

18   was major because it would empower the Environmental Protection Agency to "substantially

19   restructure the American energy market"); *N.C. Coastal Fisheries Reform Grp. V. Capt. Gaston*

20   *LLC*, 76 F.4th 291 (4th Cir. 2003) (holding an EPA regulation that would impact every

21   commercial or recreational fisherman raised a major question); *Biden v. Nebraska*, 600 U.S. --,

22   143 S. Ct. 2375, 2373 (2023) (student loan forgiveness program proposed by President Biden was

23   major insofar as it aimed to forgive approximately $430 billion in debt); *FDA v. Brown &*

24   *Williamson Tobacco Corp.*, 529 U.S. 120 (2000) (holding that a newfound regulation of the

25   tobacco industry was a regulatory overreach).

26        Cryptocurrency is a growing financial instrument, but it has not risen to a level of

27   economic import that is reasonably comparable to the American energy market, or billions of

28   dollars of outstanding student loan debt.  What is more, the SEC is not asserting a "transformative

United States District Court
Northern District of California

1    expansion in its regulatory authority" or a "highly consequential power beyond what Congress

2    could reasonably be understood to have granted it." *See West Virginia*, 597 U.S. at 724. While

3    cryptocurrency itself is a relatively novel financial instrument, the principles driving the SEC's

4    assertions of regulatory authority over cryptocurrency are not new. The SEC's driving theory

5    behind this case, and similar enforcement actions in other courts, is that well-established securities

6    laws apply with equal force to Kraken as a cryptocurrency platform because Kraken's activities

7    bring it within the ambit of the SEC's authority as Congress envisioned it. Whether the SEC is

8    correct is a question that will be resolved through litigation; for now, its theory of liability keeps

9    this case outside the coverage of the major questions doctrine.

10        As I noted at oral argument, Kraken is welcome to reassert its major questions defense

11   down the road. This is not an issue that requires discovery. It is possible that the circumstances

12   and context in which cryptocurrency operates will change during the pendency of this lawsuit. If

13   that happens, Kraken may amend its affirmative defense to account for the shift, and I will

14   consider its new arguments. *See Chatman v. WeDriveU, Inc.*, 2022 WL 15654244, at *3 (N.D.

15   Cal. Oct. 28, 2022) ("[C]ourts have discretion . . . to grant a Rule 12(c) motion with leave to

16   amend[.]").

17        **B.    Fair Notice and Due Process Defenses[6]**

18        In evaluating whether a defendant lacked fair notice that its conduct contravened the law,

19   courts ask whether, at the time of the conduct, the law "fail[ed] to provide a person of ordinary

20   intelligence fair notice of what is prohibited, or [was] so standardless that it authorize[d] or

21   encourage[d] seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567

22   U.S. 239, 253-54 (2012) (cleaned up). This doctrine is entwined with the Due Process Clause in

23   that it protects two due process concerns: "first, that regulated parties should know what is

24   required of them so they may act accordingly," and "second, precision and guidance are necessary

25   so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox*, 567 U.S. at

26   253. When a defendant challenges a statute "as applied" to its own conduct, whether the statute is

27

28   _____

[6] As the SEC argues, Kraken's Ninth and Tenth Defenses "rise and fall together" because they rely on the same well-established standard for fair notice and due process. Motion 7-8.

United States District Court
Northern District of California

vague "turns on whether the statute provided adequate notice to him that his particular conduct was proscribed," *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013), and whether a defendant had "adequate notice" turns on the facts of the case at hand, *see id.*; *see also United States v. Lusby*, 2022 WL 16570816, at *1 (9th Cir. Nov. 1, 2022) ("[v]agueness challenges may arise as either facial or as-applied objections [. . .] the latter argues that the law is impermissibly vague under the 'facts of the case at hand.'").

Kraken asserts that it "did not have, and [the SEC] failed to provide, fair notice that Kraken's conduct was in violation of the law, in contravention of [Kraken's] due process rights." Answer 71 (Ninth Defense).  It contends that the securities laws and the test formulated by the United States Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), are "impermissibly vague" as applied to the transactions on its platform because an entity of ordinary intelligence in Kraken's position would not reasonably know if or when the SEC (or a court) would determine that a digital asset rises to the level of a "security" or "investment contract." Answer 72 (Tenth Defense).[7]

As a preliminary matter, Kraken clarified that it has "never argued that it lacked fair notice as to *whether* the *Howey* test applies to determine whether an asset is offered and sold as an investment contract." *See* Kraken Opposition ("Oppo.") [Dkt. No. 110] 21:19-23 (emphasis added).  Rather, it asserts that it lacked fair notice that *applying* the *Howey* test to its conduct would reveal that it facilitated transactions in investment contracts on its platform.  It could hardly argue otherwise: the law is clear that *Howey* and its progeny do apply to determine whether something is an investment contract.

When the Supreme Court defined the term "investment contract" in *Howey*, it "use[d] the

---

[7] Kraken also asserts that "nothing in *Howey* suggests that there can be an investment contract when no contract exists." *Id.*  To the extent that Kraken argues that it lacked fair notice that it was violating the law because its users did not execute formal contracts to govern cryptocurrency transactions, and as such, could not be considered as entering investment contracts, *see* Answer 72:4-14 (Tenth Defense), that defense will fail.  Numerous decisions have held that investment contracts are not limited to transactions that involve a formal contract.  *See* Prior Order 13-15 (collecting cases where courts have found that crypto assets were plausibly alleged to form investment contracts where there was no underlying formal contract).

United States District Court
Northern District of California

terms 'contract, transition, or scheme,' … leaving open the possibility that the security is not formed of one neat, tidy certificate, but a general 'scheme' of profit seeking activities." *Hocking*, 885 F.2d at 1457; *see also* Prior Order 14 (discussing the *Howey* test for investment contracts). In its motion to dismiss, Kraken argued that when the at-issue assets were put to the *Howey* test, they failed it, meaning that the SEC's theory of liability was a non-starter. I found its argument to be unpersuasive. Taking the facts as the SEC pleaded them to be true, I determined that it was *plausible* that the at-issue assets formed the basis of investment contracts that are subject to securities laws. *See generally* Prior Order. But to obtain judgment on Kraken's fair notice and due process defenses, the SEC would have to show that any ordinary entity in Kraken's position would understand that the *Howey* test, as applied to the secondary market transactions on Kraken's platform, establishes that those transactions are investment contracts. It has not made such a showing.

The parties have conflicting perspectives on the impact of the SEC's publications about cryptocurrency regulation, and it is not yet clear whose will prevail. As the Southern District of New York observed in *SEC v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 192 (S.D.N.Y. 2023), the question of whether a cryptocurrency network had "fair notice" that its conduct breached securities laws depends on whether the SEC, "through its regulations, written guidance, litigation, or other actions [] provided a reasonable person operating within the defendant's industry fair notice that their conduct may prompt an enforcement action by the SEC." *Terraform Labs*, 684 F. Supp. 3d at 192.

Kraken argues that the SEC's publications and actions were confusing and unclear. For example, the SEC says that Bitcoin and Ether (which the SEC has explicitly stated are *not* traded as securities) are unrelated to the digital assets traded on Kraken and named in the Complaint, but Kraken insists that it reasonably understood them to be related. *See* Oppo. 14, n.6. Kraken argues that the SEC's public commentary regarding cryptocurrency would suggest to an ordinarily intelligent entity in Kraken's position that its activities fell outside of the SEC's regulatory

1    purview. *See id.* 14:1-15.[8]  In response, the SEC argues that its conduct over the last seven years

2    is "not relevant to whether the securities laws from 1933 and 1934—or the nearly 80-year old

3    *Howey* test—are unconstitutionally vague." Reply 9:19-21.

4        Determining whether a defendant had fair notice of its purported offense requires

5    examination of the facts of the case.  The SEC's previous lawsuits, its public commentary, and its

6    testimony in front of Congress all inform that examination.  The SEC offers no authority that I

7    should not consider its conduct over the last seven years.  Indeed, other courts in similar lawsuits

8    have held that it can be relevant. *See Terraform Labs*, 684 F. Supp. 3d at 192.

9        The Third Circuit's recent analysis in *Coinbase, Inc. v. SEC*, No. 23-3202, 2025 WL

10   78330 (3d Cir. Jan. 13, 2025), is consistent with this approach.  In that case, the court required the

11   SEC to provide a more thorough explanation for its denial of Coinbase's rulemaking petition to

12   mandate that the SEC clarify how and when the federal securities laws apply to digital assets like

13   cryptocurrencies and tokens.  It discussed the fair notice and due process arguments made by

14   Coinbase: it found that while those arguments did not apply in the rulemaking context, they would

15   in enforcement actions, which "turn on case-dependent factors like what kind of digital asset is at

16   issue" and "how far [the SEC's] interpretation of the statute or regulation deviates from its prior

17   positions." *Coinbase, Inc.*, 2025 WL 78330, at *10.  Judge Bibas's concurrence also takes aim at

18   whether the SEC has provided fair notice and due process protections for cryptocurrency

19   networks.  *See id.*, at *20-29 (Bibas, J., concurring).  The opinion makes clear that fair notice and

20   due process affirmative defenses are appropriately part of the litigation of enforcement actions.

21   *See generally id.*, at *9-11; *id.*, at *9 (explaining that the appropriate way for Coinbase to raise a

22   fair-notice argument would be as a defense in an enforcement action, rather than "on appeal from

23   a petition to begin broad and open-ended rulemaking").

24   _____

25   [8] Kraken asks that I take judicial notice of several complaints in other cryptocurrency cases filed
     by the SEC around the country, transcripts of congressional hearings concerning cryptocurrency
26   regulation, and statements from public websites where the SEC discusses cryptocurrency as it
     relates to securities laws.  *See* Kraken Request for Judicial Notice [Dkt. No. 112] 1-3. Given that
27   each document for which Kraken seeks notice is a public document the contents of which are not
     contested, I will take judicial notice of the existence of each.  The SEC does not dispute the
28   content of the judicially noticed statements, but rather disputes Kraken's "mischaracterizations" of
     the proposed exhibits.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      The SEC cites *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019), for the rule that

2   "[s]ubjective information about the defendant's mindset (or the enforcers of the statute) is

3   irrelevant," and as such, I do not need to consider Kraken's offered factual disputes about the

4   SEC's regulatory behavior with respect to cryptocurrency leading up to this lawsuit. *See* Motion 9-

5   10.  But *Kashem* was a very different case.  There, the Ninth Circuit held that the plaintiff had fair

6   notice that his conduct would flag him for inclusion on the No-Fly List, where he had traveled to a

7   foreign country to "fight jihad and to train for jihad" and received weapons at a terrorist training

8   camp, both of which were activities clearly contemplated by the relevant national security statute

9   that dictated who appeared on the No-Fly List. *Kashem*, at 374.  Considering those facts, the court,

10  in determining whether the relevant anti-terrorism statute was vague as-applied, chose *not* to factor

11  in the government's failure to provide criteria about what kinds of associations designated

12  someone for the No-Fly List.  It explained that a person of ordinary intelligence in Kashem's

13  position would recognize that his behavior (traveling for the purposes of engaging in jihad and

14  receiving weapons from a terrorist training camp) qualified him for the list. *Id.*

15      The SEC insists that like the court in *Kashem*, I have all I need to resolve the as-applied

16  challenge because I have the statutory language itself, the caselaw interpreting the Exchange Act,

17  and a "factual sketch of Kraken's conduct" such that I may undertake an objective analysis of the

18  state of the law. *See* SEC Reply ("Reply") [Dkt. No. 114] 5-6.  It says that I can hold, as a matter

19  of law, that Kraken's fair notice and due process defenses fail because I have already held that the

20  terms "security" and "investment contract" have well-settled meanings, without getting into the

21  question of what the SEC stated, publicly or privately, about cryptocurrency regulation. *See* Reply

22  5-6 (citing *SEC v. Feng*, 935 F.3d 721, 734 n.8 (9th Cir. 2019) ("word is not vague when it has a

23  'settled legal meaning.'")).  It argues that since the pleadings "unequivocally state that the crypto

24  assets at issue were sold on Kraken's . . . platform," and since "Kraken concedes that it had fair

25  notice that the *Howey* test applied to those transactions," it is entitled to judgment on Kraken's fair

26  notice and due process defenses.  Reply 6-7.[9]

27  _____

28  [9] The SEC cites *United States v. Zaslavskiy*, No. 17 CR 647 (RJD), 2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) for the rule that "the test expounded in *Howey* . . . provided clear guidance to

12

1    The SEC is over-simplifying the issues before me.  Kraken has assured the court that it will

2  not argue in its defense that it lacked fair notice that the *Howey* test provided the definition for

3  "investment contract" and "security"; it will argue that *as applied* to the relatively novel facts of

4  this case, which include but are not limited to the SEC's own published guidance and past

5  behavior around cryptocurrency regulation, *Howey* and it is progeny are vague.[10]  Unlike the

6  situation in *Kashem*, there is room in this case for Kraken to argue in its defense that an entity of

7  ordinary intelligence in its position would not understand how the *Howey* test applies to the

8  transactions on its platform.[11]

9    The SEC also argues that, by taking judicial notice of all of the documents presented by

10  Kraken, *see supra*, n.8, I have all of the evidence necessary to make a decision on these

11  affirmative defenses.  I do not know whether that is correct.  I agree that the SEC's public actions,

12  whether through comments, publications, administrative proceedings or litigation, will form the

13  bulk of the relevant record of what Kraken would have had fair notice of.  And I will not allow

14  discovery of the SEC's internal deliberations.  But I will not foreclose at the outset Kraken's

16  courts and litigants as to the definition of 'investment contract.'" *Zaslavskiy*, at *8-9. That was
also a different case, where the defendant argued in favor of dismissal in part based on
17  unconstitutional vagueness of the Exchange Act.  The SEC frames *Zaslavskiy* as an analogous
cryptocurrency case; it was not.  There, the government charged defendant Zaslavskiy with
18  materially false and fraudulent representations in connection with purported virtual currency
investment schemes.  That case did not ask whether assets exchanged on secondary market
19  platforms are securities.

20  [10] The Third Circuit's recent decision in *Coinbase* noted that the SEC's application of the *Howey*
test to a particular digital asset "may sufficiently depart from its past conduct to raise fair-notice
21  concerns[.]" *Coinbase*, 2025 WL 78330, at *10.

22  [11] The SEC also offers a Third Circuit opinion in *FTC v. Wyndham Worldwide Corp.*, 799 F.3d
236 (3d. Cir. 2015), for the rule that a defendant is "only entitled to notice of the meaning of the
23  statute and not to the agency's interpretation of the statute."  Reply 10:8-10; *Wyndham Worldwide
Corp.*, 799 F.3d at 255.  That case is not instructive because Kraken does not assert as a defense
24  that it was entitled to and did not receive the SEC's affirmative or correct interpretation of the
relevant sections of the Exchange Act; it argues that the regulatory environment was such that it
25  could not reasonably understand its conduct to be violative of securities laws.  *See* Oppo. 14:16-
22.  Wyndham argued that it was entitled to the FTC's interpretation of a statute such that it could
26  better understand how that statute applied to Wyndham; Kraken argues that the SEC issued
contradictory and shifting enforcement guidance such that an ordinary entity in Kraken's position
27  could not reasonably understand its conduct to be violative of the Exchange Act.  They are
different arguments.

28

United States District Court
Northern District of California

1  ability to propound other discovery that it considers material to these defenses.  If the parties

2  disagree after meeting and conferring about relevance, proportionality, privacy, or other concerns

3  regarding specific discovery requests, they may present their dispute in a five-page, joint letter.

**CONCLUSION**

5  The SEC's motion for judgment is GRANTED on Kraken's major questions doctrine

6  defense (Eighth Defense).  The motion is DENIED for its fair notice and due process defenses

7  (Ninth and Tenth Defenses).

8  **IT IS SO ORDERED.**

9  Dated: January 24, 2025



William H. Orrick
United States District Judge

United States District Court
Northern District of California

14